UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

vs.                                                              **NOTICE OF MOTION**

**XAVIER TORRES**                                              18-CR-06094

Defendant

PLEASE TAKE NOTICE, that upon the Declaration of MAURICE J. VERRILLO, ESQ.,

attorney for the above-named Defendant, the Declaration of the Defendant, Xavier Torres,

and upon all prior papers and proceedings herein, the Defendant will move this Court, before

the Hon. Mark Pederson, United States Magistrate Judge located at 100 State Street,

Rochester, New York 14614 on the _____ day of _____, 2019 at

_____am/pm or as soon thereafter as counsel may be heard, pursuant to the following

motions, for an order:

1.      Suppression of evidence acquired by the government's search of the Defendant, his

person, or property, including a search of a vehicle registered to the Defendant

pursuant to **Federal Rule of Criminal Procedure 12(b)(3) and 12(d).**

2.      Suppression of statements allegedly made by the defendant to law enforcement.

3.      Directing disclosure of informant information;

4.      Precluding the use of evidence identifying the defendant Xavier Torres during

identification procedures conducted by law enforcement pursuant to **Federal** i**Rule of**

**Criminal Procedure 12(b)(3)**.

5.      Requiring the disclosure of witness statements pursuant to **18 USC section 3500**;

6.      Granting Defendant's Motion in Limine pursuant to **Federal Rules of Evidence 403,**

**404, 607, 608 and 609**;

**LAW OFFICES OF**
**MAURICE J. VERRILLO, P.C.**

_____

ONE EAST MAIN STREET
SUITE 700
ROCHESTER, NY 14614

(585) 232-2640

7.    Granting the Defendant all Brady, Agurs and Giglio material;

8.    Granting the Defendant discovery and inspection.

9.    Granting the Defendant's request for a bill of particulars pursuant to **Federal Rules of**

      **Criminal Procedure 7(f)**.

10.   Granting an order that government agents retain all rough notes related to this case.

11.   Dismissing the Indictment as it violates the Defendant's right to a fair trial and prompt

      prosecution under **Federal Rules of Criminal Procedure 48(b)(1) and (b)(2).**

12.   Granting a Conspiracy or James hearing.

13.   Granting severance of the Defendant Xavier Torres from the co-defendants pursuant to

      **Federal Rules of Criminal Procedure 8, 12, and 14.**

14.   Granting such other and further relief to this Court seems just and proper.


Dated:    November 11, 2019



                                   /s/ Maurice Verrillo
                                   MAURICE J. VERRILLO, ESQ.
                                   Xavier Torres, Defendant

                                   3300 Monroe Avenue, Suite 301
                                   Rochester, NY 14618
                                        (585) 232-2640

**LAW OFFICES OF**

**MAURICE J. VERRILLO, P.C.**

To:   Clerk, United States District Court
      Western District of New York
      AUSA

_____

ONE EAST MAIN STREET

SUITE 700

ROCHESTER,  NY  14614

(585) 232-2640

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

               -vs-

**ATTORNEY'S
DECLARATION**

**XAVIER TORRES**

                                 Defendant.

MAURICE J. VERRILLO, declares, and says, pursuant to 28 U.S.C. Section 1746(2) that:

1.    I am an attorney admitted to practice law in the State of New York and the United States District Court for the Western District of New York, and I have been assigned to represent the Defendant, Xavier Torres.

2.    I am familiar with this case by reason of my investigation of this case, my conversations with my client, and my review of the voluntary discovery material provided to date by the government.

3.    This declaration is submitted in support of the various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

4.    The Defendant Xavier Torres has entered a not guilty plea to the Third Superseding Indictment charging him with eight counts, specifically:

    A.  Narcotics Conspiracy-Count 1;

    B.  Possession, Brandishing, and Discharging Firearms in Furtherance of a Drug Trafficking Crime- Count 2;

    C.  Distribution of Cocaine-Count 11;

    D.  Distribution of Heroin-Count 12;

    E.  Distribution of Heroin-Count 13;

    F.  Possession of Heroin with Intent to Distribute-Count 15;

**LAW OFFICE OF
MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

G.   Possession of Cocaine with Intent to Distribute-Count 16;

H.  Maintaining a Drug Involved Premises-Count 17.

A copy of the Third Superseding  Indictment is attached as (**EXHIBIT "A")**.

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

_____

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

# INDEX

**Page**

I.      Suppression of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

II.     Suppression of Statements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

III.    Disclosure of Informant Identity   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

IV.     Preclusion of Identification Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

V.      Jencks Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

VI.     Rules 404, 608 & 609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

VII.    Brady Material  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

VIII.   Discovery, Disclosure & Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

IX.     Bill of Particulars Rule 7(f ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

X.      Rough Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

XI.      Rule 48 dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

XII.    James Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

XII.I   Severance of Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

XIV.    Further Relief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

I.              **SUPPRESSION OF EVIDENCE**

A.  All evidence found during the February 6, 2016 stop is the fruit of poisonous tree and must be suppressed as it would be unconstitutional to use against Mr. Torres.

B.  The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. US Const. Am. IV.  It protects people, not places, and thus protects private citizens in public. Terry v. Ohio, 392 U.S. 1, 8-9 (1967). While there is no question that police officers are permitted to execute an investigatory search to weapons to ensure their safety and the safety of others, the police officer must act with a reasonableness of any particular search and the seizure must be assessed in light of the particular circumstances against the standard of whether a man of reasonable caution is warranted in believing that the action taken was appropriate. Id. at 21-22. The searching officer must, at a minimum, have reasonable suspicion before executing the stop. Minnesota v. Dickerson,508 U.S. 508 US. 366 (1993).

C.  In Minnesota v. Dickerson, the Supreme Court further elaborated as to the specific confines of a stop under Terry. Id. In that case, the Court determined that contraband seized during an investigative search must be suppressed because the officer exceeded the bounds of the "strictly circumscribed" search for weapons under Terry. Ultimately, when contraband is discovered in the course of a legally appropriate search, its criminal nature must be immediately apparent. If a further search is required after no weapons are discovered, then it is an unconstitutional search in violation of the 4th Amendment. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed. Id. at 373.

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

D.  Many other cases have followed suit.  In Connecticut, the district court ruled that a police officer opening and searching a small draw string bag, that clearly did not contain a weapon, overstepped the bounds of a <u>Terry</u> stop and thus, the contraband was suppressed. <u>United States v. Robertson</u>, 239 F. Supp.3d 426, 442-45 (D. Conn. 2017).

E.  Closer to home, the Second Circuit overturned this district when a police officer reached into a suspect's pocket during a stop. In this instance, the officer and other had been surveying the suspect for some time and at the time of the stop had reason to suspect that he might be armed and carrying contraband. However, because there were less intrusive means of ensure the officers' safety, the seizure and fruits that followed must be suppressed. <u>United States v. Casado</u>, 303 F.3d 440 (2002).

F.  In every case where a proper <u>Terry</u> stop is involved, the encounter must be brief and solely to ensure officer safety in case a suspect is armed. There are several factors that must be considered when determining whether a stop is proper or whether it extends into a formal arrest in need of <u>Miranda</u> warnings. These factors include the length of the stop, whether the setting is public or private, the number of participating law enforcement, the risk of danger posed by the suspect, and any display of force used against the suspect.

G.  The crux of any <u>Terry</u> stop is whether the suspect is armed and poses a threat to the officer.  Once it is determined that the suspect is not armed, the stop must come to an end. Any further searches without a warrant or a formal arrest are improper and must be suppressed as violative of the 4th Amendment.

H.  In much of the post-<u>Terry</u> case law, the stopping officer generally has cause for looking for someone of the suspect's description. Many of these cases involve a very

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

recent crime with a suspect's description being given to law enforcement personnel. Alternatively, a suspect may be personally known to the stopping officer. United States v. Hensley, 469 U.S. 221 (1985) (Suspect was stopped after wanted flyer with his likeness was in circulation for several weeks); United States v. Muhammad, 463 F.3d 115 (2d Cir. 2006) (police surveillance of the suspect corroborated an anonymous tip, thus justifying the stop.); United v. Gardner, 76 Fed. Appx. 401 (3d Cir. 2003) (A bar was robbed by a lone gunman and within minutes, a description of the suspect was broadcast over police radio. The gunman was picked up within 10 minutes and 4 blocks away from the bar.); Gaddis v. Redford Twp., 364 F.3d 763 (6th Cir. 2004) (Suspect was pulled over for driving erratically, then exited his vehicle wielding a knife toward the police officers.) None of that happened in the case of Mr. Torres.

I.   In the case of Mr. Torres, Officer Thomas Luciano stopped him with little to no grounds for reasonable suspicion. According to his affidavit, Officer Luciano saw Mr. Torres driving down N. Clinton Avenue, near Burbank Street, park the vehicle, and enter an apartment building. At that time, there was no order to be on the lookout for someone fitting Mr. Torres's description or vehicle. It appears the only reason for Officer Luciano following Mr. Torres into the building was his past knowledge of drug activity at that location and nothing else.

J.   Officer Luciano followed Mr. Torres into the building and almost immediately began conducting a physical search. No weapons or other contraband were found on Mr. Torres's person. Under applicable case law, at that point the search should have either stopped or, if probable cause existed, an arrest should be made. Instead, Officer Luciano continued beyond a Terry stop when he found a car key fob. He took

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

it upon himself to then search the vehicle that matched the fob and found alleged contraband.

K. As established by Terry and Dickerson, stops such as this are strictly to ensure the safety of the police officer and if contraband is discovered, its illegal or criminal nature must be immediately apparent. Neither occurred in this matter, thus Officer Luciano overstepped the constitutional bounds of the 4th Amendment.  As such, any and all contraband subsequently discovered after the initial stop are fruits of the poisonous tree and must be suppressed.

L. A copy of the police report associated with said stop is attached as Exhibit "B."

## II.        SUPPRESSION OF STATEMENTS

A. Any and all statements prior to Mr. Torres's formal arrest on February 6, 2016, should also be suppressed as he was not properly advised of his rights under Miranda v. Arizona.

B. While it is understood that a stop under Terry v. Ohio does not require Miranda warnings, the two doctrines must still co-exist with one another. The Second Circuit determined that the two doctrines are completely separate in that Terry involves the 4th Amendment and Miranda involves the 5th Amendment. United States v. Newton. Regardless, the Court in Berkemer v. McCarthy, identified two factors to consider when determining whether a stop amounts to an arrest. The first question is whether a reasonable person in the suspect's shoes would have understood the detention would likely not be temporary to brief. The second is whether a person stopped under the given circumstances would feel completely at the mercy of the police

C. The government can try as they like to say that Mr. Torres wasn't detained in such a way that amounts to an arrest, but the facts would not support that claim.  After the

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

frisk of Mr. Torres, he tried to leave.  Regardless of wether this is characterized as fleeing or running, it is apparent that Mr. Torres was not free to leave the company of the Rochester Police Department. He was further detained and handcuffed while Officer Luciano searched his vehicle. Because Mr. Torres under the totality of the circumstances, was under arrest for all intents and purposes, <u>Miranda</u> rights should have been administered.  Because this did not occur, any statements made by Mr. Torres must be suppressed.

D.    Upon information and belief, your declarant believed that law enforcement alleges the defendant made statements during the July 30, 2015 search and further at the time of his December 2018 arrest. Your declarant further requests this Court to suppress any statements alleged to have been made to law enforcement on any of said dates.

## III.        DISCLOSURE OF INFORMANT IDENTITY

A.  Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963), and the other authorities set forth herein, the Defendant moves for an order directing the government to disclose the following documents and information regarding any and all confidential informant(s).

1.  The name and address of the confidential informant(s)

2.  The case number and name of the prosecutions in which the confidential informant utilized in this case has previously been utilized as a confidential informant;

3.  The case names and numbers of any trials or evidentiary hearings at which the confidential informant has testified concerning:

(a).    His own prior criminal activity;

(b).    Payments or rewards provided to him by the government;

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

(c).     Efforts made to induce others to participate in criminal activity;

(d).     or other purported law enforcement-related matters;

4.  Any ledger, sheet, or other document which details the sums paid to the confidential informant or his family in this and other cases in which said informant assisted the government, and the purpose of each such payment;

5.  Any information, whether or not memorialized in a memorandum, agent's report or other writing, regarding promises of immunity or leniency, preferential treatment or other inducements made to the confidential informant, or to any family member, friend or associate of the informant, in exchange for the informant's cooperation, including, but not limited to: dismissal or reduction of charges; assistance in matters of sentencing, deportation, parole or probation; or promises or expectations regarding payments for expenses or testimony or eligibility for any award or reward;

6.  Information or records concerning notification of potential prosecution, investigation or deportation made by the government to the informant or any member of his family;

7.  Any report, document or information which details the criminal activities of the confidential informant which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or Informally, not to prosecute;

8.  FBI rap sheet, NCIC printout and any other records available to the government reflecting the arrest and conviction history of the informant;

9.  Shared Inter-Agency Intelligence Reports referencing activities of the informant;

10. Instances of the use of informant's photograph in any identification procedure;

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

11. Information concerning prior misconduct by the confidential informant in the performance of his role as an informant, including:

    (a).    any prior allegation that the informant entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and

    (b).    any prior "blackballing" of the informant by any law enforcement agency;

12. Information concerning misconduct by the informant other than in his role as an informant, including misconduct that reflects on the lack of candor, truthfulness or law-abiding character of the informant, such as uncharged criminal conduct or fraud;

13. Driver's license history or evidence that the informant was operating a vehicle in violation of the law while working for the government;

14. Information reflecting the nature and extent of assets obtained by the informant in connection with his illegal activities over the past ten years;

15. Any "personnel files" maintained by the government relating to the confidential informant utilized in this case reflecting on his character for truthfulness and lawfulness; and,

16. Any government agency files or other information revealing matters relevant to the confidential informant's credibility, mental or physical health, or narcotic or alcohol use or other dependency.

B.   In <u>Roviaro v. United States</u>, 353 U.S. 53, 65, 77 S. Ct. 623, 630 (1957), the Supreme Court reversed a conviction where the trial court denied Defendant's pretrial motion for disclosure of an informant who was "a participant in and a material witness to" the alleged criminal transaction. The <u>Roviaro</u> standard for disclosure of confidential

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

informants who play an active rather than passive role in the investigation is not a "fixed rule;" instead, the district court must take into "consideration [1] the crime charged, [2] the possible defenses, [3] the possible significance of the informer's testimony, and [4] other relevant factors." 353 U.S. at 62, 77 S. Ct. at 629.

C. In <u>Roviaro</u>, the informant "helped to set up the criminal occurrence and had played a prominent part in it[;] [h]is testimony might have disclosed an entrapment." 353 U.S. at 64, 77 S. Ct. at 629.  The Supreme Court held that the "desirability of calling [the informant] as a witness, or at least interviewing him in advance of trial, was a matter for the accused rather than the government to decide.

D. The circumstances of the instant case are striking in their similarity to the facts of <u>Roviaro</u>.  The informant here is "the only witness in a position to amplify or contradict the testimony of government witnesses." 353 U.S. at 64, 77 S. Ct. at 630. Consequently, consistent with the dictates of <u>Roviaro</u>, the informant's identity should be revealed.

E. The Eleventh Circuit has held that a Defendant is also entitled to disclosure of and access to a confidential informant where "the informant's probable testimony would bear a direct relationship on the Defendant's asserted defense." <u>United States v. McDonald</u>, 935 F.2d 1212, 1217 (11 th Cir. 1991).

F. In <u>United States v. Espanosa-Hernandez</u>, 918 F.2d 911, 913-914 (11 th Cir. 1990), the court held that blocking defense access to an informant who was the central figure of the undercover operation would justify the granting of a new trial. In <u>United States v. Ayala</u>, 643 F.2d 244, 247 (5 th Cir. 1981), the Fifth Circuit reversed the Defendant's conviction based on the district court's failure to grant a motion to compel disclosure

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

of the identity of an informant.  The <u>Ayala</u> court analyzed the <u>Roviaro</u> standard for

disclosure, stating:

> "The informer's level of involvement with the criminal
>
> activity is an important consideration . . . . The more
>
> active the participation, the greater the need for
>
> identification." <u>Id.</u>, 643 F.2d at 246.

G.  Information regarding the prior utilization of the informant is material and favorable

within the terms of <u>Brady v. Maryland</u>, where it reveals the informant's *modus*

*operandi* in setting up criminal transactions and in inducing other persons to

participate in criminal activity. <u>Johnson v. Brewer</u>, 521 F.2d 556 (8 th Cir. 1975).

Experience has shown that where an informant utilizes undue persuasion in one case

to induce an individual to participate in a criminal offense, he is likely to use the same

tactic in other cases. <u>United States v. McClure</u>**,** 546 F.2d 670, 673 (5 th Cir. 1977). In

<u>McClure</u>, the conviction was reversed due to the trial court's exclusion of "Fed. R.

Evid. 404(b) evidence of a systematic campaign" by the informant to induce other

persons to engage in illegal activity. <u>Id.</u>, 546 F.2d at 672.

H.  Evidence of the informant's offering the Defendant an inducement to commit the

instant offense is evidence that directly substantiates an entrapment defense.  The

Supreme Court, in <u>Mathews v. United States</u>, 485 U.S. 58, 108 S. Ct. 883 (1988),

reaffirmed the traditional entrapment defense and held that the Defendant may

proceed with such a defense exclusively or in the alternative.  Defendant thus requests

evidence, such as evidence of inducements, that would aid in the presentation of the

entrapment defense.  In <u>McClure</u>, the court stated: "[I]n the case before us it was the

Defendant who sought to introduce evidence of the informant's scheme.  His right to

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

present a vigorous defense required the admission of the proffered testimony." Id.,

546 F.2d at 673.

I.   Such evidence is also discoverable, pursuant to Giglio v. United States, 405 U.S. 150,

92 S. Ct. 763 (1972), to aid in the impeachment of a witness.  The prior testimony of

an informant on themes material to his service as an informant should be disclosed

where the defense proposes to examine the informant as to those themes at trial.

Johnson v. Brewer, 521 F.2d at 563.  In United States v. Cohen, 888 F.2d 770,

776-777 (11 th Cir. 1989), the Eleventh Circuit recognized the importance of such

evidence, reversing a conviction where the trial court had excluded evidence offered

under Fed. R. Evid. 404(b) that the primary informant had previously concocted and

managed a fraudulent scheme.

J.   The Defendant also seeks a full record of the monies paid to the informant and his

family as a result of his cooperation in this case as well as any other case in which the

informant has provided services.  Such detailed information and records are needed to

avoid disputes regarding the nature and extent of payments made to the informant,

and are discoverable pursuant to Giglio v. United States, supra.

K.   Defendant further seeks information as to threats or promises made to an informant or

his family to motivate his cooperation.  Such Giglio material is discoverable to allow

defense counsel to establish the bias or hostility of the informant in creating the

circumstances of the instant case.  It is proper impeachment to question a cooperating

witness about the dropping of charges against, or other preferential treatment given to,

his or her family. United States v. Nickerson, 669 F.2d 1016 (5 th Cir. 1982).  The

threats/benefits evaluation is not limited to the informant alone. United States v.

Partin, 493 F.2d 750, 757 (5th Cir. 1974).

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

L.   Similarly, unconsummated promises of financial or other awards or benefits are discoverable as to the informant.  Thus, where the informant harbors an expectation of a future financial award for his services in obtaining a conviction, such evidence is crucially important to the defense. Williamson v. United States, 311 F.2d 411 (5 th Cir. 1962) (conviction reversed where informant witness's recovery of an award was contingent on Defendant's conviction).  Furthermore, that the full details of any government inducements offered to a witness including his/her entire history of compensation are discoverable and admissible at trial was reiterated by the Eleventh Circuit in United States v. Williams , 954 F.2d 668, 671 (11 th Cir. 1992). The court held that the "jury has a right to know what may be motivating a witness" even if "the amount [of money] paid an informant is felt by the government to be too prejudicial." Id. at 672. Defendant seeks disclosure of any promise, formal or informal, that would lead the informant to have an expectation of award in the instant case.

M.   An informant's history of criminal activity and other misconduct is relevant to consideration of his credibility, bias, motive and *modus operandi*. The issue of who initiated the criminal activity and who misled whom is a primary focus of the defense.

N.   The informant's history and pattern of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals.  Such evidence "might easily extend beyond that of mere impeachment." United States v. Espanola-Hernandez, 918 F.2d 911, 914 (11 th Cir. 1990).  In Espanola-Hernandez, the Eleventh Circuit reversed the district court's failure to grant full discovery as to an undercover agent's misconduct relating to the handling of informants. CF. Haber v. Wainwright, 756 F.2d 1520 (11 th Cir. 1985) (prior criminal conduct relevant where witness may have been promised immunity).

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

O. Along the same line, the courts have held discoverable, and highly relevant,

information regarding prior or contemporaneous perjury or bizarre testimony of an

informant, and other evidence of the unreliability of an informant witness.  Mesarosh

v. United States, 352 U.S. 1, 77 St. Ct. 1 (1956).  Where an informant witness's prior

presentence investigation report is in the possession of the government, disclosure

should be ordered. United States v. Trevino, 556 F.2d 1256, 1271 n.7 (5 th Cir. 1977)

P. The discovery of assets obtained by the informant through criminal activity is sought

as verification of the extent of the informant's prior criminal activity and his motive

to protect such assets from forfeiture.  It is further submitted that this informant may

have committed perjury in failing to report income from criminal activity in his prior

income tax returns.  Such perjury is relevant to consideration of any evidence

presented by the informant. United States v. Shearer, 794 F.2d 1545, 1551 (11 th Cir.

1986).

Q. In United States v. Deutsch, 475 F.2d 55, 58 (5 th Cir. 1973), the court compelled

disclosure of a postal employee's personnel file where evidence failed to negate

indications that the employee, who had acted in the role of an informant, may have

had disciplinary problems. Similarly, in United States v. Garrett, 542 F.2d 23, 26 (6 th

Cir. 1976), the court reversed the Defendant's conviction where the district court

foreclosed discovery and cross-examination as to an undercover agent's disciplinary

records relating to his use of narcotics and failure to submit to urinalysis.  The court

noted that such evidence was relevant because the undercover agent "might well have

looked upon a successful prosecution of [the Defendant] as a means of having his

[own] suspension [from duty] lifted." Id.

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

R.  Information relating to a potential witness's credibility is discoverable and material to the defense. See, United States v. Piccinonna, 885 F.2d 1529 (11 th Cir. 1989). Particularly relevant is evidence that such an individual is undergoing psychiatric treatment (see, United States v. Lindstrom, 698 F.2d 1154 (11 th Cir. 1983)), is otherwise physically or emotionally impaired (see, United States v. Partin, 493 F.2d 750, 762 (5 th Cir. 1974)), or is addicted to or abuses drugs or alcohol. See, United States v. Collins, 472 F.2d 1017 (5 th Cir. 1972); United States v. Fowler, 465 F.2d 664 (D.C. Cir. 1972); United States v. Romano, 482 F.2d 1183 (5 th Cir. 1973).

## IV.    PRECLUSION OF IDENTIFICATION TESTIMONY

A.  Whether law enforcement conducted a lawful and proper identification procedure raises an issue of fundamental fairness emanating from the Due Process Clause. U.S. v. David Thai, 29 F.3d 785,807 (2d Cir. 1994).

B.  "A defendant has a due process right not to be the object of suggestive police identification procedure that create "a very substantial likelihood of irreparable misidentification." Id.

C.  As to the use of a photo array, the Court must weigh various factors"...including the size of the array, the manner of presentation by the officers, and the contents of the array."  Thai, 29 F.3d at 808.

D.  The Defendant continues to object to the government's proposed identification testimony.

E.  Your declarant would respectfully submit that this outstanding issue cannot be properly addressed without a **Wade** hearing in advance of the respective witness testimony.

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

F.  The defendant respectfully requests that the government be precluded from offering any evidence of identification procedures conducted by law enforcement or in the alternative, that an identification hearing be held pursuant to applicable case law, including <u>Stoval v. Denno</u>, 388 U.S. 218; <u>U.S. v. Wade</u>, 388 U.S. 263 and other applicable cases.

G.  Attached are reports associated with photo array(s) alleged to have taken place on or about February 27 and 28, 2019. Exhibit "C."

V.                **JENCKS MATERIALS**

A.  Defendant files this Motion for Production of Jencks Material and moves this Court for an order requiring production of Jencks material, and in support thereof would show the Court as follows:

1.  Defendant moves for production of all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2, Federal Rules of Criminal Procedure.

2.  The term "statements" shall include:

    (a).  any written statement made by said witness and signed or otherwise adopted or approved by him;

    (b).  stenographic, mechanical, electronic or other recording, or transcriptions thereof, which are a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; and

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

(c).     a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

3.   The Defendant seeks production of said statements prior to trial for the purposes of judicial economy, to expedite discovery and the trial of this cause, and to avoid potential problems on the issue of whether all material has been tendered pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963) and its progeny. Although a District Court may not ordinarily compel disclosure of Jencks material prior to the conclusion of a witness's direct examination, early disclosure of Jencks material obviates trial interruptions and permits defense counsel to study the disclosures. See United States v. Campagnuolo, 592 F.2d 852, 858 n.3 (5th Cir. 1979).

4.   The Jencks Act, 18 U.S.C. § 3500, which provides that no statement made by a government witness shall be discoverable until after the witness testifies, would appear to preclude any pretrial disclosure of Brady material. Brady, however may "override" the Jencks Act in highly prejudicial circumstances. See United States v. Starusko, 729 F.2d 256, 263 (3d Cir. 1984) ("...compliance with the statutory requirements of Jencks Act does not necessarily satisfy the due process concerns of Brady," citing Campagnuolo, 592 F.2d at 858-60); but see United States v. Hart, 760 F.Supp. 653 (E.D. Mich. 1991).  The rule enunciated in Brady is a constitutionally compelled rule, and Justice Stevens' advice is worth heeding: "Because we are dealing with an inevitably imprecise standard and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

in favor of disclosure." <u>United States v. Agurs</u>, 427 U.S. 97, 108, 96 S.Ct. 2392,

2399 (1976).

## VI.        RULES 404, 608 & 609

The Defendant requests disclosure of all evidence of prior bad acts that the government

intends to use in its case-in-chief, pursuant to F.R.E. 404(b).  The Defendant also requests

disclosure of all evidence of prior bad acts that the government intends to use for

impeachment of the Defendant, should he testify at trial, pursuant to F.R.E. 608(b) and

609(a).

## VII.        BRADY MATERIAL

The Defendant requests production and disclosure of all materials potentially favorable to

him, including but not limited to the following:

A.  Evidence which is exculpatory in nature, including but not limited to information,

documents, materials or any other evidence which is even arguably potentially

favorable to the Defendant;

B.  Evidence which may be used to impeach the credibility of government witnesses,

including but not limited to:

1.  plea agreements, promises of immunity, leniency, financial assistance or other

forms of assistance to any witness (<u>see</u> <u>United States v. Biaggi</u>, 675 F.Supp. 790,

812 (S.D.N.Y. 1987); <u>United States v. Taylor</u>, 707 F.Supp. 696, 703 (S.D.N.Y.

1989));

2.  prior criminal record(s) or other acts of misconduct of any witness (<u>see</u> <u>United</u>

<u>States v. Marshak</u>, 364F. Supp. 1005, 1007 (S.D.N.Y. 1973); <u>United States v.</u>

<u>DiLorenzo</u>, 1995 W.L. 169003, (S.D.N.Y.));

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

3.   evidence tending to show that any government witness has previously committed perjury;

4.   prior inconsistent statements of any government witness (see United States v. Peters, 732 F.2d 1004 (1st Cir. 1984));

5.   confidential files of any government informant(s), insofar as said files contain impeachment material;

6.   "rap" sheets of any government witness, including the criminal records of informant(s);

7.   prior testimony of any government witness which contains inconsistent statements or evidence of a witness's prior bad acts;

8.   materials relating to the character of any government witness, including all law enforcement memoranda, reports, documents, etc., critical of the witness or her credibility (see United States v. Brumel-Alvarez, 976 F.2d 1235 (9th Cir. 1992); United States v. Bernal-Obeso, 989 F.2d 331 (9th Cir. 1993));

9.   evidence that any government witness has a history of drug or alcohol abuse (see Taylor, supra, at 703);

10.  evidence that any government witness has a history of psychiatric treatment;

11.  federal, state or local presentence reports done in connection with any governmental witness (see United States v. Moore, 949 F.2d 68, 72 (2d Cir. 1991));

12.  the parole, probation and/or supervised release status of any government witness;

13.  any promises to a government witness regarding tax or administrative liability, or help in forfeiture proceedings;

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

14. money or any other award, including living expenses, medical expenses or transportation expenses, provided to any government witness;

15. involvement/participation in any witness protection program;

16. threats or other information provided to any informant(s) or witness(es) regarding the implications of a failure to testify;

17. reports of threats made against grand jury witnesses;

18. tax returns of any government witness which indicate that the witness has failed to comply with tax laws (see United States v. Lloyd, 992 F.2d 346 (D.C. Cir. 1993); United States v. Covello, 410 F.2d 536 (2d Cir. 1969));

19. reports of polygraph tests, including oral as well as written reports of examiners, and all charts examined in connection therewith (see United States v. Greichunous, 572 F.Supp 220 (N.D. Ill. 1983); Bartholomew v. Wood, 34 F.3d 870 (9th Cir. 1994));

20. evidence that a government witness was the target of any criminal or civil investigation; and

21. "El Rukn"-type benefits, such as free telephone service, contact and conjugal visits, alcohol, clothing, declination of prosecution for drug use, etc.;

22. cash payments of any kind, receipts of payments to informants or grand jury witnesses, records of payments for temporary housing of informants;

23. "negative" exculpatory statements, such as statements by informed witnesses that fail to inculpate Defendant (see United States v. Furlett, 1991 WL 255512 (N.D. Ill. 1991));

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

24. all material which tends to impeach any government witness (see <u>United States v.</u>

<u>Bagley</u>, 473 U.S. 667, 105 S.Ct. 3375 (1995); <u>Giglio v. United States</u>, 405 U.S.

150, 92 S. Ct. 763 (1972)).

25. Any and all exculpatory lab reports or tests.

26. The prosecutor has a constitutional obligation to affirmatively gather all <u>Brady</u>

material, including impeachment material, from all involved investigating

agencies, including the DEA, New York State Police and the Buffalo Police

Department:

> [T]he individual prosecutor has a duty to learn of any
>
> favorable evidence known to the others acting on the
>
> government's behalf in the case, including the police.

<u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995).  This "duty to

learn" includes gathering, and then providing to the defense, all material in the

possession of the various law enforcement agencies, which can be used by the

defense to discredit, impeach and cross-examines the government's witnesses.

<u>See also United States v. Perdomo</u>. 929 F.2d 967 (3d Cir. 1991) (prosecutor must

search records for information about witnesses' criminal backgrounds).

27. Upon information and belief, many, if not all, of the government's witnesses were

interviewed by law enforcement agents in connection with this investigation and

indictment.  Notes are regularly taken during such de-briefings.  Such notes

contain fertile grounds for impeachment.  The Defendant requires and hereby

demands any and all such notes.  If the notes have been reduced to some type of

writing or report, as is usual, the Defendant requires and demands same.  This

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

information must be provided to the Defendant immediately if it is to be of any use to him at trial, since the information must be investigated.

## VIII.  DISCOVERY, DISCLOSURE, & INSPECTION

A. The government has previously provided the undersigned with discovery of certain documents and materials.  In addition, to said voluntary discovery, Xavier Torres requests the following:

    1. Statements:

        (a).    Any written, recorded, oral or observed statement of any Defendant, or attributed to any Defendant (and of all uncharged co-Defendants or co-conspirators), including notes, summaries or memoranda concerning such statements;

        (b).    Any transcript of testimony relating to this criminal action, given by any Defendant, or any agent or employee of any Defendant (or by any uncharged co-Defendant or co-conspirator) before any grand jury; and

        (c).    Any hearsay evidence intended by the prosecutor to be introduced at trial.

B. Evidence to Establish Conspiracy:

    1. Each and every statement of a co-conspirator which will be relied upon at trial by the Government to demonstrate the requisite existence of the conspiracy charged in Count One of the indictment [in connection with an offer of otherwise hearsay testimony under Federal Rule of Evidence 801 (d) (2) (E)]. See Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775 (1987).

C. Scientific:

    1. Any report, whether written or oral, or document, or portion thereof, concerning any physical or mental examination, or scientific test or experiment relating to this

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

case. [As used herein, report includes both written and oral communications; document includes reports, lab notes or, by any other designation, memoranda, sketches, lists, charts, computations, electromagnetic recordings, videotapes, film, photographs, and the like, whether or not included in whole or part in any "report"; as used herein, "concerning. . . examination, . . . test or experiment" includes preparation for, conducting of, immediate results of, and evaluation of such procedures].

2.   Any and all laboratory examinations, reports, notes, etc. regarding cocaine referenced in the indictment that were not previously provided.

D.   Identification:

1.   Any visual or audio identification procedures utilized in this case, specifying the procedure, the participants and the circumstances; any visual or audible representation of a person or voice used for identification purposes.

2.   Results of the use of any television or video cameras commonly called a "Concealed Pole Camera" which are placed on utility poles to covertly observe a certain public area that were not previously provided.

E.   Law Enforcement Documents:

1.   All police investigative reports, complaints, evidence logs, interdepartmental memos, or other documents maintained by any state or local police or law enforcement agency relevant to any of the actions or conduct referred to in the indictment or considered by the Grand Jury in bringing the within indictment, or which are intended for use at trial or to be relied upon at trial in the presentation of the case or obtained for use in the examination of any Defendant or witness.

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

This request includes criminal history information related to any Defendant and any potential witness, and any documents concerning any alleged offenses underlying the indictment;

2. All investigative reports or documents prepared by the United States government or any agencies or persons operating on its behalf relating to the conduct charged in the present indictment or considered by the Grand Jury in bringing the indictment or which are intended for use at trial or to be relied upon at trial in the presentation of the case or obtained for use in the examination of any Defendant or witness.  This request includes criminal history information related to any Defendant and any potential witness, and any documents concerning any alleged offenses underlying the indictment; and

3. Any documents concerning the present indictment or the investigation leading to the indictment, prepared or maintained by any state correctional facility or local jail or the State Department of Correctional Services or other similar administrative agency having jurisdiction over places where any of the Defendants or alleged conspirators referred to in the indictment have been confined.

F.  Summaries and Logs of Conversations:

All monitoring logs, or summaries, or other documents concerning intercepted conversations or observed conversations that were not previously provided.

G.  Third Party Documents:

1. Any documents obtained from any banks, financial institutions, or the like relating in any way to the indictment or the investigation which lead up to the indictment;

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

2.   Any documents obtained from any utility companies, home services providers or the like, relating in any way to the indictment or the investigation which lead up to the indictment;

3.   Any documents obtained from any common carriers, whether for packages, information, data, or persons, including telephone records, or the like, relating in any way to the indictment or the investigation which lead up to the indictment; and

4.   Any documents obtained from any vendors, law firms, or any other third parties relating in any way to the indictment or the investigation which lead up to the indictment.

H.   Other documents:

Any other documents in the possession, custody or control, or with which by the exercise of due diligence could come within the control, of the prosecution that were prepared in connection with this case or are intended to be used in the trial of the Defendants.

I.   Tapes, Photographs:

1.   Copies of all video or audio tapes made in connection with the investigation by any agency that were not previously provided.

2.   A precise description of the form and location of the original recordings, and the process by which the current copy was created;

3.   Any photographs made in connection with the case;

4.   Any charts, graphs, maps or drawings related to the investigation and prosecution of this case; and

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

5.  Reports of instances when audio or visual equipment failed to properly work due to conditions beyond the control of the operator(s).

J.  Transcripts:

Verbatim transcripts of all conversations relevant to the case that were not previously provided.

K.  Physical evidence:

All physical evidence collected or seized in connection with the case, including copies of all property capable of being photocopied or reproduced.  This request includes any seized correspondence.  The source and date and time of recovery, as well as the authority under which the property was obtained, must also be disclosed.

L.  Favorable Information:

1.  All material evidence or information, whether admissible at trial or not, whether regarding facts or occurrences or the absence of facts or occurrences, known to the prosecutor or which could become known upon diligent inquiry to those under the prosecutor's direction or control, which is in any way favorable to any Defendant, whether by detracting from the prosecution's case or the credibility of the prosecution's witnesses, or supportive of the positions urged, or likely to be urged, by any Defendant at any stage of the proceedings; and

2.  Without limiting the prosecutor's duty to disclose favorable material, the defense suggests that the following, if extant, should be disclosed:

(a).  Any record of previous arrests or convictions, or any other evidence, or information demonstrating participation in dangerous, vicious, immoral or criminal behavior on the part of any persons intended to be called as witnesses by the prosecutor.

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

(b).   Any statements known to be false or erroneous or conflicting, made to a public servant engaged in law enforcement activity, or a grand jury or court, by persons intended to be called as witnesses.  Any statements, records or information indicating that any prospective witness has given contradictory or deceitful information in the course of the investigation of this case.

3.   Any information indicating that any prospective witness has given information inconsistent or materially different from information received from other more reliable sources.

4.   Names and addresses and statements of any persons interviewed by or on behalf of the government or who are known to have been witnesses to the events underlying the indictment whom the government does not intend to call as witnesses.

5.   The existence of any government agents or information or cooperating individuals in this case, and any representation, offer, agreement or understanding regarding any past, present, or future benefit to such persons as a result of or in relation to their cooperation with the prosecutor.

6.   Any information to the effect that the instant prosecution is based on or derived from evidence acquired as a result of governmental action violative of Constitutional standards.  This request expressly encompasses any information which might affect the Court's decision on a suppression issue in a fashion favorable to either Defendant.

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

7. Any information or documentation reflecting misidentification or non-identification (by person, voice, photograph or otherwise) of either Defendant as a participant in any of the alleged offenses.

8. Any information or documentation which indicates that Defendant did not actually possess the alleged controlled substances or other items.

9. Any other records or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecution's evidence or which arguably could lead to such records or information.

M. Impeaching information:

1. The defense also requests information which could be utilized for the impeachment of prosecution witnesses, including, specifically, the disclosure of any of the following within the possession, custody or control of the prosecution or which, with due diligence could become known to the prosecution:

   (a).   Any records or information revealing prior convictions or juvenile adjudications attributed to each witness to be called by the government, including but not limited to relevant "rap sheets".  Any records, including police personnel records, or information revealing prior misconduct or bad, vicious or immoral acts on the part of any witness.

   (b).   Any consideration or promise of consideration or expectation of consideration which obtains with respect to any witness intended to be called by the prosecution, including, but not limited to leniency, favorable treatment, assistance with respect to any pending legal proceeding, claim for reward or fees, including witness fees or special provisions for

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

protection, food, clothing, shelter, transportation, or other benefits, or anything else which arguably could reveal an interest, motive, or bias of the witness in favor of the prosecution or against the defense or act as an inducement to testify or to color testimony.

(c).    Any threats, express or implied, direct or indirect, or other coercive measures directed against any witness, such as threats of criminal prosecution or investigation or potential prosecution, any probationary, parole, deferred prosecution or custodial status of the witness or any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions with the prosecution or over which the prosecution has a real, apparent, or perceived influence.

(d).    Any information as to any prospective prosecution witness having a history of mental or emotional disturbance.

(e).    The existence and identification of each occasion on which any witness has testified before any court, grand jury, or other tribunal or body in relation to the Defendant, the investigation, or the facts of this case.

(f).    The existence and identification of each occasion on which each witness who was or is an informer, accomplice and/or co-conspirator has testified before any court, grand jury, or other tribunal or body.

(g).    Whether any witness has commenced or contemplates commencement of a civil action against the accused; and

(h).    Any instances where potential witnesses were the subject of searches or were arrested, then released and not charged with any crime(s).

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

(i). The same information requested in paragraphs "(a)" through "(h)" above is also requested with respect to each non-witness declarant whose statements may be offered in evidence.

N.  Alleged Prior Misconduct:

Any alleged criminal or immoral conduct on the part of any Defendant intended to be used against any Defendant on the government's direct or rebuttal case, or in the examination of any Defendant who might testify at trial.

O.  Expert Testimony:

Pursuant to F.R.Cr.P. 16(a)(1)(E), a written summary of expert testimony that the government intends to use in its direct case; said expert's qualifications; and, the basis of the expert's opinion, whether or not the expert files a report.

P.  Specific CR/FIF Reports and further discovery including 404(b) records.

Although uncharged, the government has advised that the defendant Torres was involved in multiple shootings, allegedly associated with the charged drug conspiracy. By cover of letter dated October, 24, 2019 (Exhibit "D"), your declarant requested the government provide the requisite documentation set forth therein which was discovered as a result of a FOIL request. Said records were not provided by the City of Rochester and remain outstanding from the government. The specific requests include :

1.   FIF #15-164993-6/29/15 call for service.

2.  FIF #15-253801-9/23/15 traffic stop near 11 Burbank Street.

3.  FIF #15-234783-9/4/15 traffic stop-11-14 Burbank Street area.

4.  CR#16-179570-7/13/16 incident.

5.  CR #16-213156-Brandon Smith stop.

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

6.  Report from Concerned Citizen -week of 2/19/18.

7.  3/31/16 reports regarding shootings of Caesar Lopez Quinones and Michael

    Bruno.

8.  1/20/16 reports regarding shooting of Luis Garcia Pizzaro.

9.  CR#164993-6/29/15 incident-6 Burbank Street.

10. CR#267279-10/8/15 incident-6 Burbank Street.

11. CR#236419-9/6/15 incident-11 Burbank Street.

12. CR#238970-9/8/15 incident-11 Burbank Street.

13. CR#266167-10/7/15 incident-11 Burbank Street.

14. CR#274383-10/15/15 incident-11 Burbank Street.

15. CR#295213-11/7/15 incident-11 Burbank Street.

16. Body cam videos of July 30, 2015 search.

17. Body cam videos of February 6, 2016 motor vehicle stop and arrest.

R.  All of the requested items are reasonable, material, and necessary for the defense of

    Xavier Torres. Moreover, the Supreme Court holdings in Missouri v. Frye, 566 U.S.

    134 (2012) and Lafler v. Cooper, 566 U.S. 156 (2012) have made clear that the pre-

    trial stage in which potential plea agreements can be reached prior to trial, constitute a

    critical stage of representation for a criminal defendant.

S.  To the extent that Rule 16 of Federal Rules of Criminal Procedure and the Jencks Act

    reference a later time than now to produce said disclosure, then the defendant's

    fundamental constitutional rights to due process and the right to confront his accusers

    with meaningful and effective legal representation are seriously prejudiced  and

    jeopardized.

**LAW OFFICE OF**

**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE

SUITE 301

ROCHESTER, NY 14618

(585) 232-2640

T.  In <u>Frye</u> **,** the issue was the failure to communicate an offer. In <u>Lafler</u>, ineffective

assistance was determined based on bad advice given the defendant by his attorney.

U.  There still remain outstanding discovery items referenced herein which are material to

an assessment of the defendant's case, and any potential plea offers to resolve this

case. It is astonishing that the government alleges other uncharged acts intended to

enhance the defendant's potential exposure yet has failed to disclose the factual basis

for same.

V.  "The constitutional guarantees apply to pretrial critical stages that are a part of the

whole course of criminal proceeding, a proceeding in which defendants cannot be

presumed to make critical decisions without counsel's advice." <u>Lafler</u>,  566 U.S. at

162. The Court further noted that "Even if the trial itself is free from constitutional

flaw, the defendant who goes to trial instead of taking a more favorable plea may be

prejudiced from either a conviction on more  serious counts or the imposition of a

more severe sentence." <u>Lafler</u>, 566 U.S. at 163. Accordingly, it is highly prejudical to

the defendant if the requested discovery items, including items alleged to be 404(b)

materials are not promptly disclosed  to the defense, with pertinent protective order

provisions if the situation warrants.

IX.          **BILL OF PARTICULARS RULE 7(F)**

A.  Pursuant to Rule 7 (f); U.S. Const. 4th Amend.; <u>U.S. v. Bortnovsky,</u> 820 F.2d 572

(2nd Cir. 1987); <u>U.S. v. Santoro,</u> 647 F. Supp. 153 (E.D.N.Y. 1986) and <u>U.S. v.</u>

<u>Ramirez,</u> 602 F. Supp. 783 (S.D.N.Y. 1985) the Defendant requests the following:

1.  The names of all alleged co-conspirators the government intends to offer proof

about at trial, but are not named in the indictment. Under the reasoning in <u>U.S. vs.</u>

<u>Davidoff</u>, 845 F2d 1151 (2nd Cir. 1988), and <u>U.S. vs. Bortnovsky</u>, 820 F2d 572

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

(2nd Cir. 1987), the preparation of an adequate defense mandates disclosure of the nature of the charged conspiracy.  Vague, amorphous references to persons "known and unknown" are impossible to defend against.

The principles governing requests for a bill of particulars are well settled.  A bill is appropriate to permit a Defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling Defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky 820 F.2d 572, 574 (2nd Cir. 1987) (citations omitted) (percunam).  The prosecution need not particularize all of its evidence. United States v. Gottlieb 493 F 2d 987994 (2nd Cir. 1974).  The decision to grant or deny a bill of particulars is within the sound discretion of the district Court. United States v. Panza, 750 F.2d 1141 1148 (2nd Cir.1984).

2.   The precise amounts and types of controlled substances the Defendant is alleged to have distributed or possessed with the intent to distribute.  As explained in the "Indictment" portion of this motion, under two  U.S. Supreme Court rulings, the amounts and types of drugs, as facts that dictate the severity of sentence, are elements of the crime that must be submitted to the jury  and ; therefore, included in the indictment. (Apprendi vs. New Jersey, supra; Castillovs. United Sates, 530 U.S. 120 (2000).

3.   The precise conduct by Xavier Torres  the government intends to prove at trial to demonstrate his joinder and participation in the conspiracy alleged in count one.

4.   The precise conduct by Xavier Torres   the government intends to prove at trial to demonstrate he possessed drugs with the intent to distribute it as alleged in count

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

two and three including the amount(s) of drugs directly attributable to this Defendant.

5.   The conduct alleged to constitute the maintenance of a drug operation or residence as alleged in the Third Superseding Indictment.

**X.**        **ROUGH NOTES**

A.   The Defendant requests an order directing law enforcement personnel who participated in the investigation of this case to retain and preserve all rough notes taken at any stage of the discovery.

B.   This request includes interviews and contacts law enforcement had with confidential informant(s), cooperating witness(es), co-Defendant(s), or witnesses.

C.   The Defendant further requests the disclosure of these notes by the Government as being relevant and material to the defense of this case and being in the interest of justice that full disclosure take place.

**XI.**        **RULE 48 DISMISSAL**

A.   The defendant Xavier Torres respectfully contends that the delays in presentment of the case to the grand jury and the delays in filing an indictment against him has resulted in prejudice in his ability to present a defense and was unreasonably delayed.

B.   The defendant allegedly committed offenses in 2015 and early 2016 as alleged in the Third Superseding Indictment yet he was not arrested until December 2018.

C.   The defendant no longer resided in Rochester by late 2015. The alleged conspiracy encompasses time periods from 2015 to January 29, 2018. This delay has resulted in difficulty in locating or producing witnesses in support of the defendant's case.

D.   Rule 48 of the Federal Rules of Criminal Procedure provides in pertinent part that:

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

Rule 48 Dismissal
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>> (1) presenting a charge to the grand jury;
>> (2) filing an information against a defendant.

E.  The delay from 2015 to December 2018 was unreasonable and unnecessarily prejudicial to the Defendant Xavier Torres.

F.  Accordingly, the Defendant respectfully requests that the Third Superseding Indictment be dismissed against him.

## XII.        JAMES HEARING

A.  The Defendant contests the government's contention of a drug conspiracy.

B.  The government has the burden of satisfy the pre-requisites to the admission of alleged co-conspirator statements under Federal Rules of Evidence Section 801 (d)(2)(E). See Bourjaily v. United States, 483 U.S. 171 (1987).

C.  "The declaration by on defendant is admissible against the other defendant only where there is a "sufficient showing by , independent evidence, of a conspiracy among one or more other defendants and the declarant, and if the declarations at issue were in furtherance of that conspiracy". United States v. James, 590 F.2d 575 (5th Cir. 1979).

D.  The government must provide substantial independent evidence  the elements of the conspiracy in order to permit the admission of alleged statements of co-conspirator testimony. United States v. Mulder, 273 F.3d 91 (2d Cir. 2001); United States v. Silverman, 861 F.2d 571 (9th Cir. 1988).

E.  The Second Circuit has noted that alleged testimony of co-conspirators are "presumptively unreliable". United States v. Tellier, 273 F.3d 91 (2d Cir. 2001).

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

F.   Wherefore, the defendant Xavier Torres requests that the Court hold a James hearing in advance of any testimony of others alleged to be involved in a drug conspiracy, consistent with case law and FRE 104(c).

## XIII.        SEVERANCE OF THE DEFENDANT XAVIER TORRES

A.   The Third Superseding Indictment, alleges offenses which are not charged to the Defendant Xavier Torres, including the Sixth Count of Attempt to Kill Officers and mployees of the United States by Obed Torres Garcia, allegedly occurring on January 29, 2018.

B.   The government claims against Xavier Torres are alleged to occur in 2015 through February 6, 2016; the defendant is not alleged to have been involved in the alleged attempted murder charge involving Obed Torres Garcia, who is no relation to the defendant yet has a common middle name.

C.   There are obvious "spillover" concerns about this attempted murder charge having an adverse impact on Xavier Torres. United States v. Locasio, 6 F.3d 924 (2d Cir. 1993). Although there is no claim of complicity here, the prejudice associated with the conduct alleged to have been taken against law enforcement officers during a search is highly prejudicial and will have an adverse effect on this defendant receiving a fair trial.

D.   Your declarant is also concerned about the statements of co-defendants be used to implicate the defendant, raising confrontation and Bruton concerns. See Bruton v. United States, 301 U.S. 123 (1968); Crawford v. Washington, 541 U.S. 36 (2004).

E.   In whole or in part, these circumstances will result in Xavier Torres being severely prejudiced unless he is afforded a separate trial.

**LAW OFFICE OF**
**MAURICE J. VERRILLO, P.C.**

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640

F.   In accordance with Federal Rules of Criminal Procedure 8, 12, and 14, a severance for
Xavier Torres from the remaining co-defendants, or in the alternative, the severance
of Attempted Murder charges from this proceeding is requested.

## XIV.        FURTHER RELIEF

In addition to the relief requested above, the Defendant respectfully requests such other and

further relief as the Court deems just and proper, including joining in all motions of

co-defendant's motions and requests for relief.

Dated:      November 11, 2019

Rochester, New York

Respectfully submitted,

/s/ Maurice Verrillo

MAURICE J. VERRILLO, ESQ.
Attorney for Xavier Torres, Defendant
3300 Monroe Ave., Ste. 301
Rochester, New York  14618
        (585) 232-2640

LAW OFFICE OF
MAURICE J. VERRILLO, P.C.

3300 MONROE AVENUE
SUITE 301
ROCHESTER, NY 14618

(585) 232-2640