IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                                            18-CR-6094-FPG-JWF

       v.

CARLOS JAVIER FIGUEROA,
JONATHAN CRUZ-CARMONA,
XAVIER TORRES,
VICTOR NUNEZ, et al.,

                        Defendants.

---

### GOVERNMENT'S RESPONSE TO
### DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Katelyn M. Hartford, Assistant United States Attorney, hereby files its consolidated response to the pre-trial motions of defendants CARLOS JAVIER FIGUEROA, JONATHAN CRUZ-CARMONA, XAVIER TORRES, and VICTOR NUNEZ.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2019, a federal grand jury returned a twenty-one-count Third Superseding Indictment (18-CR-6094-FPG, Docket 240) charging defendants CARLOS JAVIER FIGUEROA (hereinafter FIGUEROA), JONATHAN CRUZ-CARMONA (hereinafter CRUZ-CARMONA), XAVIER TORRES (hereinafter TORRES), VICTOR NUNEZ (hereinafter NUNEZ), and others, with various offenses relating to a narcotics conspiracy between in or about 2015 and through on or about January 29, 2018, as follows:

- FIGUEROA
  Count 1 – narcotics conspiracy
  - Counts 2, 5, 10 – possession, brandishing, and discharging firearms in furtherance of drug trafficking
  - Counts 3, 18, 20, 21 – possession of controlled substances with intent to distribute
  - Counts 4, 17, 19 – maintaining a drug-involved premises
  - Count 9 – murder with a firearm in furtherance of drug trafficking
  - Count 10 – discharge of firearm in furtherance of drug trafficking
- CRUZ-CARMONA
  - Count 1 – narcotics conspiracy
  - Counts 2, 10 – possession, brandishing, and discharging firearms in furtherance of drug trafficking
  - Count 9 – murder with a firearm in furtherance of drug trafficking
  - Count 14 – distribution of fentanyl
- TORRES
  - Count 1 – narcotics conspiracy
  - Count 2 – possession, brandishing, and discharging firearms in furtherance of drug trafficking
  - Counts 11, 12, 13, 15, 16 – distribution of controlled substances
  - Count 17 – maintaining a drug-involved premises
- NUNEZ
  - Count 1 – narcotics conspiracy
  - Count 2 – possession, brandishing, and discharging firearms in furtherance of drug trafficking

Defendants FIGUEROA, CRUZ-CARMONA, TORRES, AND NUNEZ have filed pre-trial motions seeking various forms of relief.

Substantial voluntary discovery has been provided to the defendants.  Additionally, the defendants have been previously provided notice pursuant to Rule 12(b)(4), that the government intends to use all items that the defendants have been provided with, or that they have been made aware of, or that we have made available for disclosure, as such evidence shall be used by the government against the defendant at trial in its case in chief.

## II.    GENERAL RESPONSE TO DEFENSE MOTIONS

### A.    BILL OF PARTICULARS

Defendants' request for a bill of particulars should be denied.  The law regarding requests for bills of particulars is well-settled.  Contrary to the expansive notions underlying the defendants' requests, the singular, and quite limited, function of a bill of particulars is "to provide [the] defendant[s] with information about the details of the charge[s] against . . . [them] if this is necessary to the preparation of . . . [their] defense, and to avoid prejudicial surprise at trial."  United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); see also United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).  A bill of particulars is accordingly "not to be used as a general investigative tool for the defense, as a device to compel disclosure of the Government's evidence or its legal theory prior to trial, or to foreclose the Government from using proof it may develop as the trial approaches."  United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted).  The government may therefore "not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain the Government's case."  Id. (citations omitted).

The information defendants seek to have particularized are details relating to the formation, operation and overt acts committed in furtherance of the charged conspiracy.  As judges in this district have stated, "'[t]here is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge,' and requests for particularization of the 'whens,' 'wheres' and 'with whoms' of

particular acts allegedly committed by a defendant in furtherance of a conspiracy are routinely denied." United States v. Christner, No. 13-CR-6025CJS, 2015 WL 6508058, at *9 (W.D.N.Y. Oct. 27, 2015) (internal quotation marks and citations omitted) (collecting cases). The defendants' requests for these particulars, therefore, should be denied.

The government notes that the defendants' inquiries concern evidentiary details regarding the charges in the Indictment and are answered by reference to those counts and the substantial discovery which the government has already provided.  That discovery includes police reports, wiretap pleadings, intercepted calls and text messages, search warrant pleadings, defendant criminal histories, recorded statements, pole camera footage, photographs, and lab reports.  Additionally, the indictment in this case was preceded by criminal complaint affidavits which detail some of the defendants' criminal activity.

Collectively, all of this information provides the defendants with more than sufficient notice to prepare their defense and to avoid prejudicial surprise at trial.  Torres, supra; United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) ("Generally, if the information sought by defendants is provided in the indictment or in some acceptable form, no bill of particulars is required."); Jimenez, 824 F. Supp. at 362 (bill of particulars not required even for information properly subject to further particularization where such information available through discovery or review of the Indictment).  Accordingly, the defendants' various requests for a bill of particulars should be denied.

### B.    DISCOVERY AND INSPECTION

In federal court, "pre-trial discovery in criminal cases is strictly circumscribed." United States v. Nelson, 606 F. Supp. 1378, 1389 (S.D.N.Y. 1985).  "Although Rule 16(a) [of the

Federal Rules of Criminal Procedure] provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." United States v. Percevault, 490 F.2d 126, 130 (2d Cir. 1974).

The government has complied with its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure.  That discovery is voluminous and includes police reports, wiretap pleadings, intercepted calls and text messages, search warrant pleadings, defendant criminal histories, recorded statements, pole camera footage, photographs, and lab reports.  The government has filed Notice of Intent to Use Evidence pursuant to Rule 12(b)(4), Fed.R.Crim.P.  See Docket ## 95, 152, 163, 188, and 225.  The government, therefore, objects to the defendant's discovery demands to the extent that they are moot or request material beyond the scope of the government's discovery duties.  The government will continue to provide any discoverable materials in conformity with Rule 16 and any defense request of merit.

## 1.    **Defendants' Statements**

The government believes that all currently known statements which are discoverable under Fed. R. Crim. P. 16(a)(1)(A) have been provided to the defendants during voluntary discovery.  Any other statements will be provided as they are identified.

## 2.    **Defendants' Prior Record**

Defendants' criminal records have been provided to the defendants.

## 3.    **Documents, Objects, Search and Seizure**

All material discoverable under Fed.R.Crim.P. 16(a)(1)(C) is believed to have been made available for inspection as part of voluntary discovery.  To the extent that any other material is identified, it will be provided.  The government seized tangible evidence during

the various searches in this investigation.  Defense counsel may examine such evidence at any mutually agreeable time upon prior notice.

### 4.    Reports of Scientific Examinations and Tests and Expert Disclosure

The government has disclosed, or will disclose, all materials it possesses that are discoverable under Rule 16(a)(1)(F), including forensic laboratory analyses regarding seized evidence in compliance with Rules 16(a)(1)(F) and (G).  These laboratory analyses include but are not limited to chemical analysis of drugs seized and purchased during the investigation, lab reports relating to examination of the various firearms seized during the investigation, and DNA analysis of material collected during this investigation, including DNA collected from firearm(s) seized during this investigation.  The government will provide any additional laboratory reports to the defense immediately upon receipt.

As disclosed in the July 11, 2019 Rule 12(b)(4) supplemental notice, the government intends to offer expert testimony from experienced officers regarding the methods and practices of drug dealers.  The government also intends to call one or more drug examiners to testify to the results of drug laboratory examinations; one or more firearms examiners to testify concerning the nature and operability of any weapons seized in connection with this investigation; a witness from the Medical Examiner's office regarding manner of death; and an expert(s) in the field of DNA.  The government will provide more detailed expert disclosures prior to trial.

To date, the government has complied with the requirements of Rule 16 of the Federal Rules of Criminal Procedure.  The government's delivery of the voluntary discovery materials renders the remaining discovery requests moot.  Pre-trial discovery is an on-going effort.  If

additional discovery materials become available, the government will disclose them without undue delay. See Rule 16(c).

### 5. Search and Seizure Warrants, Title III Applications

The government has provided to the defendants copies of the search warrant applications, search warrants, Title III applications and orders in this case.

### C. GRAND JURY

The government opposes Defendant FIGUEROA and CRUZ-CARMONA'S requests for disclosure of Grand Jury information. "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." United States v. Procter & Gamble, 356 U.S. 677, 682 (1957). Disclosure of grand jury materials is controlled by Fed.R.Crim.P. 6(e), which "was not designed as an authorization for pretrial discovery. Its purpose, on the contrary, is to protect the secrecy of the Grand Jury proceedings by restricting disclosure to the exceptional case where a particularized need is shown." United States v. Weinstein, 51 F.2d 622, 627 (2d Cir. 1975) (footnote omitted). Vague requests or allegations of misconduct are not sufficient. U.S. v. Minerd, 299 Fed.Appx. 110 (3d Cir. 2008). A defendant has the burden of showing that his "particularized need" for grand jury notes or testimony outweighs the general policy of grand jury secrecy. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959). While Rule 6(e) does not insulate from disclosure all information presented to grand juries, it is clear that:

> [t]he aim of the rule is to prevent disclosure of the way in which information was presented to the grand jury, the specific questions and inquiries of the grand jury, the deliberations and vote of the grand jury, the targets upon which the grand jury's suspicion focuses, and specific details of what took place before the grand jury.

<u>In re Grand Jury Investigation of Ven-Fuel</u>, 441 F. Supp. 1299, 1302-03 (M.D.Fla. 1977). This information is exactly what defendants seek.

Moreover, much of what defendants seek to show would be to no avail.  For example, misinforming the grand jury as to the applicable law does not constitute grounds for dismissal of the indictment.  <u>United States v. Beech-Nut Nutrition Corp.</u>, 659 F. Supp. 1487, 1499 (E.D.N.Y. 1987).  More generally, in <u>United States v. Williams</u>, 504 U.S. 36 (1992), the Supreme Court reiterated that a challenge to the reliability or competence of the evidence presented to the grand jury will not be heard and went on to state:

> It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation.  A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading."  Our words in <u>Costello [v. United States</u>, 350 U.S. 359 (1956),] bear repeating:  Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]."  350 U.S., at 364.

<u>Id.</u> at 54-55 (footnote omitted).  The Third Superseding Indictment here, being valid on its face, requires a trial on the merits.  <u>United States v. Wilson</u>, 565 F. Supp. 1416, 1437 (S.D.N.Y. 1983).

Counsel's request for disclosure of Grand Jury information is not supported by a particularized need for disclosure and is instead a mere fishing expedition.  As such, the government opposes defendants' request in its entirety.

Should any grand jury witnesses testify at trial, their grand jury testimony will be turned over as <u>Jencks</u> material before trial.

### D.   DISCLOSURE OF WITNESS STATEMENTS

Defendants FIGUEROA and CRUZ-CARMONA seek the early pretrial disclosure of witness statements.

Rule 16(a), however, "simply does not encompass these statements, nor does the Jencks Act permit their disclosure over the objection of the government."   United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974); see also In re United States, 834 F.2d 283 (2d Cir. 1987); United States v. Marquez, No. 91CR451, 1992 WL 88139, slip op. at 6 (S.D.N.Y. Apr. 22, 1992) ("Rule 16 permits discovery only of defendant's statements, not those of others.").   The Jencks Act requires the government to produce any prior statements of a witness that relate to the subject matter of the witness's testimony and that are in the government's possession after the direct examination of the witness. 18 U.S.C. § 3500. Because the Jencks Act provides the exclusive procedure for discovering statements a government witness has given to law enforcement agents, United States v. Novello, 410 F.2d 536, 543 (2d Cir. 1969), this Court does not have the authority to order early disclosure. See In Re United States, 834 F.2d 283, 286-87 (2d Cir. 1987); Percevault, 490 F.2d at 126.

Nonetheless, consistent with the practice in this District, the government agrees to disclose Jencks Act material two weeks prior to trial.  To the extent that any statements may qualify as Brady material, they will be disclosed to the defense.  At the time of this writing, however, the government is unaware of any witness statements that constitute Brady material.

### E.      FEDERAL RULES OF EVIDENCE 404(b), 608 AND 609

Defendants FIGUEROA, TORRES, and CRUZ-CARMONA have moved pursuant to Fed. R. Evid. 404(b), 608, and 609 for disclosure of prior bad acts and impeachment material.

Fed. R. Evid. 404(b) requires the government to provide "reasonable notice in advance of trial" of the "general nature" of prior uncharged crimes that the government intends to use at trial.  No set timetable for notice is required, however, as evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial. United States v. Aguirre-Parra, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991). The reasonableness of Rule 404(b) notice is determined by the particular circumstances of the case. See United States v. Falkowitz, 214 F.Supp.2d 365, 393 (S.D.N.Y. 2002) (disclosure of Rule 404(b) evidence two weeks before trial).

Fed. R. Evid. 609 requires a party to provide "sufficient advance written notice" of the party's intent to use evidence of a criminal conviction more than ten (10) years old to impeach a witness. See United States v. Livoti, 8 F.Supp.2d 246, 250 (S.D.N.Y. 1998) (holding government has no obligation to provide impeachment material under Rule 609 prior to trial unless it involves conviction more than ten years old).  If the defendants testify at trial, the government intends to cross-examine them regarding the pertinent convictions set forth in his criminal history.

Consistent with the practice in this District, the government agrees to disclose prior to trial, along with the Jencks Act material, the specific nature of any evidence it intends to use under Fed. R. Evid. 404(b), 608 and 609.

**F.      PRESERVATION OF ROUGH NOTES**

In this Circuit, notes of a government agent which are incorporated into a written report need not be preserved or produced. See United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); United States v. Gotchis, 803 F.2d 74, 77-78 (2d Cir. 1986) (government not obligated to preserve notes later reduced to formal reports).  Nonetheless, the government has instructed the case agents involved in this investigation to preserve any and all rough notes relating to this investigation.

**G.      DISCLOSURE OF INFORMANT INFORMATION**

Defendants FIGUEROA, TORRES, and CRUZ-CARMONA move for disclosure of all cooperating witnesses in this case.  As a general rule, the government is not required to disclose the identities of confidential informants.  See Rovario v. United States, 353 U.S. 53, 59 (1957).  To obtain such disclosure, a defendant must demonstrate that, absent disclosure, he "will be deprived of a fair trial."  United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). In other words, the government is not required to disclose the identity of an informant unless the defendant demonstrates that such information is "material to the defense."  United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988).  In determining whether disclosure is warranted, a court should consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  Rovario, 353 U.S. at 62.  The defendant bears the burden of demonstrating the need for disclosure of an informant's identity.  See Fields, 113 F.3d at 324.  The disclosure of a confidential informant's identity is committed to the sound discretion of the Court. Id.

A defendant may not be entitled to disclosure even though he has shown the informant was a participant in and a witness to the crime. See United States v. Jimenez, 789 F.2d 167 (2d Cir. 1986). "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied... that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324 (citing Rovario, 350 U.S. at 62).

In this case, defendants have not demonstrated a need for the requested informant information or that such information is material to their defense. The conclusory statements in their motions are patently insufficient to justify such disclosure. This motion, therefore, must be denied. To the extent defendants request information qualifying as Jencks Act and/or Giglio material, the government agrees to disclose such information two weeks prior to trial.

### H.    SEVERANCE

Defendants FIGUEROA, TORRES, and CRUZ-CARMONA have moved for severance. These motions should be denied as the defendants have not demonstrated that they are entitled to a severance, and as such have failed to overcome the strong presumption in favor of a joint trial.

The general principles governing motions for a Rule 14 severance are by now well settled. Fed. R. Crim. P. 14(a) (hereinafter "Rule 14(a)") permits a court to sever the trials of co-defendants where they have been indicted together properly under Rule 8(b), but joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). A defendant seeking severance under Rule 14(a) must overcome the strong presumption in favor of trying jointly indicted

defendants together. See United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) (stating "absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried"); see also United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) (noting the "preference, in the federal system, for the joint trial of defendants indicted together") (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)).

In evaluating a defendant's Rule 14(a) motion, courts must consider that separate trials of jointly indicted defendants could "impair both the efficiency and the fairness of the criminal justice system" by requiring "that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." Richardson v. Marsh, 481 U.S. 200, 210 (1987). Furthermore, individual trials present the risk of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." Id. In contrast, jointly trying such defendants "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id.

A defendant seeking severance under Rule 14(a) must prove "facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial." United States v. An-Lo, 851 F.2d 547, 556 (2d Cir. 1988); see also United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998) (stating a defendant must establish that the prejudice resulting from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials"). Such a showing requires more than the danger of some prejudice or a better chance at acquittal in a separate trial. See United States v. Torres, 901 F.2d 205, 230 (2d Cir. 1990). A motion to sever is addressed to the discretion

of the trial court.  See United States v. Lasanta, 978 F.2d 1300, 1306 (2d Cir. 1992);  United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991).

In moving for severance, a defendant bears an "extremely difficult burden."  United States v. Carpenter, 689 F.2d 21, 27 (2d Cir. 1982).  A defendant must show that he will be so severely prejudiced that joinder would, in effect, deny him a constitutionally fair trial, resulting in a miscarriage of justice.  See Zafiro, 506 U.S. at 539 (stating Rule 14 severance appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence");  United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993).

The law imposes a heavy burden on a defendant seeking Rule 14 severance because joint trials are in the public interest.  See Zafiro, 506 U.S. at 537.  The interests of convenience, economy, and efficient administration of justice favor the joinder of trials, "especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted," as here.  Cardascia, 951 F.2d at 482.  "[T]he federal judiciary harbors a strong presumption in favor of joinder as a mechanism for promoting judicial efficiency, and limiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial." United States v. Santiago, 174 F.Supp.2d 16, 22 (S.D.N.Y. 2001) (citing Zafiro, 506 U.S. at 539; United States v. Diaz, 176 F.3d 52, 103-104 (2d Cir. 1999); and United States v. Gallo, 668 F. Supp. 736, 748 (E.D.N.Y. 1987)).

A trial court should consider the following factors in deciding whether Rule 14(a) severance is warranted: (1) the number of defendants and the numbers of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees

of involvement by defendants; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others.  Gallo, 668 F. Supp. at 749; see also United States v. Forde, 699 F.Supp.2d 637, 643 (S.D.N.Y. 2010); Santiago, 174 F.Supp.2d at 22.  None of these factors is dispositive, but each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants.  Id.

In this case, the defendants have failed to satisfy this heavy burden to justify discretionary severance.  In support of defendants' motions, they make only a conclusory claim that severance is justified by spillover prejudice due essentially to voluminous discovery and the role of other members of the conspiracy.  It is well-settled, however, that disparities in the proof against or notoriety of defendants do not justify separate trials.  See An-Lo, 851 F.2d at 557 (stating that "differing levels of culpability and proof are inevitable in any multi-defendant trial, and, standing alone, are insufficient grounds for separate trials");  United States v. Aloi, 511 F.2d 585, 598 (2d Cir. 1975) (stating, "[q]uite naturally in any multi-defendant trial there will be differences in degree of guilt and possibly degree of notoriety of the defendants.  There may be some likelihood that proof admitted as to one or more defendants will be harmful to the others.  However, this possibility does not necessarily justify individual trials").

Moreover, an analysis of the Gallo factors unquestionably favors a joint trial.  The Indictment is not especially complex.  Rather, the charges relate to a narcotics conspiracy which spanned a few years.  The defendants also have not articulated a conflict in defense theories that would be present in a joint trial.  Any "prejudicial spillover" that could result from the admission of the conspiracy evidence at trial can be eliminated by a limiting

instruction to the jury that it must assess the evidence against each defendant separately from the evidence against other defendants.  See United States v. Spinelli, 352 F.3d 48, 55-56 (2d Cir. 2003); Diaz, 176 F.3d at 103; Santiago, 174 F.Supp.2d at 23 (stating trial "will not present such complicated legal and factual issues that the jury in its deliberations will be prone to misapply the evidence relevant to particular defendants and charges" and that any risk "can be mitigated through carefully crafted limiting instructions that warn the jurors to take into account only the evidence admissible against each defendant"); United States v. Muyet, 945 F. Supp. 586, 598 (S.D.N.Y. 1996).

## I.    **BRADY**

While the government is fully aware of its responsibilities under the doctrine of Brady v. Maryland, 373 U.S. 83 (1963), it does not agree that the doctrine covers many of the Brady requests made by the defendants.

Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, the government has an affirmative duty to provide a defendant with exculpatory evidence, as well as evidence that the defendant might use to impeach the government's witnesses at trial.  See United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972).  Brady and Giglio, however, do not require the disclosure of evidence affecting the credibility of prosecution witnesses immediately upon request by a defendant; rather, such evidence must be disclosed in time for its effective use at trial.  See United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008); In Re United States (Coppa), 267 F.3d 132, 146 (2d Cir. 2001).

Further, <u>Brady</u> "does not require the Government to do defense counsel's pre-trial preparation, nor develop a defense strategy, nor does it require the Government to point out the obvious." <u>United States v. Larson</u>, 567 F. Supp. 500, 503 (S.D.N.Y. 1983), <u>aff'd</u>, 742 F.2d 1443 (2d Cir. 1984). <u>Accord</u> <u>United States v. Amor</u>, No. 92CR223, 1992 WL 309875, slip op. at 4 (N.D.N.Y. 1992) ("'the purpose of the Brady rule is not to provide a defendant with complete disclosure of all evidence in the government's file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him.'") (quoting <u>United States v. Ruggerio</u>, 472 F.2d 599 (2d Cir. 1973)).

The government has turned over any arguably exculpatory evidence in this case. The government is fully aware of its obligations and responsibilities under <u>Brady</u> and acknowledges its continuing duty to disclose any exculpatory material.

Consistent with the dictates of <u>Coppa</u> and the practice in this District, the government will disclose any <u>Giglio</u> and impeachment materials in its possession at the time it discloses Jencks Act materials, which will enable defense counsel to effectively use such materials at trial.

## J.     **DEFENDANT STATEMENTS**

The government previously filed an Amended Notice, pursuant to Fed.R.Cr.P. 12(b)(4), notifying the defense that it intends to introduce certain post-arrests statements at trial.

Any motions to suppress defendants' statements must fail because defendants have not filed an affidavit from an individual with personal knowledge.  "A defendant seeking suppression of evidence must present [his] claim through an affidavit of an individual with personal knowledge."  United States v. Boone, 2003 WL 21488021, at *6 (S.D.N.Y. June 27, 2003) (citing United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967)).  And if an affidavit is submitted, it must be specific, detailed, and nonconjectural.  United States v. Pena, 961 F.2d 333, 399 (2d Cir. 1992).  Absent such an affidavit, this motion must be denied. See, e.g., United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (stating a defendant's assertion, through his own affidavit, that Miranda warnings were not given is sufficient to create factual issue requiring hearing); Boone, 2003 WL 21488021, at *6.).

The government reserves the right to respond further should any defendant file such an affidavit.

### K.   JENCKS ACT MATERIAL

Consistent with the practice in this District, the government agrees to disclose Jencks Act material two weeks prior to trial.

### L.   CONSPIRACY HEARING

Defendants FIGUEROA, TORRES, and CRUZ CARMONA move for a pre-trial hearing to determine whether the government can establish a foundation for admitting statement of co-conspirators.

Federal Rules of Evidence 801(d)(2)(E) provides, in pertinent part, that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay.  In order to admit the statement of a co-conspirator under Rule 801(d)(2)(E), a trial court "must find (a) that there was a conspiracy, b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  United States v. Alameh, 341 F.3d 167, 176 (2d Cir. 2003) (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 955 (2d Cir. 1990)); see also Bourjaily v. United States, 483 U.S. 171, 175-176 (1987).

In the Second Circuit, co-conspirator statements are conditionally admitted into evidence during the government's case.  See United States v. Castellano, 610 F. Supp. 1359, 1427-1428 (S.D.N.Y. 1958) (stating, "[t]he Second Circuit has consistently held that declarations that are otherwise hearsay may nevertheless be provisionally admitted pursuant to Rule 80l(d)(2)(E) subject to connection" during trial).  At the close of the government's case, the trial court must determine whether the proof has shown by a preponderance of the evidence "that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy."  United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996); see also United States v. Mulder, 273 F.3d 91, 103 (2d Cir. 2001).

In making this determination, the co-conspirator statements themselves may be considered by the Court in order to prove the existence of a conspiracy and, therefore, may be received at trial. See Bourjaily, 483 U.S. at 181. "[N]either Bourjaily nor any other court precedent requires or recommends the use of a pre-trial hearing" to determine the admissibility of co-conspirator statements under Rule 801(d)(2)(E).  United States v. Heatley, 994 F. Supp.

483, 490 (S.D.N.Y. 1998).  "In fact, the Second Circuit has expressly approved the practice of admitting such statements at trial subject to the government's introduction of evidence which will support the required finding under <u>Bourjaily</u>."  <u>Id.</u> (citing <u>United States v. Tracy,</u> 12 F.3d 1186, 1199-1200 (2d Cir. 1993) and <u>United States v. Henry,</u> 861 F. Supp. 1190, 1196-1197 (S.D.N.Y. 1994)).

It is clear from the established precedent in this Circuit that defendants are not entitled to a pre-trial hearing regarding the admissibility of co-conspirator statements under the Federal Rules of Evidence.  In any event, the government submits that the evidence at trial will sufficiently establish the foundational predicates for admitting such statements.

### M.   <u>AUDIBILITY HEARING</u>

The government does not oppose an audibility hearing should the parties be unable to resolve any question of tape audibility.  <u>See</u> <u>United States v. Chiarizio</u>, 525 F.2d 289, 293-94 (2d Cir. 1975); <u>United States v. Bryant</u>, 480 F.2d 785, 789 (2d Cir. 1973).  However, at this point, the defendant has not specified any particular calls or audio that are unclear and would require an audibility hearing.  In the event that the defendant identifies recordings that are unclear, the government requests that these issues be presented to government counsel for review and possible resolution in lieu of a hearing.

### N.   <u>ALIAS OR MONIKER</u>

Defendant CRUZ-CARMONA seeks to strike the use of aliases in the indictment.  It is well-established that an indictment may properly include any allegation that is "relevant to

the case and will constitute part of the government's proof at trial." United States v. Esposito, 423 F. Supp. 908, 911 (S.D.N.Y. 1976).  See also United States v. Napolitano, 552 F. Supp. 465, 480 (S.D.N.Y. 1982).  A motion to strike, presumably made pursuant to Fed.R.Crim.P. 7(d), "will be granted only where it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial." United States v. Klein, 124 F. Supp. 476, 479-80 (S.D.N.Y. 1954), aff'd, 247 F.2d 908 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958) (emphasis added).

As with other language in indictments, the clear law in this Circuit and elsewhere is that aliases and nicknames are proper in an indictment where they will be part of the government's proof at trial.  United States v. Miller, 381 F.2d 529, 536 (2d Cir. 1967), cert. denied, 392 U.S. 929 (1968); United States v. Moya-Gomez, 860 F.2d 706, 762 (7th Cir. 1988), cert. denied, 492 U.S. 908 (1989); United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1976); United States v. Skolek, 474 F.2d 582, 586 (10th Cir. 1973).  In this case, proof of the nickname will be part of the government's case.  Inclusion of the defendant's nicknames is of particular importance because some witnesses did not know the defendant's government name.  Instead they merely knew him by the monikers included in the indictment.  If no proof of a link between the defendant and the alias is introduced, a motion to strike the language may be made at the end of the government's case.  See United States v. Moya-Gomez, supra, 860 F.2d at 762; United States v. Persico, supra, 621 F. Supp. at 860-61.  Furthermore, defendant has not established how the defendants' nicknames – "Tapon" and "Eneno" – are inflammatory.

For the foregoing reasons, the defendant's motion to strike the use of aliases should be denied.

### O.    **IDENTIFICATION EVIDENCE**

Defendants FIGUEROA, CRUZ-CARMONA, AND TORRES seek a hearing under United States v. Wade, 338 U.S. 218 (1967) regarding identification procedures performed during the investigation.  However, Defendants have failed to make the requisite threshold showing to be entitled to a Wade hearing, and therefore such requests must be denied.

To the extent Defendants FIGUEROA and CRUZ-CARMONA also seek specific information regarding the identification procedures, much of the requested information was already outlined in separate correspondence to each defendant dated March 22, 2019.  In each letter, the government outlined the dates and named the investigators that displayed photos to witnesses regarding that defendant.  As the letter to Figueroa indicated, photos including Figueroa were displayed to Witness A, B, D, E, F, I, J, L, N, and O.  As the letter to Cruz-Carmona indicated, photos including Cruz-Carmona were displayed to Witness A, B, C, E, F, L, and N.  Attached to each letter were copies of the photo arrays or single photos shown to each witness.  The photo arrays/photos are bates numbered so counsel is able to tell which witness viewed each photo array/photo.  Similar correspondence was provided to TORRES and NUNEZ.

To be entitled to a Wade hearing, a defendant must "make a threshold showing that the surrounding circumstances or actual conduct of the [pretrial identifications] were suggestive."  United States v. Leonardi, 623 F.2d 746, 755 (2d Cir. 1980); see also United States v. Washington, No. 05-CR-558 NG, 2006 WL 3359060, at *2 (E.D.N.Y. Nov. 17,

2006) ("Where ... the defendant has failed to make a threshold showing of impropriety in the conduct of an array, a pre-trial hearing into the identification procedures is not warranted.").

Put another way, "A defendant may not baldly request a <u>Wade</u> hearing; rather he must allege facts supporting his contention that the identification procedures used were impermissibly suggestive." <u>United States v. Berganza</u>, No. S(4) 03 CR. 987(DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005); <u>see also</u>, <u>United States v. Swain</u>, No. S408 Cr. 1175(JFK), 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (defendant not entitled to a hearing where his "suggestion of impropriety in the presentation of a photo array is mere speculation"); <u>United States v. Adeniyi</u>, No. 03 Cr. 86(LTS), 2003 WL 21146621, at *3 (S.D.N.Y. May 14, 2003) (denying a motion without a hearing where the defendant had failed to proffer "any information indicating that there were irregularities in the presentation of the arrays"); <u>United States v. Hamideh</u>, No. 00 Civ. 950, 2001 WL 11071, at *1 (S.D.N.Y. Jan. 3, 2001) (holding that "threshold showing" not satisfied where defendant was only individual smiling in photographic array of six); <u>United States v. Giovanelli</u>, 747 F. Supp. 875, 885 (S.D.N.Y. 1989) (denying a request for a hearing where the defendant did not allege "any concrete grounds" to suggest that identification procedures were improper).

Here, defendants have not made the required threshold showing to necessitate a hearing. Cruz-Carmona states, without any elaboration, only that "upon information and belief, the photo arrays were unduly and impermissibly suggestive and the identification must be suppressed." Docket #257 at ¶158. Defendants' motions provide no basis to conclude that the circumstances or conduct relating to the identification of the defendant by the investigators was in any way suggestive and defendants have failed to make any threshold

showing of suggestiveness that would require a hearing.  Cf., United States v. Ikoli, No. 16-CR-148(AJN), 2017 WL 396681 at *3 (S.D.N.Y. Jan 26. 2017) (denying request for a Wade hearing where defense counsel "generically argues that because the Government's discovery disclosures 'do not detail the circumstances of how these three witnesses came to identify Mr. Ellis,' he must assume that 'the identification proceedings were impermissibly suggestive and the witnesses should not be permitted to make an in-court identification of Mr. Ellis.'") with United States v. Wilson, 493 F.Supp.2d 364, 382-83 (E.D.N.Y. 2006) (granting a request for a Wade hearing because the defendant had specifically "raised concerns over the differing skin tones and ages between himself and the five fillers used in the lineups").

In any event, all identifications were made by individuals who knew the defendant they identified and who had an independent basis for their identifications.

Defendants' applications for a Wade hearing should be denied.

### P.    LEAVE

The government does not oppose defendants' requests to make further motions, provided that such motions could not have been made with the omnibus motions presently before the Court and that such motions have not been previously made and decided by the Court.

### Q.    SUPPRESSION OF PHYSICAL EVIDENCE

Defendants FIGUEROA and TORRES move to suppress evidence seized pursuant to various state and federal search warrants and other physical evidence.  Because defendants

have not sufficiently established standing to challenge the search warrants, these motions should be denied.

The burden of establishing standing or rights under the Fourth Amendment is on the party moving to suppress evidence. United States v. Pena, 961 F.2d 333, 336 (2d Cir. 1992). The threshold question in such cases is whether the defendant had a legitimate expectation of privacy in the area searched or in the articles seized. United States v. Smith, 621 F.2d 483, 486 (2d Cir. 1980), cert. denied, 449 U.S. 1086 (1981). The court should only address the issue of probable cause if, and only if, the defendant satisfies the threshold standing issue. Pena, 961 F.2d at 338.

To satisfy this requirement, the defendant must submit sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge to prove facts necessary to support a defendant's professed subjective expectations and the overall reasonableness of his or her position. See United States v. Montoya-Eschevarria, 892 F. Supp. 104, 106 (S.D.N.Y. 1995); United States v. Gerena, 662 F. Supp. 1218, 1249-51, 1258 (D.Conn. 1987). The assertion in the affirmation of defendants' respective lawyers do not suffice to establish defendants' standing to challenge a search. United States v. Sanchez, 846 F. Supp. 241, 243 (W.D.N.Y. 1994) (Arcara, J.) ("The surmise and speculation contained in defense counsel's brief is clearly insufficient to meet that burden of proof [on the standing issue].") Similarly, a reliance on government assertions is insufficient and fails to satisfy the burden of showing the defendant held a subjective expectation of privacy in a place searched or an item seized. Gerena, 662 F. Supp. at 1250.

Defendants have provided no sworn evidence which would provide a basis for finding that their Fourth Amendment rights were implicated by the searches in question -- defendants

have not made any sworn factual allegation concerning their relationship to the searched premises to establish a legitimate subjective expectation of privacy in the location on the date of the search; nor have they asserted any property or possessory interest in the property seized. Furthermore, Figueroa failed to articulate with specificity what evidence he seeks to suppress.

Therefore, defendants have no standing to challenge the constitutionality of the search and seizure, see United States v. Pena, supra, 961 F.2d at 337, and their motions for suppression of evidence should, on that basis, be denied.

The government reserves the right to respond further should any defendant file a sufficient affidavit.

### R.      MOTION TO SUPPRESS WIRETAP EVIDENCE

FIGUEROA makes various challenges to the wiretap evidence in this case. However, as a threshold matter, defendant does not state which wiretapped phones he seeks to suppress nor established whether he is an aggrieved person as to some or all of those phones.  As such, he has not established standing to challenge the wiretaps.  Nonetheless, even if he were able to establish standing, such challenges are legally groundless and factually unsupported.  Therefore, his arguments challenging the wiretap evidence should be rejected.

### 1.      The State Wiretap Warrants were supported by ample probable cause

To the extent defendant seeks suppression of the wiretaps on the grounds that the wiretaps were not supported by probable cause.  The government concedes defendant has standing to challenge the wiretap on this ground as he was listed as a targeted interceptee in

the wiretap applications.  However, because there was ample evidence to establish probable cause, such motion should be denied.

The standard for probable cause necessary to secure a wiretap order is the same as that required for a regular search warrant, United States v. Gallo, 863 F.2d 185, 191 (2d Cir. 1988), and exists when the facts made known to the issuing Judge are "sufficient to warrant a prudent man in believing" that evidence of a crime could be obtained through the use of electronic surveillance.  Beck v. Ohio, 379 U.S. 89, 91 (1964); see also 18 U.S.C. § 2518(3).  As the Supreme Court has made clear, probable cause is comparable to evidence "which warrant[s] suspicion" and requires "only the probability, and not a prima facie showing, of criminal activity."  Illinois v. Gates, 462 U.S. 213, 235 (1983); see also United States v. Shipp, 578 F. Supp. 980, 985 (S.D.N.Y. 1984), aff'd sub nom., United States v. Wilkinson, 754 F.2d 1427 (2d Cir.), cert. denied, 472 U.S. 1019 (1985).

When a probable cause determination is made, the affidavit supporting the application for a wiretap must be read as a whole and tested in a common-sense fashion.  Gates, 462 U.S. at 235-36; United States v. Kahan, 572 F.2d 923, 929 (2d Cir.), cert. denied, 439 U.S. 833 (1978).  As the Court emphasized in Gates, "[t]echnical requirements of elaborate specificity ... have no proper place in this area."  462 U.S. at 235; see also Texas v. Brown, 460 U.S. 730 (1983).

Finally, once entered, wiretap orders, like search warrants, are entitled to a presumption of validity.  United States v. Fury, 554 F.2d 522, 530 (2d Cir. 1977), cert. denied, 436 U.S. 931 (1978).  Accordingly, in considering whether the issuing court based its decision on probable cause, "great deference" must be given to the issuing court's prior determination.  Gallo, 863 F.2d at 191.  The only role of the reviewing court is "merely to determine whether

the issuing court had a 'substantial basis' for concluding that electronic surveillance would uncover evidence of wrongdoing." Id.

Measured against these standards, the defendant's probable cause challenge must fail. The challenge brought by the defendant essentially amounts to nothing more than a conclusory statement that the underlying affidavits failed to establish probable cause, and otherwise failed to set forth any basis to support the assertions made therein.  In light of the presumption of validity accorded wiretaps and the fact that the defendant bears the burden of overcoming that presumption, the probable cause challenge raised by the defendant should be denied on this basis alone.  See United States v. Jabara, 618 F.2d 1319, 1326-27 (9th Cir.), cert. denied, 449 U.S. 856 (1980) (in light of presumption of validity, defendant challenging wiretap has initial burden of establishing prima facie showing that condition precedent had not been met); Gordon v. United States, 438 F.2d 858, 866 (5th Cir.), cert. denied, 404 U.S. 828 (1971); Nolan v. United States, 423 F.2d 1031, 1041 (10th Cir.), cert. denied, 400 U.S. 848 (1970); United States v. Moine, et al., No. 86CR313, 1987 WL 7729, slip op. at 5-6 (S.D.N.Y. March 3, 1987) (denying wiretap challenges because they were based, in part, on "nothing more than conclusory allegations").

The government concedes that redacted affidavits previously provided to defense counsel contained redactions of information that was essential to establishing probable cause that Roberto Figueroa was using cell phones (585) 743-0005 and (585) 485-9741 in furtherance of drug trafficking.  In light of this, the government has provided new copies of these pages, without redactions, to defense counsel. [1]

---

[1] Redactions referred to were present in pages 38 through 49 of the affidavit pertaining to (585) 743-0005 dated 12/20/2017 (discovery documents bates numbered 2020.01.07 GOV482 through 2020.01.07 GOV493) and pages 14 through 21 of the affidavit pertaining

Without the redactions mentioned above, the collective weight of the information contained in the affidavits of Rochester Police Department (RPD) Investigator Joseph Briganti dated December 20, 2017 as to Roberto Figueroa (585) 743-0005; January 2, 2018 as to Felix Figueroa (585) 629-2194; January 5, 2018 as to Roberto Figueroa (585) 485-9741; January 5, 2018 as to Orlando Yelder (585) 732-8902; and January 17, 2008 as to Roberto Figueroa (585) 743-0005; and the information contained in the affidavits of Rochester Police Department Investigator David Swain dated January 10, 2018 as to Carlos Javier Figueroa (585) 766-8057; January 10, 2018 as to Leitscha Poncedeleon (585) 685-4661; and January 12, 2018 as to Carlos Javier Figueroa (585) 662-8156.[2]  These affidavits each establish that the named user of each target phone was using the respective target phones to further and facilitate his/her narcotics trafficking activities and to communicate with customers and coconspirators.  The Thus, the wiretaps were supported by ample probable cause and should not be suppressed.

2.  **FIGUEROA's challenge to the sufficiency of the averments in the supporting affidavits regarding use of alternative investigative techniques are legally and factually groundless**

a)  **The law governing the "normal investigative techniques" criterion requires something far short of exhaustion and provides for a highly deferential standard of review**

---

to (585) 485-9741 dated 1/5/2018 (discovery documents bates numbered 2020.01.07 GOV420 through 2020.01.07 GOV427).

[2] Copies of these affidavits, along with the accompanying applications and orders, have been provided to the Court under separate cover.

In accordance with 18 U.S.C. § 2518(3)(c), an application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." These requirements are to be construed in a "common sense and realistic fashion," United States v. Ruggiero, 726 F.2d 913, 924 (2d Cir. 1984), and "were not intended to turn electronic surveillance into a tool of last resort." United States v. Valdez, 1991 WL 41590, slip op. at 2 (S.D.N.Y.), aff'd, 952 F.2d 394 (2d Cir. 1991). As the Second Circuit has made clear:

> The purpose of the[se] statutory requirements is not to preclude the use of electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

United States v. Torres, 901 F.2d 205, 231 (2d Cir. 1990) (emphasis added).

In the context of narcotics conspiracies, the Second Circuit has further held that the government meets its burden in this regard simply by "describing how traditional investigative techniques had failed to provide more than 'a limited picture' of . . . [the] narcotics organization." Valdez, supra, slip op. at 2 (quoting Torres, 901 F.2d at 232). Moreover, the Second Circuit has deemed wiretapping "particularly appropriate" where -- as is true in this case -- "the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987).

Finally, in assessing whether the government has satisfied this burden, the Second Circuit has warned that the averments alleged in connection with the use of normal investigative techniques are not to be reviewed de novo. Torres, 901 F.2d at 231. The role of

the reviewing court instead is simply to "decide if the facts set forth in the application were minimally adequate to support the determination that was made." Torres, 901 F.2d at 231 (emphasis added); see also United States v. Villegas, 1993 WL 535013, slip op. at 6 (S.D.N.Y. 1993); United States v. Miranda, 1993 WL 410507, slip op. at 2-3 (S.D.N.Y. 1993) (court's initial "determination that normal investigative techniques would not suffice is entitled to substantial deference.")

    **b)**    **The statements contained in the Affidavits of Investigators Briganti and Swain in support of the wiretaps were more than minimally adequate to support the state court's normal investigative techniques determinations**

Viewed through the prism of this highly deferential standard of review, Figueroa's attempt to challenge the normal investigative techniques portion of the affidavits in support of wiretap authority must fail. Contrary to Figueroa's contention, the affidavits of RPD Investigators Briganti and Swain provide an exhaustive explanation of why other investigative techniques (including use of confidential informants, surveillance, toll records, undercover officers, search warrants, and grand jury subpoenas and testimony) were insufficient to achieve the goals of the investigation. See generally RPD Inv. Briganti December 20, 2017 Affidavit as to Roberto Figueroa (585) 743-0005 at pp. 56-63; Briganti January 2, 2018 Affidavit as to Felix Figueroa (585) 629-2194 at pp. 26-33; Briganti January 5, 2018 Affidavit as to Roberto Figueroa (585) 485-9741 at pp. 26-33; Briganti January 5, 2018 Affidavit as to Orlando Yelder (585) 732-8902 at pp. 29-36; Briganti January 17, 2008 Affidavit as to Roberto Figueroa (585) 743-0005 at pp. 23-30; RPD Inv. Swain January 10, 2018 Affidavit as to Carlos Javier Figueroa (585) 766-8057 at 34-42; Swain January 10, 2018

Affidavit as to Leitscha Poncedeleon (585) 685-4661 at 30-38; and Swain January 12, 2018 affidavit as to Carlos Javier Figueroa (585) 662-8156 at 27-35. (Provided to the court under separate cover).

**3.    The good faith exception under United States v. Leon applies to violations of Title III – even if the wiretap warrants were defective, the investigators relied in good faith on the wiretap warrants and the evidence obtained through such warrants should not be suppressed.**

In any event, the defendant has not shown that the agents and officers conducting the wiretaps failed to rely in good faith on the validity of the challenged eavesdropping warrant. Even assuming that the wiretap order was improperly issued, evidence obtained pursuant to the wiretap is admissible if the executing agents and officers relied on the warrant in "objective good faith." United States v. Leon, 468 U.S. 897, 923 (1984); see United States v. Bailey, 2016 WL 6082239, at *18 (W.D.N.Y. Oct. 17, 2016) (stating that courts in Second Circuit have applied the good faith exception to wiretaps).  The government is prepared to establish, if necessary, that the good faith exception applies to the facts in this case.

Defendant has proffered no proof suggesting that the investigators did not rely in good faith on the wiretap warrants.  Therefore, assuming for purposes of argument that the wiretap warrants were somehow defective, the wiretaps should still not be suppressed.

**4.    Minimization**

Figueroa's request that the wiretap evidence be suppressed because of alleged improper minimization should be denied for several reasons.

First, Figueroa has not cited with specificity which calls he alleges were improperly minimized, nor has he stated which of the seven wiretapped phones the allegedly improperly minimized calls were on.  This not only falls short of demonstrating any factual support for his claim, but it makes it impossible for the government to respond to his allegations.  Due to Figueroa's failure to specify any specific facts that support his claim, Figueroa's motion should be denied.

Second, to the extent Figueroa appears to assert that all wiretap evidence should be suppressed, he has not established standing to challenge all of the wiretapped phones. Standing to challenge improper minimization requires the showing of a direct privacy interest. United States v. Fury, 554 F.2d 552, 526 (2d Cir. 1977); United States v. Burford, 755 F. Supp. 607, 613 (S.D.N.Y. 1991) ("[i]t is well settled law in this Circuit that to have standing to challenge improper minimization during a wiretap executed by the government, that a defendant must show a direct privacy interest").  The Second Circuit has held that only a person with a possessory or proprietary interest in premises on which the subject telephones are located has standing to contest the minimization procedures used by law enforcement agents.  See United States v. Ruggiero, 928 F.2d 1289 (2d Cir.1991); United States v. Gallo, 863 F.2d 185 (2d Cir.1988); United States v. Fury, 554 F.2d 522, 526 (2d Cir.1977), cert. denied, 436 U.S. 931 (1978).  Moreover, as noted by the Second Circuit, even defendants who are named as targets of the investigation or whose conversations are intercepted during the investigation may lack standing to challenge law enforcement's minimization techniques if they did not have an expectation of privacy in the residence in which the tapped telephone was located.  United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir.), cert. denied, 502 U.S. 938 (1991); see also United States v. Poeta, 455 F.2d 117, 122 (2d Cir.) (finding defendant

lacked standing to raise minimization challenge concerning wiretap of co-defendant's telephone), cert. denied, 406 U.S. 948 (1972); United States v. Villegas, 1993 WL 535013 at *8 (defendant lacked standing to challenge improper minimization of co-defendant's cellular telephone).

Figueroa has not submitted an affidavit to establish that he had any privacy interest in any of the telephone lines. Five of the seven phones subject to wiretap surveillance were identified as belonging to Roberto Figueroa, Leitscha Poncedeleon, Orlando Yelder, and Felix Figueroa. Although Figueroa was identified as the owner of two of the wiretapped phones – (585) 662-8156 and (585) 766-8057 – he has not submitted an affidavit establishing a privacy interest in the phones. Because Figueroa has not established a privacy interest as to any of the phones, he has no standing to challenge the minimization procedures used during the wiretap. Therefore, Figueroa has no standing to challenge the minimization procedures used during the wiretap of those cell phones.

Assuming for purposes of argument that Figueroa had standing to challenge the non-minimization of certain communications, he still has failed to demonstrate a violation of the minimization requirements. The Supreme Court has recognized that:

> During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter. Interception of those same type of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type.

Scott v. United States, 436 U.S. 128, 141, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

Figueroa does not identify any particular conversations or texts which he believes should have

been minimized and were not.  Figueroa's motion to suppress on grounds of improper minimization should therefore be denied.

Finally, even if Figueroa were to establish that some calls were improperly minimized, the remedy for interception of some non-pertinent conversations is merely the suppression of those improperly intercepted. United States v. Scott, 516 F.2d 751, 760 n. 19 (D.C. Cir. 1975); United States v. Shakur, 560 F. Supp. 316, 326 (S.D.N.Y. 1983); United States v. Cox, 462 F.2d 1293, 1301-1302 (8th Cir.), cert. denied, 417 U.S. 918 (1974). United States v. Rastelli, 653 F. Supp. 1034, 1051 (E.D.N.Y. 1986).  "Suppression of the entire wiretap is warranted only when, at a minimum, 'a substantial number of nonpertinent conversations ha[ve] been intercepted unreasonably,' and possibly only in cases of pervasive disregard of the minimization requirement." United States v. McGuinness, 764 F.Supp. 888, 900 (S.D.N.Y. 1991) (internal citations omitted).  Here, the defendant has not cited a single call that was intercepted unreasonably, let alone a pervasive disregard of the minimization requirement.

For the above-stated reasons, the defendant's motion based on alleged improper minimization of the wiretap calls should be denied.

## S.   **RECIPROCAL DISCOVERY**

As detailed above and in Rule 12(b) notices, the government has provided extensive voluntary discovery to the defendants under Fed.R.Crim.P. 16. Pursuant to Fed.R.Crim.P. 16(b), the government demands to inspect, copy and/or photograph the following:

a.      All books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant, and which the defendant intends to introduce as evidence-in-chief at trial (Fed.R.Crim.P. 16(b)(1)(A));

b.      Any and all results or reports of any physical or mental examinations and of any scientific tests or experiments made in connection with the instant case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence-in-chief at trial or which were prepared by a witness whom the defendant intends to call at trial and the results or reports relate to his or her testimony (Fed.R.Crim.P. 16(b)(1)(B));

c.      Disclosure, pursuant to Fed.R.Crim.P. 16(b)(1)(C), of a written summary of testimony the defendant intends to use under Fed.R.Evid. 702, 703 and 705, including the opinions of witnesses, the bases and reasons for those opinions, and the witness's qualifications; and

d.      Pursuant to Fed.R.Crim.P. 26.2, the government requests that, prior to the trial of the instant case, the defendant disclose all prior statements, as defined in Fed.R.Crim.P. 26.2(f), of any witness to be called by the defendant in the trial of this case, relating to the subject matter of the witness's direct testimony. Further, the government requests that such material be provided no later than two weeks prior to the start of trial; and

e.      If, prior to or during trial, the defendant discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this Fed.R.Crim.P. 16, the defendant shall promptly notify the government of the existence of the additional evidence or material as required by Fed.R.Crim.P 16(c).

## III.    SPECIFIC MOTIONS OF DEFENDANTS

Defendants' individual motions are addressed below.  The government refers to each defendant's motions by the heading number used by that defendant in his motion papers.[3]

### A.    CARLOS JAVIER FIGUEROA

### 1.    Discovery and Inspection

See Sections II.B. Discovery and Inspection, II.D. Witness Statements, and II.G. Disclosure of Informant Information, above.

### 2.    Brady Material

See Section II.I. Brady, above.

### 3.    Bill of Particulars

See Section II.A. Demand for Bill of Particulars, above.

### 4.    An Order Pursuant to Rule 609 of the Federal Rules of Evidence Limiting the Cross-Examination of the U.S. Attorney

See Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above.

Defendant claims he has not received a copy of defendant's prior criminal record. However, the defendant's criminal history was provided to the defense at the outset of this prosecution.  I spoke with defense counsel, who stated he believes he does have a copy of

---

[3] Defendants' individual arguments are addressed below, addressing each motion by the heading number (or page number when headings were unnumbered) used by each defendant.

the defendant's criminal history.  In any event, another copy has been provided to the defense out of an abundance of caution.

**5.      An Order Requiring the Criminal Records of Government Witnesses to Explore Bias**

See Section I.I. Brady, above.

**6.      An Order Requiring the Government to Disclose any Evidence It intends to Introduce During Its Case in Chief Pursuant to Federal Rules of Evidence Rule 404(b)**

See Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above.

**7.      Jencks Act Material**

See Section II.K. Jencks Act Material, above.

**8.      Selective Prosecution**

FIGUEROA moves to dismiss the charges against him on the grounds that the government is selectively prosecuting him.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," such as the defendant's race, religion, or other impermissible basis. United States v. Armstrong, 517 U.S. 456, 464-65 (1996).  Absent "clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." Id. at 464 (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)); see also Wayte v. United States, 470 U.S. 598, 607-08 (1985).

In this Circuit, a defendant must satisfy two elements to prevail on a selective prosecution claim:

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, [the defendant] has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974); see also Wayte, 470 U.S. at 608 (stating defendant must establish that government policy "had a discriminatory effect and that it was motivated by discriminatory purpose").

In this case, Figueroa has not alleged the requisite elements of a selective prosecution claim. Rather, he claims that the government has selectively prosecuted him because it has chosen not to file criminal charges against "other unindicted co-conspirators with greater culpability than the Defendant." This allegation plainly does not satisfy the requirements set forth in Berrios. In any event, the government notes that the evidence will show that Figueroa was the head of the conspiracy. Furthermore, as of the time of this submission, the government has filed criminal charges against many of Figueroa's co-conspirators, five of whom are charged along with him in the Third Superseding Indictment. Because Figueroa has failed to allege a prima facie claim of selective prosecution, this Court must deny the motion to dismiss.

## 9.   Notice Pursuant to Rule 12(d)(2) FRCP

It is unclear what defendant is requesting, as there is no Rule 12(d)(2). However, the government notes it has provided notice pursuant to Rule 12(b)(4) to the defendant. Pre-trial

discovery is an ongoing effort.   If additional discovery materials become available, the government will disclose them without undue delay.  <u>See</u> Rule 16(c).

### 10.     **An Order Requiring an Audibility Hearing**

<u>See</u> Section II.M. Motion for Audibility Hearing, above.

### 11.     **Motion to Suppress Wire Tap Evidence**

<u>See</u> Section II.R. Motion to Suppress Wiretap Evidence, above.

### 12.     **Evidence of Conversations Involving an Alleged Coded Conversation**

Defendant has failed to cite any law in support of his position, and his motion should be denied.

Defendant erroneously cites a collection of cases about admissibility of lay witness and expert witness trial testimony under Rules 701 and 702.  The cases cited are inapplicable at this phase of proceedings as no trial testimony has taken place at this time.

### 13.     **Voice Identification**

Defendant has not cited any law or facts in support of his position, and his motion should be denied.

### 14.     **Minimization**

<u>See</u> Section II.R.4. Minimization, above.

**15.    An Order Allowing Limited Discovery Concerning Certain Aspects of the Grand Jury Proceedings**

<u>See</u> Section II.C. Grand Jury, above.

**16.    An Order Compelling the Government to Reveal the Existence of Government Informants, Indicted, Unindicted Co-Conspirators and any Cooperating Witnesses**

<u>See</u> Section II.G. Disclosure of Informant Information, above.

**17.    Dismissal of Indictment (Insufficiency)**

Defendant offers no legal or factual support in favor of his position, and his motion for dismissal of the indictment should be denied.

Defendant claims the indictment should be dismissed due to alleged "defects in the Grand Jury process."  His allegations are wholly speculative and unsupported.  Defendant also claims that "nothing exists to identify the Defendant . . . as being involved in this case."  First, the Criminal Complaint in this case sets forth with considerable detail evidence of the defendant's involvement in this case.  Additionally, the government has provided extensive discovery to the defense to date that amply identify the defendant's involvement in this case, including but not limited to police reports, wiretap pleadings, intercepted calls and text messages, search warrant pleadings, defendant criminal histories, recorded statements, pole camera footage, photographs, and lab reports.

For the above reasons, the defendant's motion to dismiss the indictment should be denied.

### 18.   Suppression of any and all Alleged Statements of the Defendant

See Section II.J. Defendant Statements, above.

### 19.   Suppression of Evidence – Identification of Evidence

See Section II.O. Identification Evidence, above regarding photographic identification.  As to voice identification, the defendant has not cited any law or facts in support of his position.

### 20.   Suppression of Tangible Evidence

See Section II.Q. Suppression of Physical Evidence, above.

### 21.   An Order Requiring the Hearing to be held at the time of trial to determine whether there exists independent evidence of a conspiracy as charged and if selective prosecution has taken place in this matter.

See Section II.L. Conspiracy Hearing, above.

### 22.   Challenge to Jury Selection

Defendant's motion should be denied for several reasons.

First, to the extent defendant requests jury lists, his motion is premature.  As this case has not yet been set for trial, it is impossible to determine whether the master jury wheel from which the jury list in this case will be selected has even been generated, or whether the current master jury wheel will be the one utilized in this case.

Second, a court order is unnecessary as much of the information defendant requests is addressed in the April 2018 Jury Plan of the United States District Court of the Western

District of New York (hereinafter "Jury Plan").  The Jury Plan is publicly available via the Western District of New York's website on the "Jury Info" page.[4]

Finally, to the extent defendant requests information not covered by the Jury Plan, defendant's request for material exceeds the scope of what he is entitled to under The Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861, et seq. ("JSSA").  As has been recognized in this district, "the right to access material under the JSSA is not unfettered." United States v. Pirk, 281 F.Supp.3d. 342, 344 (2017) (Wolford, J.) (citing cases).  Section 1867(f) of the JSSA "makes clear that a litigant has essentially an unqualified right to inspect jury lists" and "grants access in order to aid parties in the 'preparation of motions challenging jury-selection procedures.'"  Pirk, 281 F.Supp.3d. at 343 (citing Test v. United States, 420 U.S. 28, 30 (1975).  However, a defendant's right to records only pertains to "such data as [a defendant] needs to challenge the jury selection process," and "[t]he JSSA is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court." Id. (citations and quotations omitted).

For the foregoing reasons, defendant's motion for various records pertaining to jury selection should be denied.

---

[4] The Jury Plan's direct web address is:
https://www.nywd.uscourts.gov/sites/nywd/files/2018%20Jury%20Plan%20-%20FINAL.pdf.  In the alternative, the Jury Plan can be accessed by going to https://www.nywd.uscourts.gov/jury-duty-information, scrolling to the bottom of the page, and clicking the link to "Jury Plan (Revised April 2018)".

**23.** **An Order Pursuant to Rule 609 of the Federal Rules of Evidence Limiting the Cross-Examination of the U.S. Attorney**

See response to Figueroa's #4 (referring to Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above).

**24.** **[Blank]**

**25.** **An Order Requiring the Criminal Records of Government Witnesses to Explore Bias**

See response to Figueroa's #5 (referring to Section I.I. Brady, above).

**26.** **An Order Requiring the Government to Disclose Any Evidence It Intends To Introduce Its Case In Chief Pursuant to Federal Rules of Evidence Rule 404(B) (sic)**

See response to Figueroa's #6 (referring to Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above).

**27.** **An Order Allowing Limited Discovery Concerning Certain Aspects of the Grand Jury Proceedings**

See response to Figueroa's #15 (referring to Section II.C. Grand Jury, above).

**28.** **An Order Requiring the Hearing to be held at the time of trial to determine whether there exists independent evidence of a conspiracy as charged and if selective prosecution has taken place in this matter**

<u>See</u> response to Figueroa's #21 (referring to Section II.L. Conspiracy Hearing, above).

**29.   <u>Superseding Indictment</u>**

Defendant requests that the government notify the defense about its intention to seek additional charges against him, provide the statutory minimum and maximum penalties faced by him, and provide "a preliminary PSR" (including information relevant to the Sentencing Guidelines calculation sin this case).  Defendant cites no legal authority in support of his position, and his requests should be denied.

The government is aware of no legal authority requiring it to disclose its intention to seek a superseding indictment.  On the contrary, Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides that, subject to narrow exceptions, a government attorney shall not disclose matters occurring before the grand jury.  <u>See</u> Section II.C., above.  The government has no intention of compromising the integrity of the Grand Jury process by advising the defendant in advance whether they are conducting an investigation and considering an Indictment against the defendant.  The Court should deny this request.

With respect to defendant's request for applicable sentencing ranges in this case, the government has recited, on the record at the defendant's arraignments, the statutory minimum and maximum penalties for the charges included in the Third Superseding Indictment.   As for defendant's request for Sentencing Guidelines information, the government notes that defendant cites no legal authority for such a request.  The government submits that defense counsel can reach his own conclusions about the defendant's sentencing exposure under the Sentencing Guidelines based on the charges in the Indictment and the

information provided during discovery, including defendant's criminal records.  Additionally, it is not the government's responsibility to prepare a PSR at any phase of the prosecution.

**30.**　**Severance**

<u>See</u> Section II.H. Severance, above.

**31.**　**An Order Allowing Counsel to Join Each and Every Motion Made By Other Counsel**

The government defers to the discretion of the Court on the issue of joinder by a defendant in the motions of his co-defendant.  It should be noted, however, that certain motions filed by defendants require an independent demonstration of standing, which the government does not waive.

**32.**　**Motion for Prompt and Immediate Disclosure of Rule 404(B) Evidence**

<u>See</u> response to Figueroa's ## 6 and 26 (referring to Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above).

**33.**　**Motion for Disclosure of Names, Address and Criminal Records of Witnesses**

<u>See</u> response to Figueroa's ## 5 and 25 (referring to Section I.I. <u>Brady</u>, above).

**34.**　**Search Warrants**

<u>See</u> response to Figueroa's #20 (referring to Section II.Q. Suppression of Physical Evidence, above).

**35.**   <u>**Order Reserving the Right to Bring Further Motions**</u>

<u>See</u> Section II.P. Leave, above.


**B.**   <u>**XAVIER TORRES**</u>

**I.**   <u>**Suppression of Evidence**</u>

<u>See</u> Section II.J. Defendant Statements, above.


**II.**   <u>**Suppression of Statements**</u>

<u>See</u> Section II.Q. Suppression of Physical Evidence, above.


**III.**   <u>**Disclosure of Informant Identity**</u>

<u>See</u> Section II.G. Disclosure of Informant Information, above.


**IV.**   <u>**Preclusion of Identification Testimony**</u>

<u>See</u> Section II.O. Identification Evidence, above.


**V.**   <u>**Jencks Material**</u>

<u>See</u> Section II.K. Jencks Act Material, above.


**VI.**   <u>**Rules 404, 608 & 609**</u>

<u>See</u> Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above.


**VII.**   <u>**Brady Material**</u>

<u>See</u> Section II.I. <u>Brady</u>, above.

## VIII.   Discovery, Disclosure & Inspection

See Section II.B. Discovery and Inspection, above.

"Exhibit D" of defendant's motion consists of correspondence to the government requesting various police reports and body camera footage the defendant wanted the government to procure for him.  The government did not receive this letter in the mail and only received it as an Exhibit to the motion.  Although obtaining police reports on behalf of the defendant exceeds the scope of Rule 16 discovery, the government will look into obtaining the requested items and will turn over discoverable items.  The government notes, however, that the Rochester Police Department did not use body worn cameras in 2015 and 2016, so items P and Q do not exist.  Additionally, item H was already provided to defendant on December 27, 2019.

## IX.   Bill of Particulars Rule 7(f)

See Section II.A. Demand for Bill of Particulars, above.

## X.   Rough Notes

See Section II.F. Preservation of Rough Notes, above.

## XI.   Rule 48 Dismissal

The defendant's request for dismissal of the Indictment pursuant to Rule 48(b) must be denied.

First, Rule 48(b) relates to dismissal of a criminal complaint due to unreasonable delays post-arrest, not pre-arrest as argued here.  A complaint regarding the amount of time

between the commission of the crime and the time charges were filed is more appropriately brought as a statute of limitations argument. However, the defendant has no such argument to make in this case because he was charged within the statute of limitations for all offenses charged.

Responding to any complaint defendant makes under Rule 48(b), there was no unreasonable post-arrest delay in this case. As Docket 6:18-mj-00686 reflects, a Criminal Complaint was filed against Torres on November 20, 2018. Torres was arrested approximately one week later on December 5, 2018. At defendant's initial appearance on December 6, 2018 he was assigned counsel, the government moved for detention, and a detention hearing was set for December 10, 2018. Time is excluded for this period under 18 U.S.C. § 3161 (h)(1)(d) due to the pendency of the detention motion. On December 10, 2018, the detention hearing was not held, and the defense requested an adjournment of 30 days to review discovery. A status conference was set for January 11, 2019, and time was excluded until that date under 18 U.S.C. § 3161(h)(7) in the interest of Justice. On January 11, 2018, the defense requested an additional two week adjournment to receive additional voluntary discovery, a status conference was set for January 25, 2019, and time was excluded in the interest of justice. On January 25, 2018, the case was again adjourned, with a status conference set for February 8, 2019, and time was excluded in the interest of justice. On February 8, 2019, defendant demanded a preliminary hearing, and the speedy indictment clock began to run. Less than one week later, on February 14, 2019, the federal grand jury returned the First Superseding Indictment, charging Torres with narcotics conspiracy, possession of firearms in furtherance of drug trafficking, distribution of cocaine, and distribution of heroin. See Docket 6:18cr6094 at 141. This is well within the thirty day period

to indict set forth in 18 U.S.C. § 3161(b), and there are no grounds for dismissal under Rule 48(b).

### XII.   James Hearing

See Section II.L. Conspiracy Hearing, above.

### XIII.   Severance of Defendants

See Section II.H. Severance, above.

### XIV.   Further Relief

The government defers to the discretion of the Court on the issue of joinder by a defendant in the motions of his co-defendant.  It should be noted, however, that certain motions filed by defendants require an independent demonstration of standing, which the government does not waive.

### C.   JONATHAN CRUZ-CARMONA

### 1.   Bill of Particulars (p. 9)[5]

See Section II.A. Demand for Bill of Particulars, above.

---

[5] Page numbers refer to ECF page number.

2. **Discovery & Inspection Under Rules 12 and 16 of the Federal Rules of Criminal Procedure (p. 16)**

See Section II.B. Discovery and Inspection, above.

The government is not aware of any prior convictions of the defendant, as is also reflected in the Pretrial Services Report..

3. **Inspection of Grand Jury Lists (p. 28)**

See Section II.C. Grand Jury, above.

Defendant questions how the controlled substance included in one charge against him has changed from heroin to fentanyl.  As indicated in the criminal complaint, an initial field test of the substance indicated it was positive for heroin.  As part of discovery in this case, the defense was provided with Monroe County Crime Laboratory Drug Report 1122-19 Report 1, dated July 22, 2019, which indicated the substance was positive for fentanyl.

4. **Disclosure of Witness Statements (p. 45)**

See Section II.D. Disclosure of Witness Statements, above.

5. **Motion for Disclosure of Evidence Pursuant to Federal Rules of Evidence 404(b), 608 and 609 (p. 50)**

See Section II.E. Federal Rules of Evidence 404(b), 608 and 609, above.

**6.  Preservation of Rough Notes and Request for *In Camera* Review (p. 52)**

See Section II.F. Preservation of Rough Notes, above.

**7.  Disclosure of Informant Information (p. 53)**

See Section II.G. Disclosure of Informant Information, above.

**8.  Severance of Defendants (p. 57)**

See Section II.H. Severance, above.

**9.  Brady Material (p. 62)**

See Section II.I. Brady, above.

**10. Motion to Suppress Statements Taken from the Defendant (p. 69)**

See Section II.J. Defendant Statements, above.

Defendant's claim that his Fifth Amendment rights were violated lacks merit.  The defendant was advised of his Miranda rights at approximately 3:41 p.m. by Sergeant Venosa of the Rochester Police Department with Inv. Mario Correia as a witness.  Sergeant Venosa advised the defendant of his rights in Spanish.  The statements were made subsequent to his knowing, intelligent, and voluntary waiver of his Miranda rights.  There was no violation of the defendant's constitutional rights, nor any conduct of law enforcement which rendered the defendant's statements involuntary.

To the extent the defendant alleges his Sixth Amendment rights were violated, those rights were not triggered at the time of his arrest.  It has long been held that "the right to

counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." Rothgery v. Gillespie County, Tex., 554 U.S. 191, 194 (2008).  The mere signing of a complaint, nor arrest, does not trigger the right to counsel.  The Second Circuit has explicitly stated that "[a]bsent a formal charge, arrest on a warrant, even one issued pursuant to a criminal complaint sworn out by prosecutors, is insufficient prior to the initial appearance before a judicial officer."  United States v. Moore, 670 F.3d 222, 234 (2d Cir. 2012).  Courts have recognized the concern that the prosecution may delay the filing of formal charges in an attempt to avoid the assignment of counsel.  However, the Supreme Court recognized that such concerns "are simply not concerns implicating the right to counsel" and "reaffirm that the mere 'possibility of prejudice [to a defendant resulting from the passage of time] … is not itself sufficient reason to wrench the Sixth Amendment from its proper context." ." United States v Gouveia, 467 U.S. 180, 191 (1984) (citing United States v. Marion, 404 U.S. 307, 321-322 (1971)).  Furthermore, the right to counsel is "'offense specific,' meaning that even when the right to counsel attaches for one offense, that does not mean that the defendant has a right to counsel for all ongoing criminal investigations." Moore, 670 F.3d at 235 (citing Texas v. Cobb, 532 U.S. 162, 164 (2001)).

In the case at hand, on March 7, 2018, Hon. Jonathan W. Feldman signed a sealed arrest warrant and criminal complaint (18-mj-0549), charging Cruz-Carmona with violations of 21 U.S.C. § 846 (narcotics conspiracy) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of heroin).  On March 8, 2018, Cruz-Carmona was arrested on the federal arrest warrant while illegally driving a motor vehicle without a license.  Because Cruz-Carmona was found to be driving without a license, local charges were filed accordingly.

Following the defendant's arrest, he was questioned by members of the Rochester Police Department (RPD) Major Crimes Section about topics including a homicide that occurred on or about September 12, 2016.  After Cruz-Carmona was in custody on both the federal and local charges, at the government's request, Hon. Jonathan W. Feldman signed an order to dismiss the federal criminal complaint without prejudice, and Cruz-Carmona remained in custody pursuant to the local charges.  On March 9, 2018, a new federal complaint (18-mj-0552) was signed by Hon. Jonathan W. Feldman, and the defendant was arrested and produced for his initial appearance on those charges that day.

In this case, Cruz-Carmona's arrest on a federal criminal complaint and local vehicle and traffic violation were insufficient to trigger his Sixth Amendment right to counsel. Additionally, even if the right to counsel had attached concerning the accusations contained in the sealed complaint, the right to counsel is offense specific.  Investigators were questioning the defendant about an uncharged homicide.   As such, his Sixth Amendment Rights were not violated.

For the foregoing reasons, defendant's motion to suppress statements should be denied.  The government reserves its right to respond more fully to this argument should the defendant file an affidavit with personal knowledge sufficient to raise his claims.

11. **Motion for Production of Jencks Act Materials (p. 74)**

See Section II.K. Jencks Act Material, above.

12. **Motion for a Conspiracy Hearing (p. 75)**

See Section II.L. Conspiracy Hearing, above.

**13. Due Process Motion to Dismiss for Outrageous Governmental Misconduct (p. 75)**

The defendant's motion to dismiss on grounds of outrageous governmental misconduct should be denied.

Motions to dismiss for outrageous government conduct are "'an issue frequently raised that seldom succeeds.'" U.S. v. Cromitie, 781 F.Supp2d 211, 213 (2011) citing U.S. v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997). The Second Circuit while recognizing "the doctrine 'in principle,' … has announced that 'only Government conduct that shocks the conscience can violate due process.'" As discussed in the Circuit's 2011 Cromitie decision, the Court has never found conduct to be "conscience-shocking." Id. at 213-214. The defendant cites U.S. v. Cuervelo, 949 F. 2d 559 (2d Cir. 1991) which involves allegations that an undercover narcotics investigator had sexual relations with the defendant. That case is clearly distinguishable from the matter at hand.

As stated above, on March 7, 2018, Hon. Jonathan W. Feldman signed a sealed arrest warrant and criminal complaint (18-mj-0549), charging Cruz-Carmona with violations of 21 U.S.C. § 846 (narcotics conspiracy) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of heroin). On March 8, 2018, Cruz-Carmona was arrested on the federal arrest warrant while illegally driving a motor vehicle without a license. Because Cruz-Carmona was found to be driving without a license, local charges were filed accordingly. Following the defendant's arrest, he was questioned by members of the Rochester Police Department (RPD) Major Crimes Section about topics including a homicide that occurred on or about September 12, 2016. After Cruz-Carmona was in custody on both the federal and local charges, at the government's request, Hon. Jonathan W. Feldman signed an order to

dismiss the federal criminal complaint without prejudice, and Cruz-Carmona remained in custody pursuant to the local charges.  On March 9, 2018, a new federal complaint (18-mj-0552) was signed by Hon. Jonathan W. Feldman, and the defendant was arrested and produced for his initial appearance on those charges that day.

Moving to dismiss a criminal complaint only to re-file it again the next day does not rise to the level of outrageous governmental misconduct.  To the contrary, the law has long recognized that prosecutors have discretion on when, how and with what individuals are charged with.  "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by a statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes 434 U.S. 357, 364 (1978).

For the foregoing reasons, defendant's motion should be denied.


## 14. Motion to Join Each and Every Motion Made by Other Counsel (p. 78)

The government defers to the discretion of the Court on the issue of joinder by a defendant in the motions of his co-defendant.  It should be noted, however, that certain motions filed by defendants require an independent demonstration of standing, which the government does not waive.


## 15. Motion for Audibility Hearings (p. 78)

See Section II.M. Audibility Hearing, above.

16. **Motion to Strike the Use of an Alias or Moniker in the Indictment (p. 78)**

<u>See</u> Section II.N. Alias or Moniker, above.

17. **Suppression of Identification Evidence (p. 79)**

<u>See</u> Section II.O. Identification Evidence, above.

18.    **Leave to Make Further Motions Further Relief (p. 81)**

<u>See</u> Section II.P. Leave, above.

D.    **VICTOR NUNEZ**

5.    **Discovery**

<u>See</u> Section II.B. Discovery and Inspection and II.K. Jencks Act Material, above.

6.    **Bill of Particulars**

<u>See</u> Section II.A. Bill of Particulars, above.

7.    **Joinder**

The government defers to the discretion of the Court on the issue of joinder by a defendant in the motions of his co-defendant.  It should be noted, however, that certain motions filed by defendants require an independent demonstration of standing, which the government does not waive.

**8.**    <u>**Reservation**</u>

<u>See</u> Section II.P. Leave, above.


## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions for various forms of relief should be

denied.

Dated:  Rochester, New York, January 17, 2020.

Respectfully submitted,
JAMES P. KENNEDY, JR.
United States Attorney


By:    s/KATELYN M. HARTFORD
Assistant United States Attorney
United States Attorney's Office
Western District of New York
500 Federal Building
Rochester, New York 14614
(585) 399-3945
Katelyn.Hartford@usdoj.gov