1

1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF NEW YORK

3
- - - - - - - - - - - - - X
4   UNITED STATES OF AMERICA              18-CR-6094(G)

5   vs.
                                          Rochester, New York
6   XAVIER TORRES,                        February 11, 2020
                Defendant                 1:04 p.m.
7   - - - - - - - - - - - - - X

8
                   TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE MARK W. PEDERSEN
                UNITED STATES MAGISTRATE JUDGE
10

11                 JAMES P. KENNEDY, JR., ESQ.
                   United States Attorney
12                 BY: KATELYN M. HARTFORD, ESQ.
                       CASSIE M. KOCHER, ESQ.
                   Assistant United States Attorneys
13                 500 Federal Building
                   Rochester, New York 14614
14

15                 MAURICE J. VERRILLO, ESQ.
                   3300 Monroe Avenue, Suite 301
16                 Rochester, New York 14618
                   Appearing on behalf of the Defendant
17

18

19   AUDIO RECORDER:    James Bock

20

21   TRANSCRIBER:       Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
                        (585) 613-4310
22                      Kenneth B. Keating Federal Building
                        100 State Street, Room 2120
23                      Rochester, New York 14614

24
     (Proceedings recorded by electronic sound recording,
25   transcript produced by computer).

**P R O C E E D I N G S**

\*    \*    \*

1
2
3          **(WHEREUPON**, the defendant is present).

4          **MAGISTRATE JUDGE PEDERSEN:**  You may be seated.

5          **THE CLERK:** Court calls case No. 18-CR-6094-5,

6    United States vs. Xavier Torres.

7          **MAGISTRATE JUDGE PEDERSEN:** Good afternoon.

8          **MS. HARTFORD:** Good afternoon, Your Honor.

9          **MR. VERRILLO:** Good afternoon.

10          **MAGISTRATE JUDGE PEDERSEN:** I just want to get set

11    up here.

12          Good morning.  You're Xavier Torres?

13          **THE DEFENDANT:** Yes, sir.

14          **MAGISTRATE JUDGE PEDERSEN:** You're appearing here

15    with your counsel Mr. Verrillo?

16          **THE DEFENDANT:** Yes, sir.

17          **MAGISTRATE JUDGE PEDERSEN:** I recognize Ms. Hartford

18    for the Government.

19          We are on for a motion argument.  I have reviewed

20    the papers.

21          Mr. Verrillo, you filed an amended declaration in

22    addition to --

23          **MR. VERRILLO:** Right.

24          **MAGISTRATE JUDGE PEDERSEN:** Did you mean the amended

25    one to take the place of the original?

1    **MR. VERRILLO:** Yes, yes, I added a few things, yes,

2  Your Honor.

3    **MAGISTRATE JUDGE PEDERSEN:** In the amended you

4  mentioned something about a affidavit from a police officer.

5  I can't remember his name right now.

6    **MR. VERRILLO:** Let me see what I said here.  Can you

7  refer me to what paragraph you're talking about?

8    **MAGISTRATE JUDGE PEDERSEN:** Yeah, I'm looking for it

9  myself.  Officer Thomas Luciano.

10    **MR. VERRILLO:** Okay, what I was -- what I meant to

11  say and what I was referencing was Exhibit B, which is the

12  police report.  That's -- that's -- which was on the original

13  motion.

14    **MAGISTRATE JUDGE PEDERSEN:** Oh.

15    **MR. VERRILLO:** That's what I meant to say.

16    **MAGISTRATE JUDGE PEDERSEN:** So it was a police

17  report, not an affidavit?

18    **MR. VERRILLO:** Right, right.

19    **MAGISTRATE JUDGE PEDERSEN:** Okay.  All right. Then

20  so I suppose the best way is to just go through it one by one.

21    **MR. VERRILLO:** Okay.

22    **MAGISTRATE JUDGE PEDERSEN:** And I will start with

23  your declaration.  It seems that I have the original

24  declaration.  Is it significantly different from the amended?

25    **MR. VERRILLO:** I added some -- I added some

1 particularization with regard to the -- I believe with regard

2 to the February 16th (sic) stop --

3          **MAGISTRATE JUDGE PEDERSEN:** Thank you, Ms. Gleason.

4          **MR. VERRILLO:** -- and you can have my copy if you

5 need it.

6          **MAGISTRATE JUDGE PEDERSEN:** No, that's quite all

7 right. Ms. Gleason gave me a copy that I can use.

8          The order looks to be the same.  The first item is

9 suppression of evidence.  In order to create a factual issue,

10 there needs to be some kind of sworn testimony indicating a

11 conflict of facts.

12          What are the -- what's the source of the facts --

13          **MR. VERRILLO:** Well, I did -- I did prepare an

14 affidavit -- a declaration and I actually went over that with

15 my client earlier.

16          The dispute in the February 6th stop, and I have an

17 affidavit that -- which I can file, which gets into more

18 detail, there was no -- no reason or no probable cause to stop

19 Mr. Torres -- and when I say "Mr. Torres," I'm talking about

20 my client, Xavier Torres -- on February 6th, that there was no

21 warrant, there was no probable cause or reasonable suspicion

22 to stop him.

23          As I understand the facts -- the factual dispute,

24 my client was walking down Burbank Street with Jose Rodriguez

25 and another male.  My client and Jose entered 2 Burbank

1  Street, which is a multi-apartment building, and that he was

2  pulled out of the hallway by law enforcement, was detained,

3  was searched, they got some cash off of him and placed him in

4  handcuffs.

5          And then law enforcement found a key on the ground,

6  which they searched a vehicle on the street --

7          **MAGISTRATE JUDGE PEDERSEN:** A key fob --

8          **MR. VERRILLO:** -- a key fob or something, yeah.

9          **MAGISTRATE JUDGE PEDERSEN:** That was on the ground?

10         **MR. VERRILLO:** Yes.

11         **MAGISTRATE JUDGE PEDERSEN:** Okay.  I don't have the

12  benefit of that affidavit in front of me right now.

13         **MR. VERRILLO:** Okay.

14         **MAGISTRATE JUDGE PEDERSEN:** So I will permit you to

15  file that.

16         **MR. VERRILLO:** Yes.

17         **MAGISTRATE JUDGE PEDERSEN:** And then I will permit

18  the Government to file a response to that.

19         **MR. VERRILLO:** Okay.

20         **MAGISTRATE JUDGE PEDERSEN:** So that we don't run

21  into a Sixth Amendment issue.

22         Can you file that within the next day?

23         **MR. VERRILLO:** Yes, I have it here, so I can do

24  that.

25         **MAGISTRATE JUDGE PEDERSEN:** Can you file it today?

1          **MR. VERRILLO:** I can file it by today or tomorrow,

2  yeah.

3          **MAGISTRATE JUDGE PEDERSEN:** Ms. Hartford, how much

4  time would you like to respond to the affidavit?

5          **MS. HARTFORD:** About one week.

6          **MAGISTRATE JUDGE PEDERSEN:** One week, okay.

7          So that goes to the suppression of evidence.

8          **MR. VERRILLO:** Right.

9          **MAGISTRATE JUDGE PEDERSEN:** How about the

10  suppression of statements?  Does that affidavit also pertain

11  to --

12          **MR. VERRILLO:** Yes.

13          **MAGISTRATE JUDGE PEDERSEN:** -- the suppression of

14  statements?

15          **MR. VERRILLO:** It would address that issue as well.

16          **MAGISTRATE JUDGE PEDERSEN:** Same ruling.

17          One week also, Ms. Hartford?

18          **MS. HARTFORD:** Yes, Your Honor.

19          **MAGISTRATE JUDGE PEDERSEN:** Okay.  Disclosure of

20  informant identity.

21          Ms. Hartford, what's your position on that request?

22          **MS. HARTFORD:** Your Honor, my position in the

23  Government's response was first that the defendant had failed

24  to articulate or failed to establish that the identification

25  procedure was suggestive.

1          However, upon further review it appears that the

2    defense is moving to -- is moving with regard to Exhibit C

3    that it filed, which is a photo lineup in which the defendant

4    was not identified.

5          So it would be my position that this is moot at

6    this point.  The Government doesn't intend to offer the lineup

7    that the defendant included as Exhibit C in its case-in-chief.

8          **MAGISTRATE JUDGE PEDERSEN:** We're dealing now with

9    IV in the motion.

10         **MS. HARTFORD:** Yes, I'm sorry, identification

11   testimony.  You asked for informant identity.

12         **MAGISTRATE JUDGE PEDERSEN:** That's okay, we'll deal

13   with IV now and go back to III.

14         **MS. HARTFORD:** Sure, I'm sorry, Judge.

15         **MR. VERRILLO:** Okay.

16         **MAGISTRATE JUDGE PEDERSEN:** There's a lineup that

17   the Government doesn't intend to use.  Did that lineup result

18   in any identification?

19         **MS. HARTFORD:** Not of this defendant.

20         **MAGISTRATE JUDGE PEDERSEN:** So you're saying that

21   there is no identification procedure that was used for this

22   defendant?

23         **MS. HARTFORD:** As to the defendant's motion and

24   Exhibit C, no.

25         **MR. VERRILLO:** There was multiple procedures.  I do

1  have a letter from the prior attorney that they showed the

2  photo array to multiple people.  So I know there was a no ID,

3  but I presume there were other people that were -- were shown

4  this based on this confirmatory ID concept, and I have some

5  other records which I didn't attach that were sent to

6  Mr. Torres' prior attorney.

7          So the issues of the identification procedure deals

8  with the photo array and what procedure was followed.  So if

9  they're gonna use those other people to confirm through this

10  photograph that it's my client, then I think that raises

11  issues related to it.

12          Obviously my client wasn't present at any of the

13  confirmation proceedings so...

14          **MAGISTRATE JUDGE PEDERSEN:** Ms. Hartford?

15          **MS. HARTFORD:** Again, I'm -- I'm --

16          **MAGISTRATE JUDGE PEDERSEN:** So I guess his concern

17  is that if there are witnesses the Government will be using to

18  identify the defendant in court during the trial and those

19  witnesses were shown a photo array to confirm identity, even

20  though they had a prior basis for knowing who he was, that the

21  defense argues it's entitled to a *Wade* hearing to determine if

22  those viewings were impermissibly suggestive.

23          **MS. HARTFORD:** Well -- and, again, Your Honor, it

24  sounds like the defense is just assuming based on -- one

25  moment.

1          **MAGISTRATE JUDGE PEDERSEN:** So, Mr. Verrillo --

2          **MR. VERRILLO:** Yes.

3          **MAGISTRATE JUDGE PEDERSEN:** -- you allege -- I mean,

4   the Government is responding that you must allege facts

5   supporting your contention that the identification procedures

6   used were impermissibly suggestive, citing to *United States*

7   *vs. Berganza* from the Southern District of New York in 2005,

8   and *United States vs. Swain* from the Southern District in

9   2011.  Defendant not entitled to a hearing where his

10  "suggestion of impropriety in the presentation of a

11  photo array is mere speculation."

12          And they cite further cases.  This is on page 23 --

13          **MR. VERRILLO:** Right, I saw that, yeah.  The problem

14  is -- I don't want to say anything before counsel's ready.

15          **MAGISTRATE JUDGE PEDERSEN:** Okay.

16          **MS. HARTFORD:** Sorry, Your Honor.

17          **MAGISTRATE JUDGE PEDERSEN:** Quite all right. I was

18  pointing out the cases you were citing on page 23 of your

19  response about the defendant needing to allege facts

20  supporting his contention that the identification procedures

21  used were impermissibly suggestive.

22          So your response?

23          **MS. HARTFORD:** The defense has failed to do that.  I

24  will state, Your Honor, just to clarify, as for the six

25  photo array that was attached as Exhibit C to defense motion,

1   my understanding is that that was only shown to the one

2   witness as is demonstrated through Exhibit C because I heard

3   defense opining as to whether or not that was shown to other

4   people that they weren't told about or they weren't provided

5   with.

6           That particular array was only provided to the one

7   witness as disclosed in previous correspondence to the defense

8   counsel on March 22nd of 2019.

9           Also included in that correspondence from March

10  22nd of 2019 were a number of single image photographs that

11  were either the subject of identifications or -- where

12  identifications were made or where no identification was made,

13  and that was indicated to the defense in the correspondence

14  dated March 22nd of 2019.

15          It was my impression based on the defense filing

16  only referencing the one image -- or the one lineup in

17  Exhibit C, that that was the basis of the defense motion.

18          In any event, the case law that we've cited and the

19  need for the defense to establish first that the

20  identification procedures were impermissibly suggestive, it's

21  still the Government's position that that is the threshold

22  requirement.

23          **MAGISTRATE JUDGE PEDERSEN:** These people who were

24  shown the other photo arrays, not Exhibit C, and these were

25  all photo arrays?  There was no live lineup, correct?

1          **MS. HARTFORD:** Correct.

2          **MAGISTRATE JUDGE PEDERSEN:** Are they people known to

3    the defense at this point?

4          **MS. HARTFORD:** I'm sorry?

5          **MAGISTRATE JUDGE PEDERSEN:** Are they people known to

6    the defense at this point?

7          **MS. HARTFORD:** The identities of those witnesses are

8    not known to the defense at this point.

9          **MAGISTRATE JUDGE PEDERSEN:** Okay.  So there would

10   not be a way for the defense to ascertain whether those

11   individuals could say if the photo arrays were shown in a

12   suggestive manner or suggestions were made during their

13   showing?

14         **MS. HARTFORD:** At this time, Your Honor, that is

15   correct.  I will state that each of those witnesses had an

16   independent basis of knowledge of this defendant.  They all

17   knew the defendant for a matter of years and either sold

18   drugs, prepared drugs or purchased drugs with or from the

19   defendant.  So they knew him independently.

20         So even if the defense were able to establish that

21   there was anything suggestive about them, it's my position

22   that the independent basis would carry the day and there --

23   they would still be admissible.

24         That being said, Your Honor, much of that

25   information the defense I recognize doesn't have because it

1   isn't discoverable at this point, and I would propose

2   either -- if the Court wishes to review grand jury testimony

3   of these individuals establishing that independent basis, we

4   could establish independent basis in that manner; or perhaps

5   to deny at this time and allow the defense an opportunity to

6   renew their motion once *Jencks* has been provided to them.

7           **MR. VERRILLO:** Your Honor, I can supplement with

8   what package I was referring to.  It's got a number of

9   documents.  I gave a piece of the evidence, but I have a set

10  here that has various pictures and various dates.

11          So I think there's two issues: What was shown and

12  the procedure really is what it comes down to.

13          **MAGISTRATE JUDGE PEDERSEN:** Right.  And so we have

14  the --

15          **MR. VERRILLO:** That's the issues that I see.

16          **MAGISTRATE JUDGE PEDERSEN:** -- we have the

17  photographic arrays themselves, and I can easily see if those

18  are or are not suggestive in and of themselves -- unduly

19  suggestive I should say.

20          But as far as the procedure used to confirm

21  identity by the people who allegedly knew him all along, I

22  don't know that that would permit an inference that their

23  identifications should be suppressed because an officer came

24  up and said you know this guy, don't you?  Pick him out of

25  these photos.  It's this one, isn't it?

1         Would that be enough to then suppress the ID if the

2 witness in that particular case knew the defendant for ten

3 years and was very familiar with him?

4         **MR. VERRILLO:** That would be the independent basis.

5 I don't know.  Obviously, we weren't a participant of this, so

6 we don't know.  We don't know what happened.

7         **MAGISTRATE JUDGE PEDERSEN:** Okay, I'll reserve on

8 that, but I'm inclined to say no and then without prejudice to

9 renewing that motion if it should become necessary once you

10 have the evidence necessary to determine whether there were

11 any suggestive procedures used.

12         Let's go back to III, that's the disclosure of

13 informant identity.

14         **MS. HARTFORD:** Yes, Your Honor.

15         **MAGISTRATE JUDGE PEDERSEN:** What's the Government's

16 response on that one?

17         **MS. HARTFORD:** The defense is not -- is not entitled

18 to disclosure of informant identity at this time.  Informants

19 or -- whether confidential informants or witnesses, their

20 identity will be disclosed to the defense in -- prior to trial

21 along with the witness list.

22         I don't believe that the defense has demonstrated

23 what is required under *Rovario* and *Fields* or *Saa* in order to

24 be entitled to that information.

25         **MR. VERRILLO:** Your Honor, the problem in this case

1   is that there's a lot of discovery that was received and the

2   Invenica service has been helping us -- helping defense with

3   this, but when we do a search we get a very small amount of

4   records, I think it's under 50 pages, related to this -- my

5   client.

6          So this is not a case where the evidence and all

7   these records are showing what's going on, so we want to be

8   able to obviously defend Mr. Torres and find out the basis of

9   the claims, which is why we're asking for this particular

10  disclosure in this particular situation.

11          **MAGISTRATE JUDGE PEDERSEN:** Okay.

12          **MS. HARTFORD:** It's the Government's position that

13  what the defense is requesting is beyond the scope of

14  discovery and what Rule 16 contemplates.

15          **MAGISTRATE JUDGE PEDERSEN:** Yes, I will reserve on

16  that, but likely again deny until a more appropriate time once

17  you have a basis for asking for it.

18          The *Jencks* material.  I believe it's the practice

19  around here to reveal the *Jencks* material before the witness

20  actually finishes on the stand?

21          **MS. HARTFORD:** That is practice, even though -- yes,

22  that is the local practice.

23          **MAGISTRATE JUDGE PEDERSEN:** And how much time before

24  the trial would that normally be?

25          **MS. HARTFORD:** The Government would request two

1  weeks.

2          **MR. VERRILLO:** Your Honor, obviously this is a very

3  large case so --

4          **MAGISTRATE JUDGE PEDERSEN:** Yeah.

5          **MR. VERRILLO:** -- I've had other cases, I know

6  Judge Geraci's given us 30 days before.  This is a very -- I

7  don't think there's any dispute this is a mega case in terms

8  of what's being alleged.  So I think that would be appropriate

9  in this case.

10          **MAGISTRATE JUDGE PEDERSEN:** Yeah, I --

11          **MS. HARTFORD:** I'm sorry.  Go ahead, Your Honor.

12          **MAGISTRATE JUDGE PEDERSEN:** Go ahead.

13          **MS. HARTFORD:** I was going to say I realized after

14  answering that I asked for two weeks and I do believe that the

15  practice is typically two to three weeks.

16          **MAGISTRATE JUDGE PEDERSEN:** Okay.  Let's -- because

17  this is such a large case, there's so much discovery, there's

18  also wiretaps, let's do 30 days so that we don't have to have

19  too many delays in the trial.

20          Okay, on the Rules 404(b), 608 and 609, you agreed

21  to provide that along with the Jencks Act material, but that

22  was conditioned upon the two weeks provision.

23          Is 30 days okay for that information as well or do

24  you want to stick to two weeks on that?

25          **MS. HARTFORD:** The Government would request two

1  weeks.

2          **MR. VERRILLO:** Well, the problem, Your Honor, again

3  is giving us an opportunity to prepare and defend and I would

4  request the 30 days for that as well.

5          **MAGISTRATE JUDGE PEDERSEN:** I don't think the volume

6  of evidence involved in these 404(b), 608, and 609 disclosures

7  is as great as the volume involved in the *Jencks* material, so

8  I'll hold that two weeks.

9          *Brady* material is due now or at any time you

10 discover it.  Any other contentions about *Brady* material?

11         **MS. HARTFORD:** No, Your Honor.  The Government's

12 aware of its ongoing obligation.

13         **MAGISTRATE JUDGE PEDERSEN:** I'm sure you are.  Is

14 there any ruling I need to make on your motion?

15         **MR. VERRILLO:** Well, obviously we want *Brady*

16 material disclosed -- I mean, we want to make sure -- I know

17 the Government knows the *Brady* case, but we want to make sure

18 that our position is known, so that's why we set it forth in

19 the motion.

20         **MAGISTRATE JUDGE PEDERSEN:** Got it.  So I'll just

21 grant that as is.

22         How about the discovery disclosure and inspection?

23         **MR. VERRILLO:** Well, Your Honor, as you know, this

24 discovery that's been voluntarily given, I believe the number

25 is like 28,000 pages of discovery.  A very small amount that

1   we've seen relates to my client, so I did send a letter to

2   counsel, which is Exhibit D, provided a list of requests.

3        And I know that I just received today some -- some

4   disclosure from the Government, so I haven't looked at it yet,

5   but obviously that really is the main area that I see that we

6   were looking for, which was on page 29 of the motion; it was

7   also itemized on that -- on that page.

8        **MAGISTRATE JUDGE PEDERSEN:** I'm just

9   cross-referencing the Government's response.  All right, it

10   says here that the police reports are beyond the scope of Rule

11   16.  The Government will look into obtaining the requested

12   items and turn over discoverable items.

13        **MS. HARTFORD:** To clarify, Your Honor, we did go

14   beyond that.  Staff from my office took standard steps to look

15   up each of the items, including police reports that the

16   defense requested, and has provided most of them to the

17   defense.

18        I provided an itemized list in correspondence to

19   Mr. Verrillo dated today that he has referenced stating

20   specifically with regard to each of his requests whether they

21   were provided to him as attachments to that correspondence,

22   which most of them were.

23        In cases where they weren't provided as attachments

24   to that correspondence, an explanation has been given.  For

25   example, and as I stated in my response here, the Government

1  notes that Rochester Police Department didn't use body worn

2  cameras in 2015 and 2016, so the items P and Q that he

3  requested do not exist.  That's just one example of an item

4  that was not provided and an explanation that was given in the

5  correspondence about that.

6         But despite my response saying that we would turn

7  over discoverable items, we turned over discoverable items as

8  well as items that were outside of the scope of Rule 16.

9         I will also note, Your Honor, that in reviewing

10  those reports, it wasn't clear to me how some of them were

11  necessarily relevant to this investigation, but I did turn

12  them over to the defense anyway since they were requested.

13         **MR. VERRILLO:** Yeah.  Part of the problem, Your

14  Honor, is that my understanding from the Government is that

15  they're gonna claim that my client was involved in various bad

16  acts associated with this conspiracy, but I'm not finding it

17  in the discovery packet that I -- that I was given of the

18  search database.

19         So obviously we want to be prepared for defense of

20  this case and wouldn't want to be surprised by stuff if they

21  have it that they're claiming some type of enhancement or

22  support of the conspiracy that if we can get it now, we would

23  like to have it.

24         And that's -- the list that was given was created

25  from my Freedom of Information Law request that gave us

1    various reports, so that was the basis of us asking for this

2    additional information.

3            **MAGISTRATE JUDGE PEDERSEN:** So out of your requests

4    on Exhibit D, what hasn't been fulfilled that you believe

5    should still be --

6            **MR. VERRILLO:** Well, I have to see.  I just received

7    that right before court.  So I will advise the Court if

8    there's other -- other items related to that, but --

9            **MAGISTRATE JUDGE PEDERSEN:** All right. So can I --

10   this is -- why don't I deny that without prejudice to renewing

11   it if it becomes necessary.

12           Bill of Particulars.

13           **MR. VERRILLO:** Yes, Your Honor.  In order to have

14   notice and reasonable opportunity to defend, we submitted a

15   Bill of Particulars responses.  The *Bortnovsky* case, which

16   I've cited, indicates a Bill of Particulars is used to

17   identify with particularity notice of the charges to prepare

18   for trial, avoid surprise and deal with any double jeopardy

19   concerns.

20           Again, limited records have been provided related

21   to Mr. Torres which can tie to what is alleged here.  For

22   example, there's a claim that Mr. Torres possessed a weapon in

23   furtherance of a drug trafficking crime, but we have not found

24   any records pertinent to that.

25           So we're trying to get the particulars sought in

1  relationship to the charges filed and that's why we had the

2  request, which I think are number -- number 2 through 6 in the

3  motion in the next section, which is page 31 and 32.

4           **MAGISTRATE JUDGE PEDERSEN:** So this relates again to

5  the acts you want to learn about that they're going to allege

6  he committed in furtherance of the conspiracy?

7           **MR. VERRILLO:** The factual information, yes.

8           **MAGISTRATE JUDGE PEDERSEN:** Okay.  Ms. Hartford?

9           **MS. HARTFORD:** It's not information that's required.

10 The Government is not required to turn that over and, again,

11 it's beyond the scope of Rule 16 and the Government's position

12 as stated in its response.

13          But, again, the defense is attempting to use a Bill

14 of Particulars as an investigative tool to learn more

15 information that Rule 16 doesn't compel the Government to turn

16 over that information, and there's case law in the

17 Second Circuit specifically that they're not to use it as an

18 investigative tool and that the Government shouldn't be

19 compelled to provide a Bill of Particulars disclosing the

20 manner in which it's going to attempt to prove the charges or

21 the precise manner in which a defendant committed a crime

22 charged.

23          But it's the Government's position that this is

24 exactly the kind of information that the defense is trying to

25 get in this case.

1      **MAGISTRATE JUDGE PEDERSEN:** So the case you cited

2  in -- on page 4, *United States vs. Bortnovsky*, 820 F.2d 572,

3  574 Second Circuit 1987, generally if the information sought

4  by defendants is provided in the indictment or in some

5  acceptable form, no Bill of Particulars is required.

6      So your argument is that even if the indictment is

7  sparse on details, the discovery you've provided fulfills that

8  need and, therefore, a Bill of Particulars is not required; is

9  that --

10      **MS. HARTFORD:** That is one circumstance in which a

11  Bill of Particulars wouldn't be required.

12      **MAGISTRATE JUDGE PEDERSEN:** Okay.  The other case

13  you cited here is *United States vs. Christner* from the Western

14  District of New York in 2015 in which the quote here is "there

15  is no general requirement that the Government disclose in a

16  Bill of Particulars all the overt acts it will prove in

17  establishing a conspiracy charge, and request for

18  particularization of the whens, wheres, and with whoms of

19  particular acts allegedly committed by a defendant in

20  furtherance of a conspiracy are routinely denied."

21      **MS. HARTFORD:** Yes, Your Honor.  And it's the

22  Government's position that is directly applicable to the case

23  at hand.

24      **MAGISTRATE JUDGE PEDERSEN:** And, Mr. Verrillo, your

25  position is that you don't have enough information from either

1 | the indictment --

2 | **MR. VERRILLO:** Right.

3 | **MAGISTRATE JUDGE PEDERSEN:** -- or from the discovery
4 | you've gotten so far?

5 | **MR. VERRILLO:** Correct.  And I -- that was just one
6 | example about the drug -- about the weapon charge, but I have
7 | not -- certainly on that charge I have not found any records
8 | that show that, but, I mean, again, most of the records do not
9 | relate from our standpoint to my client.

10 | If it was, you know, 5 or 10,000 pages of records
11 | related to him, then that might be a different situation.

12 | **MAGISTRATE JUDGE PEDERSEN:** Mm-hmm.  Let's look
13 | particularly at that weapons charge, Ms. Hartford.  How would
14 | he be expected to prepare to defend against that particular
15 | charge in the indictment if the discovery materials and the
16 | indictment don't particularize the when or where?

17 | **MS. HARTFORD:** Well, Your Honor, I'll state that
18 | there is evidence that he possessed firearms throughout the
19 | course of that timeframe.

20 | As to how the defense will defend against it, they
21 | will be provided a witness list in due time, they will be
22 | provided with prior statements of witnesses in due time, they
23 | will receive grand jury testimony in due time as well.  That's
24 | just one example.

25 | However, the defendant is familiar with the scope

1 of the conspiracy in this case, the acts in this case, the

2 other individuals charged in this case and the timeframe

3 alleged.  There are a number of police reports -- even if they

4 don't specifically address dates and times when the defendant

5 carried the weapon, they do discuss the nature of the

6 conspiracy, the individuals involved in the conspiracy, et

7 cetera.

8          So the defendant isn't without any information

9 about the conspiracy in which he's alleged to have possessed

10 this -- these firearms in furtherance of, nor potential

11 witnesses at this point, frankly.

12          **MR. VERRILLO:** Your Honor, just one other thing.

13 The charge, the indictment talks about a period from 2015 to

14 January 29th of '18; it lists five people and gives a general

15 legal, you know, allegation.

16          So certainly the indictment doesn't give us notice

17 of the particulars.

18          **MAGISTRATE JUDGE PEDERSEN:** Okay.  Based on the case

19 law, though, I'm going to deny that without prejudice to renew

20 if after you've been given witness lists, 608, 404, 609

21 material and *Jencks* material, you still have a dearth of

22 information from which to form a defense.

23          You've already -- turning to number X, rough notes,

24 the Government's already asked the officers to preserve those?

25          **MS. HARTFORD:** Yes, Your Honor.

1     **MAGISTRATE JUDGE PEDERSEN:** Okay.  So I can deny it

2 as moot.

3           Number XI asks for Rule 48 dismissal.

4           **MR. VERRILLO:** Judge, the -- the alleged activities

5 of my client from what evidence -- information we have looks

6 like in the period of 2015 to early 2016.

7           The charge that I talked about early, February of

8 2016, where there was a stop, my client was charged in state

9 court and advised it was dismissed.  So that was the end of

10 that proceeding by grand jury.

11           He was not arrested until December of '18, so we

12 have a significant period of time between the alleged conduct

13 and the charge.

14           My client also moved from Rochester, I believe, in

15 late 2015, so he hasn't had contacts with the Rochester area

16 for some time.  So this delay in prosecution has made it more

17 difficult for us to locate and produce witnesses and to defend

18 the case.  So that also is the basis for our motion on that --

19 under that rule.

20           **MAGISTRATE JUDGE PEDERSEN:** Okay.  Counsel, I've

21 read your response on all this.  Apparently under the Speedy

22 Trial Act there's no basis to dismiss under Rule 48; is that

23 what I'm reading?

24           **MS. HARTFORD:** Yes, Your Honor.

25           **MAGISTRATE JUDGE PEDERSEN:** Everything's been

1   covered?  Either it's been excluded -- it has.  It has been

2   excluded according to what you have here.

3         Do you have any indication that the Speedy Trial

4   Act exclusion periods that she's listed don't apply?

5         **MR. VERRILLO:** Well, I was involved -- it was prior

6   counsel and then I got involved.  So obviously we had a period

7   of time for discovery and a period of time for motions.  So

8   obviously that was involved.

9         But I think the -- the prejudice -- and obviously

10   this case hasn't been scheduled for trial yet so we don't know

11   how much time that's gonna take, but the prejudice as we noted

12   was from the '15 to the '18 time period, and I noted that in

13   my affidavit.

14         **MAGISTRATE JUDGE PEDERSEN:** Okay.

15         **MS. HARTFORD:** Your Honor, the Government's response

16   to that is that that's more of a statute of limitations

17   argument as far as time that occurred -- or time that elapsed

18   between the commission of a crime and the eventual charges

19   that are brought and the arrest.  That's what the statute of

20   limitations exists for and there was no statute of limitations

21   violation in this case.

22         **MAGISTRATE JUDGE PEDERSEN:** Okay.  I'm going to deny

23   the Rule 48 dismissal motion.

24         *James* hearing, that's a Fifth Circuit issue?

25         **MR. VERRILLO:** Your Honor, I know there's

Second Circuit cases that have dealt with this in terms of the -- allowing the Government to present their case and try to tie it in, you know, as far as the presentation.

The problem is -- again, getting back to the claim of the drug conspiracy, that my client was involved in a drug conspiracy, which again we have -- from our standpoint we have very little documentation dealing with that.

So we're very concerned about admission of alleged co-conspirator statements prejudicing my client.  So I cited some other cases obviously, *Bourjaily* and the *James* case, et cetera.

And so that was the reason why we raised it in terms of protecting his interests, allowing him to be able to confront his accusers and not be prejudiced by -- by this area of admission of evidence.

**MAGISTRATE JUDGE PEDERSEN:** All right, I appreciate that, but the weight of authority in the Second Circuit goes contrary to the Fifth Circuit holdings, so I'm going to stick with the Second Circuit and deny that.

Severance.

**MR. VERRILLO:** Judge, there are a number of charges that are filed in the third superseding indictment.  I think I counted eight charges against Mr. Torres: Narcotics conspiracy, possession in furtherance of drug trafficking crime, various distribution counts, possession of heroin and cocaine,

1   maintaining drug involved premises.

2           He's not charged with Count 6, which is an

3   attempted murder of a law enforcement officer; and Count 9,

4   which is murder with firearm in drug trafficking crime.

5           We're very concerned about these charges being

6   joined in any trial for my client and it's highly prejudicial

7   to him.  There's no claim of any involvement in the indictment

8   related to him.

9           Mr. Torres' right to a fair trial to confront the

10  evidence presented, we're concerned that we'll be jeopardized

11  by the mixing of these unrelated charges.

12          Also, it's unclear whether there are any *Bruton* or

13  *Crawford* issues arising from any of these co-defendants'

14  statements, so our request to the Court is to sever Xavier

15  Torres from the remaining defendants; or in the alternative,

16  sever these unrelated charges so that his constitutional

17  rights can be protected.

18          **MAGISTRATE JUDGE PEDERSEN:** Okay.  Ms. Hartford?

19          **MS. HARTFORD:** The Government's position is that the

20  defendant has failed to meet the extremely difficult burden as

21  it's been recognized by the Second Circuit in *U.S. vs.*

22  *Carpenter* to show that he would be so severely prejudiced that

23  it would deny him a constitutionally fair trial.

24          It's a heavy burden, as recognized by the

25  Second Circuit, and there's a strong presumption in favor of

1    joinder as a mechanism for promoting judicial efficiency.

2              In this case the fact that it was a complex

3    conspiracy involving numerous defendants or a handful who are

4    left at this point, Your Honor, the facts are so interwoven

5    that to try them separately would create great strain on the

6    judicial process in this case.  It just makes more sense to

7    try them together.

8              This defendant was not some minor defendant who had

9    a small role in the conspiracy.  The evidence at trial will

10   show that he -- he had a very large and present role in the

11   central group involved in the conspiracy and it just -- he

12   can't -- he hasn't satisfied the requirement to show

13   substantial prejudice at all beyond just some speculation that

14   it would be prejudicial, and speculation is insufficient to

15   meet that burden.

16             The case law in the Second Circuit and the Supreme

17   Court is quite clear that the -- the preference is for joint

18   trials.

19             **MAGISTRATE JUDGE PEDERSEN:** How do you handle the

20   issue of spillover since there are murder charges in this case

21   that are not against this particular defendant and the jury's

22   going to look at the defendants arrayed and say, oh, well,

23   he's involved with murderers?

24             **MS. HARTFORD:** Well, he's -- the Government wouldn't

25   make any arguments that because he's involved with murderers

1  he's more likely to have committed any crimes.  Certainly

2  something like that would be extremely improper.

3          And to the extent if -- if at trial the evidence

4  suggests that there is any spillover of evidence -- again, I

5  don't anticipate that would happen, but the defense would be

6  within their right to ask for some sort of curative

7  instruction, which could be determined if that was proper or

8  not at that time.

9          **MAGISTRATE JUDGE PEDERSEN:** Okay.

10          **MR. VERRILLO:** Your Honor, I just want to say --

11          **MAGISTRATE JUDGE PEDERSEN:** Go ahead.

12          **MR. VERRILLO:** -- there's no allegation that my

13  client was involved in these two separate events.  And we have

14  one event where there's a search warrant -- the search warrant

15  was being brought about and there's an attempted -- there's a

16  shooting of a law enforcement officer where my client is not

17  even there.

18          And the person that -- and the person that

19  allegedly did it, his name is Obed Torres Garcia, I believe,

20  so he has the same last -- not saying they're related, but he

21  has the same name in part as this person .

22          So we're very concerned about the prejudicial

23  effect of this.  This is a very unique set of facts, set of

24  allegations and he's not charged to be responsible for those

25  events, so I think this is very prejudicial to -- to join

1  them.

2        **MS. HARTFORD:** And what's not particularly unique,

3  Your Honor, is for members of a conspiracy to be charged

4  together when one is charged with a violent offense such as

5  shooting at a police officer or murder and the others who are

6  on trial are not.  That's not a particularly unique

7  circumstance.

8        To go back to your question from before about --

9  about how to deal with spillover should it happen, I failed to

10 cite in my response orally, but will note that it's in my

11 brief that the Second Circuit has specifically addressed that

12 and also supports a curative instruction should that happen

13 and has endorsed a curative instruction in that situation.

14       **MAGISTRATE JUDGE PEDERSEN:** I'm going to reserve on

15 that.  My contention is probably to deny, but I wanted to take

16 another look.

17       And then your motion for further relief is not

18 opposed by the Government on the grounds that you could not

19 have asked for it originally.  I think we've gone over quite a

20 few of these here where I've denied without prejudice pending

21 additional information from the Government to you within 30 or

22 two weeks of trial -- 30 days or two weeks of trial that would

23 allow you to remove for some of these things.

24       So the only other things I need to do then is

25 determine if a hearing is necessary on the suppression of

1   evidence, statements and --

2            **MR. VERRILLO:** The identification --

3            **MAGISTRATE JUDGE PEDERSEN:** -- identification --

4            **MR. VERRILLO:**  -- or did you decide on

5   identification?

6            **MAGISTRATE JUDGE PEDERSEN:** No, I said I was going

7   to reserve --

8            **MR. VERRILLO:** You reserved on that?  Okay.

9            **MAGISTRATE JUDGE PEDERSEN:** I'm inclined to say no,

10  but I wanted to --

11           **MR. VERRILLO:** -- you reserve on that.  Okay, so

12  I'll file the declaration for the Court and then you can

13  proceed.

14           **MAGISTRATE JUDGE PEDERSEN:** That will help.  And

15  then Ms. Hartford will file her response in a week and I

16  should have a written decision out shortly after that.

17           In the meantime --

18           **MS. HARTFORD:** I'm sorry, Your Honor, will I have

19  one week from tomorrow or whenever I guess the affidavit is

20  filed?  That's going to be today?

21           **MR. VERRILLO:** I hope so.  If I could have until

22  tomorrow to file it just --

23           **MS. HARTFORD:** -- just request -- I'm sorry to

24  interrupt.

25           **MR. VERRILLO:** -- it's an e-file so --

1          **MS. HARTFORD:** If I could just request one week from

2   the date that it's filed?

3          **MAGISTRATE JUDGE PEDERSEN:** Sure.  So it would be

4   due close of business on Wednesday of next week, assuming that

5   it's filed by Wednesday this week.

6          **MS. HARTFORD:** Thank you.

7          **MAGISTRATE JUDGE PEDERSEN:** Okay.  Now, anything

8   else?

9          **MR. VERRILLO:** That's all I would say at this point.

10         **MAGISTRATE JUDGE PEDERSEN:** So I'm not going to set

11  another date for his appearance because I intend to issue a

12  written decision.  And if I find that hearings are necessary,

13  we'll have to set a date for that; if I find that hearings

14  aren't necessary, I'll do a Report and Recommendation and it

15  will follow the usual course to go up to the District Court.

16         I assume all this time would be excluded because

17  motions are still pending?

18         **MS. HARTFORD:** Yes, Your Honor.

19         **MAGISTRATE JUDGE PEDERSEN:** Okay.

20         **MR. VERRILLO:** Right.

21         **MAGISTRATE JUDGE PEDERSEN:** Anything else before we

22  adjourn?

23         **MR. VERRILLO:** No, Your Honor.

24         **MAGISTRATE JUDGE PEDERSEN:** All right. Is that your

25  family in the back?

1          **THE DEFENDANT:** Thank you, sir.

2          **MR. VERRILLO:** Is that your family in the back?  The

3    judge asked.

4          **MAGISTRATE JUDGE PEDERSEN:** Is that your family

5    sitting in the back?

6          **THE DEFENDANT:** Yes.

7          **MAGISTRATE JUDGE PEDERSEN:** Very nice of them to

8    come out.  They're welcome to come any time.

9          **MR. VERRILLO:** All right, thank you, Judge.

10         **MAGISTRATE JUDGE PEDERSEN:** Thank you, very much, I

11   appreciate your presentations.

12         (**WHEREUPON**, proceedings adjourned at 1:42 p.m.)

13                    *    *    *

14              <u>**CERTIFICATE OF TRANSCRIBER**</u>

15

16         In accordance with 28, U.S.C., 753(b), I certify that

17   this is a true and correct record of proceedings from the

18   official electronic sound recording of the proceedings in the

19   United States District Court for the Western District of New

20   York before the Honorable Mark W. Pedersen on February 11th,

21   2020.

22

23   <u>S/ Christi A. Macri</u>

24   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter

25