IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                                                           18-CR-6094G

        -v-                                                **GOVERNMENT'S RESPONSE**
                                                                            **TO XAVIER TORRES'S**
                                                                             **MOTION IN LIMINE**

CARLOS JAVIER FIGUEROA a/k/a Javi
a/k/a Big Bro
**XAVIER TORRES a/k/a Pistolita**
JEAN KARLOS PIZARRO a/k/a
Jean Pizarro-Dejesus a/k/a Yankee,

                        Defendants.
_____

THE UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Robert A. Marangola, Assistant United States Attorney, of Counsel, hereby files its Response to the Second Motion in Limine filed by Defendant Xavier Torres a/k/a Pistolita. (Dkt. 488).

## MOTION TO SEVER

On April 10, 2017, defendant Xavier Torres made statements in the presence of his attorney John Molloy, Esq. to members of law enforcement in which Torres described in detail his and others involvement in Carlos Figueroa's drug organization. Among other things, Torres describes his involvement in the drug organization, the identities and actions of co-conspirators, the manner in which the drug organization's business was conducted, and the quantities and types of narcotics distributed by the organization. Molloy told law enforcement that Torres was providing all this information because Torres believed Figueroa

was trying to kill him.  The government has previously advised the Court and counsel of its intention to offer evidence of these statements under Fed. R. Evid. 801(d)(2)(A).  To avoid any *Bruton* issue with co-defendants Figueroa or Pizarro, the government has advised counsel that, in eliciting the testimony of Xavier Torres's oral statements to law enforcement, it would redact/omit direct references to co-defendants Figueroa and Pizarro.  Dkt. 471, at 15-16.

Torres, who does not dispute the admissibility of his statements, now attempts to manufacture a basis for severance from co-defendant Figueroa by claiming the government is unfairly attempting to restrict him from eliciting the underlying reason Torres spoke to the police, namely, Torres's belief that Figueroa was trying to have Torres killed.  Dkt. 488, at 3-6.  At the outset, the government notes that it has not sought to prevent or limit testimony regarding the reason Torres spoke to the police at the time he made the statements.  Moreover, Torres has failed to articulate in any way how the statements of his attorney about the purpose of the meeting implicate Torres's confrontation rights or are relevant and necessary to a complete understanding of any of Torres's admissions.  Accordingly, the rule of completeness does not require their admission.  *See United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) ("The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.").

Nonetheless, since the name "Carlos Figueroa" itself certainly is not critical to an understanding of Torres's admissions (and Torres does not articulate that it is), the Court may admit the testimony by replacing references to co-defendant Figueroa with neutral terms such as "a man" or "the person."  That is, the officer could testify that Torres said that "a man"

was trying to kill him, and that Torres was providing information to assist law enforcement in arresting "the man." In that way, the underlying purpose of the meeting is put before the jury, as Torres requests, and the admission of such statements would not create a *Bruton* issue with co-defendants as the testimony would not incriminate them on its face. *See United States v. Alvarado*, 882 F.2d 645, 652 (2d Cir. 1989) ("where a codefendant's statement 'was not incriminating [to the defendant] on its face, and became so only when linked with evidence introduced later at trial,' it was proper to presume that a jury would follow the court's limiting instruction to consider a codefendant's statement only against him.") (quoting *Richardson v. Marsh*, 481 U.S. 200, 208) (1987)). This is the procedure previously suggested by the government, and the procedure followed by this Court and upheld on appeal by the Second Circuit in *United States v. Plaza et al.*, 826 Fed.Appx. 60 (2d Cir. 2020, Case No. 10-CR-6096FPG. *See also United States v. Kyles*, 40 F.3d 519, 526 (2d Cir. 1994) (defendant referred to as "he"). Accordingly, Torres's motion either to preclude all testimony of these statements or for severance, should be denied.

**MOTION FOR PRODUCTION OF LAW ENFORCEMENT PERSONNEL FILES**

Torres moves for production of the personnel files of law enforcement agents who are expected to testify in this case. Dkt. 488, at 6-7. Consistent with the practice in this District, the government has and will continue to request that the relevant law enforcement agencies conduct a review of the personnel files of any witnesses for potential impeachment material. In accordance with the Court's scheduling order, the government will disclose to

the defense any impeachment material found during this review at the time it discloses Jencks Act material.

## BUFFALO HOMICIDE INVESTIGATION INFORMATION

In conjunction with its *Brady* obligation, the government provided the defense with a redacted police report from Buffalo Police Department Homicide Detective Richard Wagstaff in which Ruben Gonzalez's name was provided by a source as the perpetrator of the uncharged murder of John Gonzalez in Buffalo. Torres seeks "identifying information regarding Ruben Gonzalez and the complete file relative to law enforcement's investigation of Ruben Gonzalez" as additional *Brady* material. In response to this request, the government has since provided to defense counsel an unredacted copy of the police report containing Ruben Gonzalez's identifying information. The government has also undertaken efforts to determine the extent of any follow-up with respect to this information. In that regard, the government has been advised by the Buffalo Police Department that there are no additional reports of any follow-up regarding Ruben Gonzalez. The government is also attempting to make contact with the Detective Wagstaff, who has retired. The government will advise counsel of the results of these efforts.

DATED:   Rochester, New York, December 2, 2020.

                        JAMES P. KENNEDY, JR.
                        United States Attorney

By:   s/ROBERT A. MARANGOLA
      Assistant United States Attorney
      Western District of New York
      100 State Street
      Rochester, New York 14614
      (585) 263-6760, ext. 23980
      Robert.Marangola@usdoj.gov