1          UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF NEW YORK

3

4

5    - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              18-CR-6094(G)
6
     vs.
7                                          Rochester, New York
     XAVIER TORRES,                        November 3, 2021
8               Defendant.                 8:30 a.m.
     - - - - - - - - - - - - - -X
9                                          **VOLUME 11**

10                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE FRANK P. GERACI, JR.
11                UNITED STATES DISTRICT JUDGE

12
                    JAMES P. KENNEDY, JR., ESQ.
13                  United States Attorney
                    BY: ROBERT A. MARANGOLA, ESQ.
14                      CASSIE M. KOCHER, ESQ.
                    Assistant United States Attorneys
15                  500 Federal Building
                    Rochester, New York 14614
16                  Appearing on behalf of the United States

17
                    MAURICE J. VERRILLO, ESQ.
18                  3300 Monroe Avenue
                    Suite 301
19                  Rochester, New York 14618
                    Appearing on behalf of the Defendant
20

21

22

23   COURT REPORTER:    Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
                        Christimacri50@gmail.com
24                      Kenneth B. Keating Federal Building
                        100 State Street, Room 2640
25                      Rochester, New York 14614

1                    **I N D E X**

2

**WITNESS FOR THE GOVERNMENT**

3

Shawn Adams
4        Direct examination by Mr. Marangola         Page 1030
         Cross-examination by Mr. Verrillo           Page 1047
5        Redirect examination by Mr. Marangola       Page 1050

6

7

**EXHIBIT**                **RECEIVED**
8
Government 231-232        1039
9   Government 231A          1041

10

11  Government rests                                  Page 1051

12  Rule 29 motion                                   Page 1052

13  Charge conference                                Page 1055

14  Defense rests                                    Page 1074

15

16

17

18

19

20

21

22

23

24

25

1029

**P R O C E E D I N G S**

*   *   *

1
2
3        **(WHEREUPON**, the defendant is present; the jury is
4 present).

08:36:59AM 5        **THE COURT:** Good morning.

6        **MR. MARANGOLA:** Good morning, Your Honor.

7        **THE COURT:** Ready to proceed, call your next
8 witness.

9        **MR. MARANGOLA:** Yes, Your Honor.  Government calls
09:57:22AM 10 Detective Shawn Adams.

11        **GOVERNMENT'S WITNESS, SHAWN ADAMS, SWORN**

12        **DIRECT EXAMINATION**

13        **THE CLERK:** Please state your full name for the
14 record and spell your last name.

09:57:43AM 15        **THE CLERK:** Shawn Adams.  Shawn, S-H-A-W-N; Adams,
16 A-D-A-M-S.

17        **THE REPORTER:** Thank you.

18        **THE CLERK:** Have a seat right up here.

19        **THE COURT:** Good morning.

09:58:17AM 20        **THE WITNESS:** Good morning.

21        **THE COURT:** Because you're behind plexiglas, you may
22 remove your mask --

23        **THE WITNESS:** Thank you.

24        **THE COURT:** -- when you're testifying.  Thank you.
09:58:22AM 25 You may proceed.

1          **MR. MARANGOLA:** Thank you, Your Honor.

2    **BY MR. MARANGOLA:**

3    Q.    Good morning, sir.  Would you please introduce yourself to

4    the jury?

09:58:27AM 5    A.    I'm Detective Shawn Adams with the Buffalo Police

6    Department.

7    Q.    Detective Adams, how long have you been with the Buffalo

8    Police Department?

9    A.    Just over 20 years.

09:58:37AM 10   Q.    And you're a detective?

11   A.    Yes.

12   Q.    How long have you been a detective?

13   A.    Ten years.

14   Q.    And what kinds of cases do you primarily investigate as a

09:58:45AM 15   detective?

16   A.    I'm in the Narcotics and Vice Unit.

17   Q.    All right. Narcotics and Vice, so you investigate drug

18   crimes then?

19   A.    Yes.

09:58:51AM 20   Q.    Detective, did there come a time on June 8th of 2016 that

21   you were asked to assist the Orleans County Task Force in a

22   particular narcotics investigation?

23   A.    Yes.

24   Q.    All right. How did you get involved, if you recall?

09:59:08AM 25   A.    I got a call from an Erie County sheriff's deputy asking

1   for assistance.

2   Q.   All right.  And what did you do in connection -- what was

3   the assistance they were looking for?

4   A.   They were looking for help obtaining a search warrant.

09:59:24AM 5   Q.   All right. Did you assist them in obtaining a search

6   warrant that day?

7   A.   I did.

8   Q.   All right. Was that based on information from a couple of

9   different sources?

09:59:34AM 10   A.   Yes.

11   Q.   All right. I'm not going to ask you what either officers

12   said or any informants said, but do you recall whether or not

13   they brought you an individual who had been arrested earlier

14   that day?

09:59:45AM 15   A.   Yes.

16   Q.   And do you recall whether or not he was a former

17   corrections officer?

18   A.   Yes.

19   Q.   All right. What was the location that you obtained a

09:59:54AM 20   search warrant for on June 8th, 2016?

21   A.   299 Prospect in the City of Buffalo.

22   Q.   All right. If we could put up Government's 64, which is in

23   evidence.  Detective, if you look on your monitor you should

24   see it.  Is it up on your screen?

10:00:15AM 25   A.   Yes.

1032

```
 1   Q.    Okay. Do you recognize what's shown in Government's 64?
 2   A.    Yes.  The house to the left of the tree is 299 Prospect.
 3   Q.    All right. Can you circle the house that you know as 299
 4   Prospect?
 5   A.    I'm assuming this is a touch screen?
 6   Q.    Most of the time it is, yes.  Let's see how --
 7   A.    Just asking.
 8   Q.    All right.  Today it is.  You circled the house to the
 9   left of the tree in Government's 64; is that right?
10   A.    Yes.
11   Q.    That location is in the City of Buffalo; is that right?
12   A.    Yes.
13   Q.    Can you describe the premises of 299 Prospect Avenue?
14   A.    It's a gray house, multiple unit.
15   Q.    All right. When you say "multiple," do you remember how
16   many?
17   A.    Four.
18   Q.    A Buffalo City Court judge authorized a search warrant for
19   that location?
20   A.    Yes, the front lower and rear lower apartments only.
21   Q.    All right. So two of the four apartments?
22   A.    Yes.
23   Q.    All right. What did the search warrant authorize you to
24   search for?
25   A.    To search for heroin.
```

10:00:30AM (line 5)
10:00:46AM (line 10)
10:01:01AM (line 15)
10:01:12AM (line 20)
10:01:23AM (line 25)

1    Q.    All right. Do you see a building next to the right of

2    299 Prospect Avenue in Government's 64?

3    A.    Yes.   That's 297 Prospect.

4    Q.    297 is the building directly to the right of it?

10:01:41AM 5    A.    Yes.

6    Q.    Can you describe 297 Prospect and compare it to 299

7    Prospect?

8    A.    It's almost identical.

9    Q.    All right. Is it also gray?  Are both locations gray and

10:01:54AM10    have black shutters?

11    A.    Yes.

12    Q.    Are there sidewalks to the right of each of those

13    locations?

14    A.    Yes.

10:01:59AM15    Q.    You indicated that you obtained a search warrant for 299

16    Prospect?

17    A.    Yes.

18    Q.    Who was the target of the search warrant?

19    A.    Xavier Torres.

10:02:09AM20    Q.    Do you see the person in court here today who was the

21    target of that search warrant on June 8th, Xavier Torres?

22    A.    Yes.

23    Q.    Would you point to him and describe what he's wearing for

24    the record?

10:02:22AM25    A.    He's behind you with a white button down shirt on next to

1    the defense attorney.

2    Q.   Is he wearing a tie or not a tie?

3    A.   No tie.

4              **MR. MARANGOLA:** All right.  Your Honor, may the

10:02:35AM 5    record reflect Detective Adams' identification of the

6    defendant?

7              **THE COURT:** Yes, the record will note the

8    identification of the defendant.

9    **BY MR. MARANGOLA:**

10:02:42AM 10   Q.   All right. Detective Adams, I'd like to show you on your

11   screen what's been received into evidence as Government's 1.

12   Thank you, Ms. Rand.

13             Do you see that on your screen?

14   A.   Yes.

10:02:57AM 15   Q.   All right. Do you see the target of the search warrant

16   that you obtained for 299 Prospect on June 8th in Government's

17   Exhibit 1?

18   A.   Yes.

19   Q.   Would you circle the photo of the person who was the

10:03:08AM 20   target of that search warrant on June 8th?  All right, let the

21   record reflect you circled the photograph on the third row,

22   the third photograph from the right; is that correct?

23   A.   From the right?  Yes.

24   Q.   All right. Is that the same person you identified in court

10:03:27AM 25   here as Xavier Torres?

1    A.    Yes.

2    Q.    Did the search warrant or search warrants that you

3    obtained authorize a search of the defendant as well?

4    A.    Yes.

10:03:40AM 5    Q.    All right. If we could go back to Government's 64.  Thank

6    you, Ms. Rand.

7              When did you execute the search warrant at 299

8    Prospect Avenue?

9    A.    Approximately 6:20 in the evening.

10:03:57AM 10    Q.    On the same day?

11    A.    Yes.

12    Q.    Of June 8th?

13    A.    June 8th, yes.

14    Q.    So you received a call, obtained a warrant and executed it

10:04:05AM 15    all in the same day?

16    A.    Yes.

17    Q.    About -- and you said it was about 6 in the evening?

18    A.    Approximately 6:20 we made entry, yes.

19    Q.    6:20, all right. Were you present for that?

10:04:15AM 20    A.    Yes.

21    Q.    Can you tell the jury what type of search warrant did you

22    obtain for 299 Prospect?

23    A.    A no-knock search warrant.

24    Q.    And can you explain to the jury what that means, a

10:04:28AM 25    no-knock search warrant?

1  A.   It means we don't have to announce our presence to execute

2  the search warrant.

3  Q.   All right. And for this no-knock entry who would make

4  entry into the premises?

10:04:39AM 5  A.   This one in particular was our SWAT team.

6  Q.   All right. What was your role in connection with the

7  execution of the search warrant at 299 Prospect?

8  A.   I was assigned to the perimeter.

9  Q.   When you say you were assigned to the perimeter, can you

10:04:52AM 10  explain what that role was for the jury?

11  A.   Basically what it sounds like, I run the perimeter of the

12  property in case someone runs, throws something out the

13  window, or outside.

14  Q.   Were you in police gear that day?

10:05:06AM 15  A.   Yes.

16  Q.   All right. Were you also with uniformed patrols as well?

17  A.   Yes.

18  Q.   Can you tell us what happened when the warrant was

19  executed at 299 Prospect on June 8th, 2016 at about 6:20 in

10:05:24AM 20  the evening?

21  A.   Yes.  The SWAT team pulled up first, Mr. Torres was found

22  in front of the house, secured, we followed as the perimeter

23  team, we took custody of Mr. Torres, and they did the entry.

24  Q.   All right. Were there other individuals in front of 299

10:05:43AM 25  Prospect Avenue as well?

1   A.   Yes.

2   Q.   And did the SWAT team detain those individuals as well?

3   A.   Yes.

4   Q.   All right. So after the defendant and other individuals

10:05:53AM 5   were detained initially by SWAT, then SWAT made the entry?

6   A.   Yes.

7   Q.   And what did you do?

8   A.   At that point I went over to Mr. Torres and began to

9   search him.

10:06:08AM 10   Q.   All right. So you took custody of the defendant from

11   someone who had initially secured him?

12   A.   Yes.

13   Q.   All right. And so we're clear, the person that you took

14   custody of and that you searched, do you see him in court here

10:06:20AM 15   today?

16   A.   Yes, Mr. Torres.

17   Q.   All right. Is he the person you previously identified as

18   Xavier Torres?

19   A.   Yes.

10:06:28AM 20   Q.   Okay. And identified in Government's Exhibit 1?

21   A.   Yes.

22   Q.   All right. The defendant was outside of 299 Prospect when

23   he was taken into custody; is that correct?

24   A.   Yes, he was right in front.

10:06:44AM 25   Q.   All right. When was he taken into custody, if you recall,

1  just prior to the entry?

2  A.   Yes, it would have been right about 1820 -- I'm sorry,

3  6:20 p.m..

4  Q.   All right. You said you searched the defendant?

10:06:55AM 5  A.   Yes.

6  Q.   Can you tell the jury what, if anything, you observed on

7  the defendant when you searched him in front of 299 Prospect?

8  A.   He had a cell phone on him, a black Samsung flip phone;

9  and some cash.

10:07:10AM 10  Q.   All right. Do you recall where the black Samsung flip

11  phone was?

12  A.   His right pant pocket.

13  Q.   All right. At this time I'm going to show you what's not

14  in evidence, I'd like you to take a look at Government's 231.

10:07:31AM 15  And 232.  Do you recognize what's shown in Government's 231

16  and 232?

17  A.   Those are two photos taken by our unit of the cell phone I

18  recovered.

19  Q.   All right. Do Government's 231 and 232 fairly and

10:07:52AM 20  accurately show the cell phone, the black flip phone that you

21  recovered from the defendant on June 8th, 2016 outside of 299

22  Prospect Avenue?

23  A.   Yes.

24           MR. MARANGOLA: At this time I'd offer Government's

10:08:04AM 25  231 and 232.

1          **MR. VERRILLO:** No objection.

2          **THE COURT:** Exhibit 231 and 232 will be received in

3    evidence.

4          (**WHEREUPON**, Government's Exhibits 231-232 were

10:08:18AM 5    received into evidence).

6    **BY MR. MARANGOLA:**

7    Q.   All right.  Detective, after you seized the phone shown

8    here in Government's 231 from the defendant's pants pocket,

9    was it maintained in police custody?

10:08:35AM 10   A.   Yes.

11   Q.   All right. What did you do in connection with that phone

12   as part of your involvement in the case that day or the next

13   day?

14   A.   That day I had gotten the phone number for the cell phone

10:08:49AM 15   from the informant and I called the number and it rang.  The

16   next day I took it in front of a judge to get a search warrant

17   to get a dump on the phone.

18   Q.   All right.  Do you recall the number that you dialed that

19   the informant had given you before you obtained the search

10:09:14AM 20   warrant for the phone?

21   A.   468-0306.

22   Q.   And what was the area code of that number?

23   A.   Oh, sorry.  716.

24   Q.   And you obtained that number 716-468-0306 prior to

10:09:30AM 25   executing the search warrant at 299 Prospect?

1  A.   Yes.

2  Q.   All right. And when you later -- after recovering this

3  phone from the defendant's pocket -- when you dialed that

4  number, what happened?

10:09:41AM 5  A.   It rang.

6  Q.   The phone shown here in Government's 231 rang?

7  A.   Yes.

8  Q.   All right.  So the flip phone in the defendant's pocket

9  had the same number as the number the CI had given you or the

10:09:54AM 10  corrections officer had given you earlier in the day?

11  A.   Yes.

12  Q.   Do you recall about when it was that you called the flip

13  phone here shown in Government's 231?

14  A.   It was about 8 o'clock I think.

10:10:08AM 15  Q.   All right. Do you recall the number that you would have

16  called it from?

17  A.   Oh, no.  That was a phone I had -- I'm sorry.  It was a

18  restricted number because I dialed star 67 first.

19  Q.   So the number you were using to call into Government's 231

10:10:23AM 20  here was a restricted number?

21  A.   Yes.

22  Q.   All right. Did you ultimately obtain a search warrant --

23  when you say to do a dump, is that a term commonly referred to

24  to describe the extraction of the data from a phone?

10:10:37AM 25  A.   Yes.

1  Q.   And did you obtain a search warrant to do an extraction

2  for the phone seized from the defendant?

3  A.   Yes.

4           **MR. MARANGOLA:** At this time, Your Honor, I'd like

10:10:49AM  5  to read from Government's -- from Court Exhibit 1, the

6  stipulation between the parties on page 11.

7           Government's Exhibit 231A is the device data report

8  containing the data forensically retrieved from a black

9  Verizon Samsung cell phone with phone number 716-468-0306 that

10:11:22AM 10  was seized at 299 Prospect Avenue, Buffalo, New York on

11  June 8th, 2016.

12           At this time I'd offer Government's 231A.

13           **MR. VERRILLO:** No objection.

14           **THE COURT:** Exhibit 231A is received in evidence.

10:11:40AM 15           (**WHEREUPON**, Government Exhibit 231A was received

16  into evidence).

17  **BY MR. MARANGOLA:**

18  Q.   All right.  Detective Adams, prior to testifying here

19  today have you had occasion to review the extraction report

10:11:58AM 20  here marked Government's 231A?

21  A.   Yes.

22  Q.   And is this the extraction report for that flip phone that

23  you removed from the defendant's pocket?

24  A.   Yes, this is the front page of it.

10:12:11AM 25  Q.   It's a multi-page document; is that right?

1   A.   Yes.

2   Q.   And if we can blow up the top portion of it. Your name

3   appears there; is that correct?

4   A.   Yes.

10:12:25AM 5   Q.   Although it appears in the column examiner name, were you

6   the actual one who conducted the extraction?

7   A.   No.

8   Q.   You were just the person who provided the search warrant

9   so the examiner could do the extraction?

10:12:36AM 10   A.   Yes.

11   Q.   All right. Is the phone number that the informant

12   provided you and that you dialed shown on Government's 231A in

13   any location?

14   A.   It is. It's on the page with the contacts on it.

10:12:56AM 15   Q.   All right. If we could go to -- I believe it's page 3.

16   All right. Is the phone number for this phone, the flip phone

17   from the defendant's pocket, shown anywhere on page 3?

18   A.   Under the contact list, if you can see it, it's on line 1.

19   Q.   All right. Is it listed next to any contact or is it above

10:13:20AM 20   the contacts?

21   A.   It's on line 1 above the contacts.

22   Q.   All right. Is there a contact associated with it?

23   A.   No.

24   Q.   Because that's the number for the phone itself?

10:13:31AM 25   A.   Correct.

1  Q.   All right. If we can enlarge the first row.  All right.

2  Could you read us the phone number as it's set forth in the

3  extraction for this flip phone?

4  A.   716-468-0306.

10:13:51AM 5  Q.   All right.  And if we could go then to the call log, which

6  is on page 2.  And if we could go to entry 2 and enlarge that,

7  entry 2 in the call log.  Do you see there's a -- what does

8  this line indicate here next to entry 2 in the call log?

9  A.   A missed call from a restricted number.

10:14:21AM 10  Q.   And what's the date and time of that missed call?

11  A.   June 8th, 2016 at 8:07 p.m.

12  Q.   Does that correspond approximately to the time that you

13  called this phone from your restricted number?

14  A.   Yes.

10:14:35AM 15  Q.   And if we could go to page 2, the timeline -- actually

16  first page 3 because I think this is in reverse chronological

17  order.  Do you see -- if we could enlarge the number 33 from

18  the timeline, which is the last entry of the timeline.  What's

19  the date shown on this outgoing call?

10:15:10AM 20  A.   June 4th.

21  Q.   All right. And June 4th, 2016?

22  A.   Yes.

23  Q.   All right. Then if we could go to the prior page, page 2,

24  and look at the first -- all right. That's a missed call --

10:15:30AM 25  actually, I'm sorry.  Could we go to the third entry.  All

1  right.  That's an outgoing call and that's on June 8th, 2016?

2  A.   Yes.

3  Q.   So the call log for the phone shows activity between what

4  two dates?

10:15:50AM 5  A.   The 4th and the 8th.

6  Q.   All right.  That's it for this phone activity just between

7  June 4th and June 8th?

8  A.   Yes.

9  Q.   And June 8th was the day you seized it?

10:15:59AM 10  A.   Yes.

11  Q.   Okay. If we could go back to Government's Exhibit 64.  All

12  right.  You circled the house to the left of the tree in the

13  center; is that right?

14  A.   Yes.

10:16:15AM 15  Q.   That address you testified is 299 Prospect?

16  A.   Yes.

17  Q.   All right.  If we could pull up now Government's -- what's

18  in evidence as Government's 225A.  Go to page 51, entry 307 at

19  the top.  This is an incoming text from contact P.  Under the

10:16:49AM 20  words body on the right side of this exhibit, can you read us

21  the text there?

22  A.   Okay pa 299 Prospect Avenue.

23  Q.   Is that the same or different address that you executed

24  the search warrant at on June 8th, 2016?

10:17:04AM 25  A.   Same.

1  Q.   Is that the same or different address that the defendant

2  was taken into custody at on June 8th, 2016?

3  A.   The same.

4  Q.   If we could go back to Government's 64.  You testified

10:17:24AM 5  that the house that's partially obscured by the tree next to

6  299 is what address?

7  A.   297 Prospect.

8  Q.   All right. If we could show you what's in evidence as

9  Government's 100.  If we could enlarge the corner of the

10:17:42AM10  envelope shown in the right portion of this.  Do you see --

11  can you read on the return address the name and address shown

12  on the envelope here?

13  A.   Xavier Torres, 297 Prospect, Buffalo, New York 14201.

14  Q.   All right.  Is that the same or different address than we

10:18:05AM15  just saw in Government's 64 that was partially obscured by the

16  tree?

17  A.   The same.

18  Q.   Now, if we could go back to Government's 64.  Detective

19  Adams, you've been with the Buffalo Police Department, what

10:18:24AM20  did you indicate?  About 20 years?

21  A.   Yes.

22  Q.   All right. Are you familiar with the area -- as a

23  narcotics detective, are you familiar with the area around

24  Prospect Avenue in the City of Buffalo?

10:18:34AM25  A.   Yes.

1046

1    Q.   All right. I'd like to show you what's in evidence as

2    Government's 197.  Do you see the photograph contained in

3    Government's 197?

4    A.   Yes.

10:18:46AM 5    Q.   Do you recognize the area shown in the photograph marked

6    in Government's 197?

7    A.   Yes.

8    Q.   And what do you recognize that area to be?

9    A.   Hudson Street and Osborn Alley.

10:18:59AM 10   Q.   Is that also in the City of Buffalo?

11   A.   Yes.

12   Q.   Can you give the jury an idea how far is it between Osborn

13   Alley and 299 Prospect Avenue?

14   A.   It's approximately four blocks west -- yeah, four blocks

10:19:15AM 15   west of 299 Prospect, maybe a quarter mile.

16   Q.   All right.  All right, I'd like to pull up Government's

17   225A.  And go to the contact section and go to the contact No.

18   25.  Name for that contact is Pepe; is that correct,

19   Detective?

10:20:04AM 20   A.   Yes.

21   Q.   And the phone number for that contact is what?

22   A.   468-0306.

23   Q.   And it's a 716 --

24   A.   716 area code.

10:20:15AM 25   Q.   Is that the same phone number or different phone number

1  than was for the phone that was removed from the defendant's

2  pocket on June 8th, 2016?

3  A.  Same.

4        **MR. MARANGOLA:** Thank you, Detective.  Thank you,

10:20:33AM 5  Your Honor.  I have nothing further.

6        **THE COURT:** Thank you.  Mr. Verrillo?

7               **CROSS-EXAMINATION**

8  **BY MR. VERRILLO:**

9  Q.  Detective, can you hear me okay?

10:20:41AM10  A.  Yes, sir.

11  Q.  Okay.  Did you meet with the informant who was referred to

12  as a former corrections officer?

13  A.  Yes.

14  Q.  And do you know what his name is?

10:20:51AM15  A.  Ronald Standish.

16  Q.  And you had met with him on June 8th, 2016?

17  A.  Yes.

18  Q.  And as a result of that meeting, did you ask him to

19  testify before Judge Fiorella?

10:21:06AM20  A.  Yes.

21  Q.  And that was regarding your application for a search

22  warrant at 299 Prospect, correct?

23  A.  Yes.

24  Q.  And did you base your application on what Mr. Standish

10:21:18AM25  told you?

1    A.    Yes.

2    Q.    And were you present during his testimony before the

3    judge?

4    A.    Yes.

10:21:24AM 5    Q.    Was it unusual for the judge to have testimony before he

6    would sign a search warrant?

7    A.    Can you repeat that question?

8    Q.    You had gone before the judge with Mr. Standish regarding

9    the search warrant?

10:21:41AM 10   A.    Yes.

11   Q.    Do you know whether that was a common practice of the

12   judge to have the witness come with you?

13   A.    Yes.

14   Q.    Okay. And you had discussed what was going to be testified

10:21:52AM 15   to with him before he came -- before he went before the judge,

16   correct?

17   A.    Yes.

18   Q.    And the search warrant that you had related to 299

19   Prospect, the front lower and the rear lower, correct?

10:22:08AM 20   A.    Yes.

21   Q.    And what did you find in the front lower for 299 Prospect?

22   A.    Nothing.

23   Q.    And what did you find in the rear lower of 299 Prospect?

24   A.    Nothing.

10:22:19AM 25   Q.    When you would go in and do a search warrant such as this,

1   would one of the purposes be to try to find out any

2   documentation or any evidence of occupancy by any particular

3   individual?

4   A.   It would.

10:22:34AM 5   Q.   Okay. And did you find any evidence of any person

6   occupying those properties -- that property?

7   A.   Not that I recall, no.

8   Q.   Okay. And that would include looking for things like mail,

9   for example, if there was mail there?

10:22:50AM 10   A.   Yes.

11   Q.   Any particular clothing, whether men's or women's

12   clothing, things of that nature?

13   A.   Yes.

14           MR. VERRILLO: If I could just have one moment.

10:23:17AM 15   BY MR. VERRILLO:

16   Q.   When you went into 299 Prospect, did you find a laptop or

17   a computer there?

18   A.   Not that I recall.

19   Q.   Okay. Now, you had gone to 299 Prospect and the location

10:23:38AM 20   was based on what Mr. Standish told you?

21   A.   Yes.

22   Q.   And had you gone with him to look at the property before

23   conducting the search warrant application?

24   A.   I personally did not.

10:23:48AM 25   Q.   Okay. Do you know if anyone with the Buffalo Police

1    Department did that?

2    A.   No.   The investigator from Orleans County and the deputy

3    sheriff from Erie County.

4    Q.   Okay. You're saying they would have been involved in that?

10:24:01AM 5    A.   Yes.

6    Q.   Okay. And it's your testimony that you had acquired the

7    cell phone from Mr. Torres' person?

8    A.   Yes.

9    Q.   So you had not found the cell phone in the property that

10:24:33AM 10    you were searching?

11    A.   In the property at 299 Prospect?

12    Q.   Right.

13    A.   No.   It was on his person.

14    Q.   And did you find any drugs on Mr. Torres when you searched

10:24:44AM 15    him?

16    A.   No, sir.

17    Q.   Did you find any weapons on Mr. Torres when you searched

18    him?

19    A.   No.

10:24:55AM 20              **MR. VERRILLO:** I have nothing further.   Thank you.

21              **THE COURT:** Thank you.

22              **MR. MARANGOLA:** May I, Your Honor?

23              **THE COURT:** Sure.

24                        **REDIRECT EXAMINATION**

10:25:03AM 25    **BY MR. MARANGOLA:**

1   Q.   Detective Adams, Mr. Verrillo asked you if you based your
2   application for the search warrant on what Mr. Standish said,
3   and I think you indicated yes.  Did you also base that search
4   warrant on other information?
10:25:18AM 5   A.   Yes.
6   Q.   All right. So it wasn't exclusively what Mr. Standish had
7   provided?
8   A.   Correct.
9   Q.   And you didn't find drugs on the defendant?
10:25:34AM 10   A.   No.
11   Q.   You didn't find a gun on him?
12   A.   No.
13   Q.   You just found the phone that the CI said he used -- the
14   phone that had the same number that Mr. Standish had given
10:25:44AM 15   you?
16   A.   Yes.
17   Q.   And cash?
18   A.   Yes.
19            MR. MARANGOLA: Thank you.
10:25:52AM 20            THE COURT: Anything further?
21            MR. VERRILLO: I have nothing further.  Thank you.
22            THE COURT:  You may step down.  Thank you very
23   much.
24            (WHEREUPON, the witness was excused).
10:26:01AM 25            THE COURT: Mr. Marangola?

1          **MR. MARANGOLA:** Your Honor, on behalf of Ms. Kocher

2  and Ms. McCreedy, the Government rests.  Thank you.

3          **THE COURT:** Ladies and gentlemen, at this time the

4  Government has rested their proof.  We do have an issue of law

10:26:18AM 5  to discuss outside the presence of the jury.

6          I ask the jury step down at this time.  In the

7  meantime, please do not discuss the matter or allow anybody to

8  discuss the matter with you.  Jury may step down.

9          (**WHEREUPON**, the jury was excused).

10:26:31AM 10          **THE COURT:** Mr. Verrillo, do you have a motion?

11          **MR. VERRILLO:** Yes, Your Honor.  At this time the

12  defendant Xavier Torres moves for a Judgment of Acquittal.

13          The Government has failed to establish each and

14  every element of the remaining drug conspiracy and possession

10:27:25AM 15  of firearm -- furtherance of drug trafficking crime offenses.

16          They have not proven the defendant agreed or had

17  knowledge of an agreement or intended to participate in a

18  conspiracy or acted in furtherance thereof.

19          With respect to the firearm, the Government has

10:27:42AM 20  failed to prove a nexus between any alleged possession and the

21  drug trafficking crime.

22          So I'd ask the Court to grant the motion and

23  dismiss the indictment.

24          **THE COURT:** Thank you.  Mr. Marangola?

10:27:53AM 25          **MR. MARANGOLA:** Your Honor, the Government would

1  oppose the motion.  As the Court knows, the evidence at this

2  point is to be viewed in the light most favorable to the

3  Government, and I think based on the multiple witnesses that

4  have testified that the defendant participated in this

10:28:08AM 5  conspiracy, and the firearms were possessed both by him and

6  others to use in connection with the narcotics trafficking,

7  that the Court should deny the motion.  Thank you.

8          **THE COURT:** Thank you.  Yes, based upon the proof

9  that's been presented at this point, there are issues of fact

10:28:25AM 10  for the jury on each of the elements of the narcotics

11  conspiracy in Count 1, and Count 2 possessing, brandishing and

12  discharging firearms in furtherance of a drug trafficking

13  crime.  Therefore, the motion for a Judgment of Acquittal

14  pursuant to Rule 29 is denied.

10:28:47AM 15          Mr. Verrillo, do you expect to present any proof?

16          **MR. VERRILLO:** Your Honor, I have spoken to my

17  client.  I've had a couple conversations with him related to

18  his right to testify.  I've advised him of his right to

19  testify and right not to testify.  It's my understanding that

10:28:59AM 20  he does not wish to testify.

21          And as I indicated yesterday, attorney Molloy was

22  available if there was going to be some discussion about the

23  statement.  Since that wasn't presented, he's not germane to

24  anything.  So we would not have any evidence to present.

10:29:15AM 25          **THE COURT:** Okay.  Mr. Torres, you've heard what

1    your attorney just said?

2              THE DEFENDANT: Yes, Your Honor.

3              THE COURT: And do you understand you have a right

4    to testify in the trial?

10:29:22AM 5              THE DEFENDANT: Yes, Your Honor.

6              THE COURT: Present witnesses?

7              THE DEFENDANT: Yes, Your Honor.

8              THE COURT: And subpoena witnesses for the trial?

9              THE DEFENDANT: Yes, Your Honor.

10:29:27AM 10             THE COURT: However, do you understand you cannot be

11   compelled to do any of that because you have no burden of

12   proof?

13             THE DEFENDANT: Yes, Your Honor.

14             THE COURT: And you elect in this case not to

10:29:36AM 15  present any evidence; is that right?

16             THE DEFENDANT: Yes, Your Honor.

17             THE COURT: Including your own testimony?

18             THE DEFENDANT: Yes, Your Honor.

19             THE COURT: And do you understand if that is the

10:29:42AM 20  case, at your request the Court will instruct the jury that

21   they cannot make any unfair inference based upon your failure

22   to testify because you have no burden of proof and the burden

23   of proof rests on the Government?

24             Do you understand that?

10:29:55AM 25             THE DEFENDANT: Yes, Your Honor.

1          **THE COURT:** Okay.  Have you had adequate time to

2   discuss all these issues with your attorney regarding proof

3   and testifying?

4          **THE DEFENDANT:** Yes, Your Honor.

10:30:03AM 5          **THE COURT:** Okay.  All right. Mr. Verrillo, will you

6   be requesting the Court instruct the jury regarding the

7   defendant not testifying in this matter?

8          **MR. VERRILLO:** Yes, Judge.

9          **THE COURT:** Okay, I will provide that instruction.

10:30:31AM 10          I'll go through the general instructions that the

11   Court intends to present to the jury.

12          I will define for the jury the province of the

13   Court and the jury.

14          That the evidence in the case consists of the sworn

10:30:53AM 15   testimony of witnesses, any exhibits received in evidence, in

16   this case also stipulations that were agreed to by the

17   parties.

18          I will indicate that they can consider both direct

19   and circumstantial evidence and define direct and

10:31:11AM 20   circumstantial evidence for them.

21          I will instruct the jury that their recollection

22   will control.

23          That if the Court asked any questions of a witness,

24   they can consider that.  However, they should not assume that

10:31:27AM 25   the Court holds any opinion on the matters for which the

1    questions were addressed.  It's up to them to determine the

2    credibility of all the evidence.

3              I will instruct the jury that the attorneys have an

4    obligation to object when the other side offers testimony they

10:31:46AM 5    believe is not properly admissible.  That the Court then made

6    rulings regarding the admissibility of evidence.

7              The rulings by the Court do not indicate any

8    opinion about the weight or effect of such evidence.  Again,

9    the jury are the sole judges of the credibility of the

10:32:08AM10   evidence.

11             I'll instruct the jury they are not to consider

12   sympathy or punishment.  Any sentencing issues are solely

13   within the province of the Court.

14             I will instruct them on the presumption of

10:32:26AM15   innocence and the burden of proof by the Government, proof

16   beyond a reasonable doubt as to each element of each of the

17   charges, and define reasonable doubt for them.

18             I will indicate that the case is important to both

19   the Government for the enforcement of criminal laws, as well

10:32:51AM20   as to the defendant who is charged with a serious crime.

21             I will instruct the jury it will be up to them to

22   determine the credibility of witnesses and how much weight

23   they determine to give to the testimony.  I'll provide them

24   with various tests they may wish to utilize to determine the

10:33:09AM25   credibility of the witnesses .

1     I will indicate that they can consider if a witness

2  has any interest in the outcome of the case.

3     If any witness has shown to have willfully

4  testified falsely, they have the right to conclude that the

10:33:31AM 5  witness lied about other matters.  They may disregard all of

6  the witness's testimony, or may accept whatever part of it

7  they deserve -- they believe deserved to be believed.

8     They may consider any prior inconsistent statements

9  by a witness in determining the credibility of the witnesses.

10:33:51AM 10     I will indicate in this case that accomplices were

11  called by the Government.  That the Government is permitted to

12  provide such witnesses, and give them detailed instructions on

13  the use of accomplice witness testimony.

14     I will further instruct them that they can consider

10:34:11AM 15  a witness' cooperation agreement; and if an individual did

16  plead guilty based upon an agreement, they are not to consider

17  that plea by that person as against the defendant on trial in

18  this case.

19     I will indicate that they can consider both the

10:34:33AM 20  acts and declarations of co-conspirators that were made in

21  furtherance of the conspiracy during the course of the

22  conspiracy.

23     I will instruct the jury that there has been

24  testimony regarding the attorneys for the Government

10:34:51AM 25  interviewing witnesses in preparing for the trial.  That

1    there's nothing wrong in conducting such interviews.  They

2    should not draw any unfavorable inference from that conduct.

3              I will instruct the jury on the use of undercover

4    agents and informants.  There was extensive testimony

10:35:10AM 5  regarding the use of such individuals in this case.

6              We did have a witness convicted of a felony; is

7    that right?  Who was that?

8              **MR. MARANGOLA:** Yes.  Jose Figueroa and Roberto

9    Figueroa were both convicted of felonies.

10:35:33AM10            **THE COURT:** I will instruct the jury that they may

11   consider a conviction of a felony in determining the

12   credibility of a witness.

13             I will instruct the jury they may consider any bias

14   or hostility a witness may have in their testimony.

10:35:55AM15            I will instruct them that they have heard testimony

16   of law enforcement officials.  The fact that a witness is

17   employed by a state, local or federal entity as a law

18   enforcement officer does not mean their testimony is

19   necessarily deserving of greater or lesser weight than that of

10:36:13AM20  any other witness.  They may consider that witness's testimony

21   and give it whatever weight they feel it deserves.

22             Mr. Verrillo, if you request I'll instruct the jury

23   as follows: The law does not compel a defendant in a criminal

24   case to take the witness stand and testify, and no presumption

10:36:48AM25  of guilt may be raised and no inference of any kind may be

1    drawn from the fact that the defendant has not testified.

2            As stated previously, the law never imposes upon a

3    defendant in a criminal case the burden or duty of calling any

4    witnesses or producing any evidence.  This is a very important

10:37:09AM 5    principle which you must be aware of and follow.  It is a

6    basic rule of our criminal justice system.

7            Are you requesting that?

8            **MR. VERRILLO:** Yes, Judge.

9            **THE COURT:** I will read that.  Do you want the jury

10:37:22AM10    advised of the defendant's custodial status?  It would be the

11    following charge: Members of the jury, you may have noticed

12    that the defendant is in custody.  That fact has nothing to do

13    with your determination of the issues in this case.  You are

14    not to speculate on his custodial status or in any way let it

10:37:40AM15    effect your determination.

16            **MR. VERRILLO:** Your Honor, you had said that

17    originally I know.

18            **THE COURT:** Do you want that at this point?

19            **MR. VERRILLO:** So you can do that again, yeah.

10:37:52AM20            **THE COURT:** I will do that.  It's my understanding

21    there were no admissions of the defendant entered in this

22    trial; is that right?

23            **MR. MARANGOLA:** I don't believe there were any to

24    police witnesses, no, Judge.

10:38:09AM25            **THE COURT:** Okay.  Obviously statements to

1    co-conspirators is a different matter.

2              I will indicate to the jury that all available

3    evidence need not be produced.  That specific investigative

4    techniques are not required.

10:38:34AM 5              In this case there was evidence obtained pursuant

6    to search warrants, and they can consider that particular

7    evidence, give it whatever weight they feel to be appropriate.

8              There were video recordings in this case.  I will

9    give the jury instruction regarding that.

10:39:02AM 10             I will also give the jury instructions regarding

11   the use of stipulated evidence.  In this case we have a number

12   of stipulations that were agreed to by the parties.

13             I will instruct the jury that the indictment itself

14   is not evidence.  If there's any variance regarding the dates

10:39:22AM 15  in which the crimes are alleged to have taken place, it does

16   not matter if the charges occurred on or about a certain date

17   or between on or about certain dates.  The law requires only a

18   substantial similarity between the dates alleged in the

19   indictment and the dates established by the testimony and

10:39:43AM 20  exhibits.

21             I will provide them with detailed instructions on

22   Counts 1 and 2, the conspiracy count and the firearms count,

23   and provide that to counsel for you to review overnight.  If

24   you have any changes in those substantive charges, we can deal

10:39:58AM 25  with that in the morning.

1        **MR. VERRILLO:** Okay.

2        **THE COURT:** I will indicate to the jury they may not

3   draw any inference, favorable or unfavorable, toward the

4   Government or the defendant from the fact that any person in

10:40:11AM 5   addition to the defendant is not on trial here.  They also may

6   not speculate as to the reasons why other persons are not on

7   trial.  Those matters are wholly outside their concern, have

8   no bearing on their function as jurors.

9            They are to consider only the evidence against this

10:40:29AM 10   defendant and consider each of the counts separately.

11   Although in this case they will be instructed in the

12   substantive charges that if they found the defendant not

13   guilty on the first count, they cannot find him guilty of the

14   second count, correct?

10:40:45AM 15            **MR. MARANGOLA:** I'm sorry, Judge?

16            **THE COURT:** If they find him not guilty of Count 1,

17   they cannot find him guilty of Count 2.

18            **MR. MARANGOLA:** Agreed.

19            **THE COURT:** I will instruct the jury they can

10:41:01AM 20   consider the exhibits that were received in evidence, and

21   we'll go through those before we conclude today to be sure

22   we're all on the same page regarding the exhibits.

23            I will instruct them on the verdict form.  And in

24   this case a special verdict form indicating both Counts 1 and

10:41:28AM 25   2 as well as weight s related to the conspiracy count; and on

1    Count 2 regarding the firearms count there were special

2    interrogatories that the jury must respond to as well.

3              I will indicate to the jury that their verdict must

4    be unanimous.

10:41:47AM 5              If they have any questions regarding testimony,

6    they can have that reread.  We would ask them to specify with

7    as much detail as possible what testimony they need to be

8    reread.

9              If they want any of the exhibits, those can be

10:42:02AM 10   produced for their examination.   However, any of the

11   controlled substances would be produced in the courtroom -- if

12   the jury wants to examine any of those, they can do that in

13   the courtroom.  And also the videos that were played would

14   also be displayed in the courtroom as well as the firearms.

10:42:29AM 15             I will instruct the jury they can continue to take

16   notes.  That their notes are for their own assistance in

17   refreshing their recollection.  Their notes are confidential,

18   will not be available for examination or review.

19             Juror number 1 will be selected as the foreperson

10:42:47AM 20   based upon the fact that person was the first person called

21   and sworn.

22             If they have any notes, questions for the Court

23   regarding exhibits, law, or testimony, they must provide that

24   in writing.  And during those questions they should not

10:43:08AM 25   indicate the status of their verdict.  Simply -- or their

1    deliberations.  Simply ask their questions.

2              We have four alternate jurors in this case.  They

3    will be kept in a private and secure place to await the

4    rendition of the jury's verdict.

10:43:29AM 5              Mr. Marangola, do you have any exceptions or

6    requests of the general charges?

7              **MR. MARANGOLA:** Judge, I have no exceptions to the

8    general charges as outlined by the Court.

9              **THE COURT:** Okay.  Mr. Verrillo?

10:43:40AM 10             **MR. VERRILLO:** Your Honor, I had filed originally a

11   jury charge request back in February when we were together

12   when there was a joinder of the various people, and I had

13   requested Sands Section 3-3, impermissible to infer

14   participation from mere presence.

10:44:00AM 15             I don't know if the Court gets into that --

16             **THE COURT:** Yes, that's part of the -- that's part

17   of the conspiracy charge.

18             **MR. VERRILLO:** Or from mere association.

19             **THE COURT:** Yes, that's also part of the conspiracy

10:44:08AM 20   charge.

21             **MR. VERRILLO:** Okay.  And, Judge, I had originally

22   objected to the *Pinkerton* language.  So I just want to renew

23   that objection.

24             **THE COURT:** Okay, as part of the substantive charges

10:44:19AM 25   I do instruct the jury on aiding and abetting and *Pinkerton*.

1          **MR. VERRILLO:** Okay.

2          **THE COURT:** Obviously I'll note your objections to

3    those.

4          **MR. VERRILLO:** And then with respect to the

10:44:29AM 5    cooperating witness situation, I referred to Sands No. 7-7

6    dealing with the fact that they should be viewed with --

7    exercising caution in evaluating their testimony, et cetera.

8          I assume the Court has that --

9          **THE COURT:** That is part of my --

10:44:45AM 10          **MR. VERRILLO:** -- in its instructions?

11          **THE COURT:** Yes.

12          **MR. VERRILLO:** I'm trying to remember if there

13    were -- in the testimony if there was any prior bad acts in

14    terms of -- the conspiracy was -- alleged conspiracy was

10:44:57AM 15    '15 -- was it '15 to '18?

16          So I'm trying to remember if there was any bad acts

17    before that offered by the Government because I had asked

18    about that in terms of a limiting instruction.

19          **THE COURT:** I don't believe there were.

10:45:11AM 20          **MR. MARANGOLA:** I don't recall any, Judge.

21          **THE COURT:** No.

22          **MR. VERRILLO:** Okay.  Then I did request with

23    respect -- if you recall, Your Honor, a while back I asked

24    about the nickname, and I asked for a limiting instruction.

10:45:22AM 25          Obviously with the name Pistolita, that that be --

1   that's paragraph 5 of my request for charge, that there be

2   some instruction that that has no -- offered for a limiting

3   purpose of identifying the defendant, and that it's not --

4   it's only considered for the purpose of identification because

10:45:42AM 5   as we discussed previously, there was concern as to the name

6   itself having some significance, which I understand it does,

7   and it was something he's had since childhood.  So I just ask

8   for some instruction on that -- that the name --

9           THE COURT: Did you provide --

10:45:55AM 10           MR. VERRILLO: I have it here, Judge.

11           THE COURT: Let me check on that.

12           MR. VERRILLO: Paragraph 5 of my February 10th

13   submission.

14           THE COURT: Okay.

10:46:02AM 15           MR. VERRILLO: And I would also ask in light of the

16   testimony as the Court did, some limiting instruction on the

17   photographs that were offered.  If the Court could give

18   something on that ?

19           THE COURT: Yes, I will do that.  I did that during

10:46:21AM 20   the course of the trial, but I will do that again.

21           MR. MARANGOLA: Judge, with respect to the limiting

22   instruction request on the name Pistolita, I guess I would

23   object only because there was testimony -- and Mr. Verrillo

24   made it somewhat of an issue with respect to identification of

10:46:39AM 25   his client -- there was testimony that the defendant was known

1   as Pistolita, P, and Pepe.

2           There's been no argument or suggestion by the

3   Government or any witness that those names meant anything

4   negative or from which I think any negative connotation

10:46:57AM 5   against the defendant could be drawn.

6           We certainly don't intend to argue that because

7   his -- one of his nicknames was Pistolita, that that makes him

8   more likely to be found guilty or that the jury should infer

9   guilt because of that.

10:47:13AM 10           As we had indicated before, that was strictly

11   elicited because that's how some of the individuals in the

12   case knew him.

13           But I would just -- since some of them knew him by

14   a different name, if the Court is inclined to give any

10:47:25AM 15   instruction, I would just ask that any of the nicknames be

16   included with that.

17           **THE COURT:** Okay.  Let me look at the instruction

18   suggested by Mr. Verrillo.  I will review it with both of you

19   tomorrow.

10:47:37AM 20           **MR. MARANGOLA:** Thank you.  With respect to the

21   photographs, 193 specifically, the shot, I will just point out

22   I don't even -- I have no objection obviously to the Court

23   giving a further instruction similar to what it provided

24   yesterday.

10:47:56AM 25           I would note that I don't even think it was 30

1   seconds, I think it was about 15 seconds that picture was

2   actually displayed to the jury.  We kept it very short and for

3   the limited purposes that we had mentioned.

4          So we plan to do that in the closing, just keep it

10:48:12AM 5   short, but to tie it in for the purposes that we've offered

6   it, namely, that it goes to the discharge and the, you know,

7   co-conspirator being murdered in connection with this event.

8          **THE COURT:** Yes, I will do that.

9          **MR. MARANGOLA:** Thank you.

10:48:24AM 10          **THE COURT:** One more issue on the forfeiture.

11   There's a forfeiture of a weapon in this case.  I don't

12   believe either party has requested this be submitted to the

13   jury in the case of a conviction; is that right?

14          The Government hasn't?

10:48:36AM 15          **MR. MARANGOLA:** We have not.

16          **THE COURT:** Mr. Verrillo?

17          **MR. VERRILLO:** We would not want it submitted to the

18   jury, Your Honor.  So the Court could deal with that issue.

19          **THE COURT:** Okay.  All right. What we'll do is bring

10:48:46AM 20   the jury back.  Mr. Verrillo, you can rest in front of the

21   jury as well.

22          I'll instruct them proof has been closed at this

23   point.  They will return tomorrow morning to hear the

24   summation of counsel and then be instructed on the law.

10:49:08AM 25          And tomorrow we'll begin at 8:30, but I will

1    indicate to them that there's obviously no time limit to their

2    deliberations.

3              Summations, they will be instructed on the law,

4    begin their deliberations and they'll have as much time as

10:49:22AM 5    they want to deliberate.  We'll get them lunch tomorrow

6    obviously, okay?

7              **MR. MARANGOLA:** Judge, the only other request -- I

8    just remembered in the conspiracy charge, in the second

9    element it talks about like a person's membership in the

10:49:40AM 10    conspiracy being presumed to continue unless there's been an

11    affirmative act of termination.

12             And I don't know that the defense intends to argue

13    that there has been such an affirmative act of termination.  I

14    bring it up only because Mr. Verrillo mentioned in his opening

10:49:59AM 15    that -- something along the lines of the defendant wasn't

16    around from either 2016 through 2018 or 2017 into 2018.

17             And if he intends to argue essentially that his

18    client withdrew from the conspiracy or that that shouldn't be

19    considered as evidence against him, I would either request

10:50:28AM 20    that he not be permitted to argue that; or there be an

21    additional instruction, and I can see if I can find one for

22    the Court.

23             I don't know if he intends to argue it, but an

24    instruction because under the law it is actually his burden to

10:50:42AM 25    establish -- because it's an affirmative defense -- the

1 | withdrawal from the conspiracy.

2 |  THE COURT: There's been no proof of any withdrawal

3 | of the conspiracy.

4 |  MR. MARANGOLA: I didn't expect that would be

10:50:50AM 5 | argued, but I just wanted to confirm.  If it's not going to

6 | be, then I don't think we need any further charge on it.  But

7 | if it is, then -- and Mr. Verrillo intends to argue that, then

8 | I think it might be appropriate.

9 |  THE COURT: Mr. Verrillo?

10:51:02AM 10 |  MR. VERRILLO: Obviously I can argue my client

11 | wasn't there at certain times.  I've said that so...

12 |  THE COURT: Sure, that's different than --

13 |  MR. VERRILLO: The evidence --

14 |  THE COURT: -- than arguing he withdrew from the

10:51:12AM 15 | conspiracy or did anything affirmative to withdraw from the

16 | conspiracy.

17 |  You're not going to argue that; is that right?

18 |  MR. VERRILLO: I'm not arguing about withdrawal.  I

19 | was going to argue in terms of the evidence against him,

10:51:23AM 20 | whether he was involved at a certain time.  If he wasn't

21 | there -- obviously if he wasn't there, that's evidence in his

22 | favor.

23 |  THE COURT: The conspiracy charge deals with that.

24 |  MR. MARANGOLA: Okay.  I think we're all set.  Thank

10:51:34AM 25 | you, Judge.

1    **MR. VERRILLO:** Judge, after you do what you need to

2    do to release them, I want to renew my motion just for the

3    record to, you know, after we're done.

4    **THE COURT:** Okay, we'll do that.  Oh, do you want to

10:51:44AM 5    do the exhibits now?  Why don't we do that to be sure we're

6    all on the same page.

7    The Court has received Exhibit 1, 3 -- was 4

8    received?  A photo of the defendant?

9    **MR. MARANGOLA:** No.

10:52:21AM 10    **THE COURT:** Okay.  So Exhibits 1, 3, 15, 16, 18, 19,

11    20, 21, 22, 23, 24, 29, 30, 35, 36, 37, 38, I do not have 39

12    received; is that correct?

13    **MR. MARANGOLA:** That's correct, Your Honor.

14    **THE COURT:** 40, 43, 44, 45, 48, 51, 52, 53, 54, 55,

10:53:09AM 15    57, 59, 60, 62, 63, 64, 67, 68, 69, 70, 71, 72, 73, 74, 75,

16    76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 90, 91, 92, 93, 94,

17    95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107,

18    and 108 the first page and the certification only; is that

19    correct?

10:54:17AM 20    **MR. MARANGOLA:** Yes, Your Honor.

21    **THE COURT:** Okay.  109, 114, 115, 116, 117, 118,

22    119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130,

23    131, 132, 134, 135, 137, 137A, 142, 143, 144, 145, 146, 147,

24    149, 152, 153, 156, 156A, 157, 157A, 160, 161, and 160 again

10:55:27AM 25    is received for the first page and the last page only.

1          **MR. MARANGOLA:** Yes.

2          **THE COURT:** All right. 174, 175, 176, 178, 179, 181,

3    187, 188, 189, 190, 191, 193, 195, 197, 200, 205, 206, 208,

4    209, 214, 216, 217, 218, 220, 221, 224 -- is there some

10:56:28AM 5    restriction on that one?  I don't remember.

6          **MR. MARANGOLA:** No, 224 was the box with the

7    packaging and the straws.

8          **THE COURT:** Okay.  So 224 is received, 225A, 226,

9    226A --

10:56:44AM 10          **MR. MARANGOLA:** Judge, we didn't have 226, just

11   226A.

12          **THE COURT:** You're right, that's not received.

13          **MR. MARANGOLA:** Okay.

14          **THE COURT:** 226A is received, 226B is received, 227,

10:56:54AM 15   228, 229, 231, 231A, 232, 234, 235, 236, 238, 237 was not

16   received; is that right?

17          **MR. MARANGOLA:** We have 237 in.  Did you say 235?

18          **THE COURT:** I have 235 Certificate of Conviction of

19   Obed Torres.

10:57:23AM 20          **MR. MARANGOLA:** Okay, yes.

21          **THE COURT:** 236 was transcript of the plea of Obed

22   Torres.

23          **MR. MARANGOLA:** First and last page.

24          **THE COURT:** First and last page?

10:57:39AM 25          **MR. MARANGOLA:** For 235, for the transcript.

1              **THE COURT:** 236.

2              **MR. MARANGOLA:** No, 236 -- I'm sorry, is the

3    Certificate of Conviction.  That's --

4              **THE COURT:** Do I have them backwards then?  235 I

10:57:49AM 5  have certificate, and 236 the transcript.

6              **THE CLERK:**  That's what I have too.

7              **THE COURT:** What do you have, Paula?

8              **THE CLERK:** What you have is what I have.

9              **MR. MARANGOLA:** We might have them backwards.

10:57:58AM 10            **THE COURT:** The transcript in any event is only

11   coming in for the first and last pages?

12             **MR. MARANGOLA:** Yes.

13             **THE COURT:** Okay.  You do not have 237 or you do

14   have 237?

10:58:07AM 15            **MR. MARANGOLA:** We do have 237 in.

16             **THE COURT:** Paula, do you have that?

17             **THE CLERK:** I do.

18             **THE COURT:** 237 is received, 238, 239, 240, 241,

19   242, 243, 244, 246, 250, 251, 252, 253, 254, 269, 270, 271,

10:58:35AM 20 272, 273, 274, 275, 278, 285, 286, 287, 288, 289, 290, 291,

21   292, 293, 294, 295, 296, 297, 303, 304, 305, 306, 307, 312,

22   313, 316, 317, 318, 319, 320, 321, 322, 323, 327, 328, 329,

23   330, 331, 332, 335, 341, 342, 344, 348, 349, 350, 351.

24             **MR. VERRILLO:** Plea agreements, Your Honor, are

10:59:56AM 25 redacted so just --

1      **THE COURT:** Are you talking about --

2      **MR. VERRILLO:** 341, 342 -- 344 was a plea agreement.

3      **THE COURT:** Yes, 341 is plea agreement of Axel

4  Aponte Camacho, and that's redacted.  What's redacted?

11:00:15AM 5      **MR. VERRILLO:** As far as the factual information.

6      **MR. MARANGOLA:** Factual basis has been redacted,

7  Judge, from each of the plea agreements that have been

8  received.

9      **THE COURT:** So that's 341, 342 which is a plea

11:00:25AM 10 agreement for Roberto Figueroa; and 343, which is the plea

11 agreement for Victor Nunez; 344 is received entirely -- the

12 cooperation agreement of Jose Figueroa?

13      **MR. MARANGOLA:** Yes, 344.  But 343 did not come in.

14      **THE COURT:** Did I say that?  Okay, I misspoke.  343

11:00:44AM 15 is not in.  Okay.  There were a couple of defense exhibits

16 marked for identification, but nothing received in evidence;

17 is that correct?

18      **MR. VERRILLO:** Correct.

19      **THE COURT:** Okay.

11:01:07AM 20      **MS. KOCHER:** Judge, I had Exhibit 29, the photograph

21 of Mark Young, received subject to connection.  We satisfied

22 that.

23      **MR. MARANGOLA:** I think it was initially received

24 subject to connection, Judge, with Investigator Briganti's

11:01:22AM 25 testimony; and then we had Roberto Figueroa identify him

1  afterwards so...

2          **THE COURT:** Yes, I have it as received.

3          **MR. MARANGOLA:** All right, thank you.  Anything

4  else?

11:01:36AM 5          **MR. MARANGOLA:** No, thank you, Judge.

6          **MR. VERRILLO:** Nothing further, Judge.

7          **THE COURT:** All right, we'll bring the jury in,

8  provide them with an instruction and break for the day, and

9  then I'll provide you with the substantive charges.

11:05:59AM 10          (**WHEREUPON**, the jury is present).

11          **THE COURT:** Mr. Verrillo?

12          **MR. VERRILLO:** Your Honor, the defendant rests.

13          **THE COURT:** Members of the jury, at this time the

14  proof in this case has been closed.  The next step in this

11:07:04AM 15  process will be for you to hear the summation of counsel.

16          We're not going to do that today.  We're going to

17  recess for the day, bring you in tomorrow morning at 8:30, and

18  then you'll hear the summation of counsel; then I will

19  instruct you on the laws, the rules and the principles that

11:07:21AM 20  will guide your deliberations.

21          Now, the summations provide the attorneys with an

22  opportunity to review the evidence, submit it to you for your

23  consideration to consider the facts, inferences and

24  conclusions which they contend may be properly drawn from the

11:07:38AM 25  evidence.

1          If you find that an attorney has accurately

2    summarized and analyzed the evidence, if you find the

3    inferences and conclusions which you've been asked to draw are

4    reasonable, logical and consistent with the evidence, then you

11:07:52AM 5    may adopt those inferences and conclusions.

6          You, members of the jury, are the finders of fact.

7    It's for you and you alone to determine the facts in this case

8    from the evidence that you believe to be truthful and

9    accurate.

11:08:08AM 10          Thus, you should remember that whatever the

11    attorneys say, however they say it is simply argument

12    submitted for your consideration.

13          Remember also the attorneys are not witnesses in

14    the case so, therefore, if an attorney asserts as fact

11:08:23AM 15    something that is not based on the evidence, you can disregard

16    it.

17          Remember, nothing the attorneys say at any time is

18    evidence, so nothing they say in their summations is evidence.

19    You've heard the evidence and you must decide the case on the

11:08:38AM 20    evidence as you find it and the law as I will explain it to

21    you.

22          Third, during the summations the attorneys'

23    recollection of the evidence may in good faith differ from the

24    recollection of the other attorney or from your own

11:08:51AM 25    recollection.  The attorneys will undoubtedly differ regarding

1  the conclusions they believe may be properly drawn from the

2  evidence.

3         It's your recollection, your understanding, your

4  evaluation of the evidence which will control.  You and you

11:09:09AM 5  alone are the judges of the facts in this case.

6         If during your deliberations you need to have any

7  recollection refreshed through the testimony, that can be

8  done.  You can have a portion or all of the testimony of a

9  witness read back to you.

11:09:23AM 10         Remember, under the law I am responsible for

11  explaining the law to you.

12         Now, we are going to reassemble tomorrow morning at

13  8:30 when you'll hear the summation of counsel, instructions

14  by the Court, and then you'll begin your deliberations.  So

11:09:37AM 15  there's no time limit for that, so please plan to be here for

16  as long as you need to be tomorrow.  We will provide you with

17  lunch, but be willing and be able to take as much time as you

18  need for this case.

19         It's obviously very important to the Government and

11:09:53AM 20  very important to the defendant in this case, so you need to

21  give it your attention tomorrow.

22         Now, you've heard a lot of evidence in this case.

23  It's not the time to make up your mind or discuss this case

24  with anybody.  To do so would be highly improper and would

11:10:08AM 25  also be unfair to both of the parties in this case.  I know

1   you've abided by that admonition in the past.

2           Please do not do any research on any issues related

3   to this case on any parties, witnesses, factual issues, legal

4   issues, or locations.  To do so would be unfair because the

11:10:27AM 5   parties could not challenge that in any way.

6           Please understand you have to base your decision

7   only on the evidence you've heard in this courtroom, and then

8   the arguments of counsel you'll hear, and the instructions I

9   will provide you on the law.

11:10:41AM 10           So with that understanding the jury may step down

11  until 8:30 tomorrow morning.  Thank you.  Have a good night.

12           (**WHEREUPON**, the jury was excused).

13           **THE COURT:** Thank you.  We'll stand in recess.

14           **MR. MARANGOLA:** Thank you, Judge.

11:11:33AM 15           (**WHEREUPON**, proceedings adjourned at 11:12 a.m.)

16                        *   *   *

17                    **CERTIFICATE OF REPORTER**

18

19           In accordance with 28, U.S.C., 753(b), I certify that

20  these original notes are a true and correct record of

21  proceedings in the United States District Court for the

22  Western District of New York before the Honorable Frank P.

23  Geraci, Jr. on November 3rd, 2021.

24  S/ Christi A. Macri

25  Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
    Official Court Reporter