UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

XAVIER TORRES,

                    Defendant.

Case # 18-CR-6094-FPG

DECISION AND ORDER

**INTRODUCTION**

On November 4, 2021, after a three-week jury trial, Defendant Xavier Torres was found guilty of: (1) one count of conspiracy to possess with intent to distribute and/or to distribute, cocaine and/or heroin in violation of Title 21, United States Code § 846; and (2) one count of knowing and unlawful use or carry of firearms during and in relation to, or possession of firearms in furtherance of, a drug trafficking crime in violation of Title 18, United States Code § 924(c)(1)(A)(i), (ii), (iii), and 2.  ECF No. 663.  During the trial, the Government noticed Victor Nunez ("Nunez") as a witness, but did not call him.

On January 4, 2022, Defendant filed a Statement with Respect to Sentencing Factors, raising several objections to the Presentence Investigation Report prepared by United States Probation.  *See* ECF No. 689.  In response to those objections, the Government requested a sentencing hearing to provide it an opportunity to "present cooperating/accomplice witness testimony demonstrating the defendant's direct participation in the John Gonzalez murder."  ECF No. 690.  The Court granted that request.  *Id.*

In advance of the sentencing hearing, Defendant Xavier Torres filed a motion seeking, *inter alia*, the disclosure of mental health records of Nunez from "any mental health providers during

his incarceration as potential Brady material for the defense in accordance with the Fifth and Sixth amendments to the United States Constitution." ECF No. 701 at 1 (sealed document). In support of his motion, Defendant cited several examples from the Government's *Jencks* disclosures which he asserted "raise serious issues as to [Nunez's] mental capacity, recollection, memory recall, truthfulness, and other areas which are legitimate areas of cross-examination of the witness." *Id.* at 4. Further, Defendant argued that these records "are relevant and material to the credibility and veracity of this witness and said records have not been produced by the [G]overnment as a part of the Jencks materials." *Id.* Thus, Defendant requested that the Court order (1) the production of "all mental health records in [the Government's] possession of Victor Nunez for in camera review"; (2) disclosure of "all facilities where the witness has resided so that jail and counseling records from each institution can be sought for in camera review"; and (3) "[f]or the release of said records to the defense after an in camera review has been conducted." *Id.* at 6-7.

The Court held the sentencing hearing on March 16, 2022, March 24, 2022, and March 31, 2022. ECF No. 704; ECF No. 710; ECF No. 714. On March 24, 2022, the Court granted Defendant's request for the mental health records insofar as it ordered them to be produced to the Court for *in camera* review prior to their disclosure to the Defendant. ECF No. 710. During the course of the multi-day hearing, Defense Counsel thoroughly cross-examined Nunez regarding his mental health history and conditions, his mental health treatment while incarcerated, any head injuries he may have suffered after a motorcycle accident, and the affects of his mental health conditions on his well-being and function.

On March 31, 2022, Defendant submitted subpoenas to produce Nunez's mental health records pursuant to Federal Rule of Criminal Procedure 17 relative to Alleghany County Jail, Livingston County Jail, Seneca County Jail, and Chautauqua County Jail, along with a Proposed

Order. That same day, the Court issued an Order directing the facilities to submit Nunez's mental health records to the Court for *in camera* review and directing Defendant's attorney to serve each of the subpoenas on the respective jails.[1] ECF No. 716 (sealed). The Court set a status conference in this matter for April 27, 2022, to provide the Court an opportunity to receive and review the subpoenaed records and determine whether further proceedings related to the sentencing hearing are necessary. *See* ECF No. 710.

The Court has received records from Alleghany County Jail, Livingston County Jail (which also included third-party provider records), Seneca County Jail, and Chautauqua County Jail and has completed *in camera* review of those records.

## DISCUSSION

"It is normal practice for the trial court to review [psychiatric records] in camera to ascertain if the report contains any relevant information for the purposes of cross-examination." *Viera v. Sheahan*, 16-CV-4048(KAM), 2020 WL 3577390, at *6 (E.D.N.Y. June 30, 2020) (alteration in original) (citation omitted).

The Court has reviewed all records received and considered whether they contain information that is likely related to credibility and whether any of the records raise issues related to Nunez's "recollection, memory recall, truthfulness, and other areas which are legitimate areas of cross-examination" as requested by Defendant. ECF No. 701 at 4 (sealed). During its review, the Court found no evidence in the records of "deep or sustained mental problems which would directly bear upon the credibility of the witness." *See United States v. Marcus*, No. 05 CR 457, 2006 WL 8446893, at *2-3 (E.D.N.Y. Dec. 6, 2006) (finding that defense counsel was "not entitled

---

[1] The Court subsequently issued an Amended Order which provided additional information regarding the return of records to the jails and citations to relevant statutes related to the privacy protections. ECF No. 718.

3

to complete access" to psychiatric records "but only to the aspects of the records that are exculpatory or relevant for impeachment purposes"). Nor did the Court find any relevant information regarding Nunez's recollection, memory recall, or any other pertinent areas of potential cross-examination. Indeed, nothing in the mental health records suggests that Nunez's ability to testify was hampered in any way by his mental health, therefore prevention of the use of these records for cross-examination is entirely appropriate. *See Viera*, 2020 WL 3577390, at *6 ("The trial judge reviewed [the witness's] psychiatric record, made a determination that [the witness's] ability to testify would not be affected by any mental health condition, and thus prevented use of the record for cross-examination. Trial judges in both federal and state court routinely make similar determinations, which are squarely within their discretion.").

Any potential concerns are further ameliorated by Defense Counsel's thorough cross-examination of Nunez. During his questioning, Counsel delved into Nunez's specific mental health conditions and how those conditions affect his functioning. He also asked Nunez about a motorcycle accident in which he sustained injuries to determine whether that incident led to any issues with Nunez's memory or recall. Thus, this case does not present a scenario where "the defense was unaware of the witness's mental health issues or the withheld documents revealed information previously unknown or not otherwise discoverable upon further investigation." *See McCray v. Capra*, No. 15-cv-1129, 2018 WL 3559077, at *11 (N.D.N.Y. July 24, 2018) (collecting cases where "a witness's withheld mental health records and evaluations were deemed sufficiently material to warrant habeas relief"). Here, Defense Counsel was "on notice" of Nunez's mental health history and had a substantial opportunity during cross-examination to gain "insight into how those diagnoses affected [his] past behavior." *Id.*

Accordingly, the Court finds, after conducting *in camera* review, that the records do not contain any evidence that bears upon Nunez's credibility or is otherwise relevant or material and subject to disclosure under *Brady* or *Jencks*.

## CONCLUSION

For the foregoing reasons, Defendant's motion for release of the subpoenaed records is DENIED.

IT IS SO ORDERED.

DATED:   April 26, 2022
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

5