1

1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3     - - - - - - - - - - - - X
      UNITED STATES OF AMERICA,              18-CR-6094
4                     Plaintiff

5            Vs.
      XAVIER TORRES                    Rochester, New York
6                     Defendant            May 19, 2022
                                           10:00 a.m.
7     - - - - - - - - - - - - X

8                         TRANSCRIPT OF SENTENCING
                     BEFORE THE HONORABLE FRANK P. GERACI, JR.
9                        UNITED STATES DISTRICT JUDGE

10                    U.S. ATTORNEY'S OFFICE
                      BY: ROBERT MARANGOLA, ESQ.
11                    100 State Street
                      Rochester, New York 14614
12                    Appearing on behalf of the Plaintiff

13

                      MAURICE J. VERRILLO  ESQ.
14                    3300 Monroe Avenue
                      Suite 301
15                    Rochester, New York 14618
                      Appearing on behalf of the Defendant
16

17

      COURTROOM DEPUTY:   Stephen Ryck
18

19

      COURT REPORTER: Brandi A. Wilkins
20                    scalisba@gmail.com
                      Kenneth B. Keating Federal Building
21                    100 State Street, Room 2120
                      Rochester, New York 14614
22

23

24

25

1          THE CLERK:  This is 18-CR-6094, USA versus

2     Xavier Torres.  Rob Marangola is here for the

3     Government.  Maurice Verrillo for Mr. Torres and

4     Jennifer Fish from probation.  You may be seated.

5     This matter is on for sentencing.

6          THE COURT:  Are you Xavier Torres?

7          MR. TORRES:  Yes, Your Honor.

8          THE COURT:  This matter is on for

9     sentencing.  There are a number of matters the Court

10    needs to address before we get to the sentencing

11    matter.  First of all, the defense did request certain

12    mental health records from various correctional

13    facilities.

14         The Court did take the opportunity to review

15    those records in camera, determined that most of those

16    should not be disclosed to the defendant in that they

17    did not impact the determination in the hearing that

18    we had with the exception of records from Allegheny

19    Correctional Facility.  The Court did disclose those

20    two the defense counsel based upon the fact there's

21    some indication regarding memory issues of Mr. Nunez.

22         Subsequent to that, the Court did receive

23    memorandums from both the defense and the Government

24    related to that hearing.  Regarding the mental health

25    records, the Court did not find anything in there that

1    would cause concern regarding memory issues of the

2    witness.  In fact, there were a number of

3    inconsistencies in the records, some reported memory

4    issues, but there was no diagnosis of any short term

5    or long term memory issues that would give the Court

6    reason for pause or concern.  Did you want to be heard

7    anymore than that, Mr. Verrillo?

8              MR. VERRILLO:  I do want to be heard on the

9    Government's response to my summation, but I don't

10   know if we're there yet.  So I think the Court has

11   submissions on mental health issue.

12             THE COURT:  Okay.  The second thing I want

13   to address again just to make clear for the record the

14   defense did make motions under Rule 29, a motion for a

15   judgment of acquittal.  The Court denied that at the

16   trial and subsequent in the post verdict motions based

17   upon the fact that the evidence that was presented to

18   the jury was sufficient for the verdict that was

19   returned by the jury and that there are issues of fact

20   for the jury to determine, particularly the

21   credibility of the witnesses who testified in this

22   case, and therefore, I want to reiterate that the

23   motion under Rule 29 for motion for judgment of

24   acquittal is denied.

25             There's also a motion under Rule 33 for new

1   trial on a number of grounds including reiteration

2   that the motion denying suppression of certain

3   statements by the defendant should be reexamined by

4   the Court.  The Court determined that there was no

5   reason to reexamine that determination and that is a

6   basis for the motion for a new trial was denied as

7   well.  In addition, there was a motion for a new trial

8   based upon the defensive argument that the Court

9   errored in charging the jury in particular in

10  providing Pinkerton charge to the jury, and once

11  again, the Court has previously denied that motion and

12  continues to deny that motion.

13          The third issue is the murder cross

14  reference pursuant to guideline 2D1.1D.  The Court did

15  conduct a hearing regarding that particular matter.

16  The Court has received submissions from both the

17  defense and the Government related to that.  Did you

18  want to be heard on that, Mr. Verrillo?

19          MR. VERRILLO:  Yes, Judge.  I extensively

20  discussed Mr. Nunez.  I'm not going to repeat that.  I

21  just want to point out that the Government had

22  requested the hearing, sentencing hearing first of

23  all, and next that Mr. Standish has no personal

24  knowledge of what happened on June 6, 2016.  I had

25  pointed out during cross examination that he gave

1    sworn testimony to a Buffalo City Court judge which
2    was inconsistent with his testimony in court including
3    he indicated there his last contact was June 4, 2016.
4    When he testified before the Buffalo City Court Judge
5    that was on June 8, 2016, he did not say he knew of a
6    shooting or he saw any article of a shooting.
7           Mr. Standish doesn't provide independent
8    corroboration of any of Nunez's claims.  Also, even if
9    it was true that there was this meeting or get
10   together where he was shown an article, that doesn't
11   prove anything as far as we're concerned.  The
12   testimony of Robert Figueroa and others about the
13   events of the shooting which they were not present at
14   are also inconsistent with Nunez including who drove
15   Flacco to Buffalo.  So I just wanted to make those
16   points in addition to what we've already raised in our
17   papers.
18           THE COURT:  Thank you.  Mr. Marangola.
19           MR. MARANGOLA:  Judge, the testimony of Mr.
20   Standish with regard to the defendant showing him that
21   article was never impeached.  He was not asked about
22   any murder -- or article and when he was asked about
23   the murder he testified about the article that he was
24   shown.  He was shown that by the defendant irrelated
25   to the specific murder that Mr. Nunez testified the

1    defendant orchestrated and he was never impeached

2    about that point.  Not only did he show him that

3    article but he made the comment that the person was

4    begging for his life and that he had fucked with the

5    wrong people, excuse my language.  I believe that was

6    the comment he had made indicating that he had some

7    knowledge other than just simply having read it in the

8    local news.

9            And finally, with respect to the fact that

10   he pointed out to that the Government requested the

11   sentencing hearing, Judge, the Government merely

12   sought since he objected to that application the

13   application of the murder reference guideline to round

14   out the record on that particular point.  So if he had

15   not objected to it, we wouldn't have asked for a

16   hearing, but he nonetheless objected, felt it

17   appropriate that the court have additional information

18   to make his fact finding on that issue.  Thank you.

19           THE COURT:  Thank you.

20           MR. VERRILLO:  Judge, one other thing if I

21   could.

22           THE COURT:  Sure.

23           MR. VERRILLO:  Mr. Nunez when he testified

24   testified about what he did and there was no mention

25   about Mr. Gonzalez begging for his life.  So I just

1    want to state that.  There was no mention of that in

2    his direct testimony.  So other people have claimed

3    that, but the witness who says he was there did not

4    testify to that.

5          THE COURT:  Thank you.  Regarding the cross

6    reference under guideline 2D1.1, the Court did conduct

7    the hearing at the request of the Government.  Victor

8    Nunez did testify that he had entered into a

9    cooperation agreement with the Government.  He had

10    pled guilty to conspiracy to possess with intent to

11    distribute heroin.  His guideline sentencing range 290

12    to 365 months.

13          Mr. Nunez did admit involvement in two

14    homicides, one of Mr. Garcia on January 20 of 2016

15    which was conducted with Odell Torres, that that

16    actually involved murder of the wrong individual and

17    murder of the brother of the target, and then on June

18    6 of 2016 did travel to Buffalo, New York, with the

19    defendant Xavier Torres and murdered Jonathan

20    Gonzalez.  Both of those murders were directed by

21    Carlos Javier Figueroa.

22          The testimony from Mr. Nunez indicated that

23    he had been involved in the sale of heroin since a

24    young age, sold drugs on Burbank Street for Carlos

25    Figueroa, and Jonathan Gonzalez, the victim of the

8

1    homicide in Buffalo, sold and packaged the drugs as
2    well for Mr. Figueroa.  That he was directed to kill
3    Jonathan Gonzalez because he had sold drugs that did
4    not come from the Figueroa organization, that he did
5    receive the guns involved in that homicide from 699
6    Main Street which was the possession -- one of the
7    locations of the drug trafficking network distribution
8    centers.
9            Mr. Nunez did admit on the stand that he had
10   some mental health issues, was however never treated
11   for those, that he used heroin and marijuana on a
12   daily basis at some time, that he ODed on heroin at
13   one point in 2015, that he was in a motor vehicle --
14   motorcycle accident that did not result in any brain
15   injury, that he had no problems with memory.  He did
16   indicate some hallucinations at some point.  It was
17   unclear whether or not those were related to some type
18   of injury or medications that he was taking, did
19   indicate that he had suffered from issues of
20   depression based upon the -- in particular the charges
21   that were placed against him.
22           Mr. Nunez did admit quite frankly that he
23   was not truthful to investigators during proffer
24   sessions, that he was not truthful during his
25   testimony before the Grand Jury and at other times.

9

1   However, based upon the testimony of Mr. Nunez and in

2   concert with the corroboration of some of the

3   testimony that occurred at trial, the Court finds that

4   Victor Nunez was in fact a credible witness regarding

5   the involvement in the murder of Jonathan Gonzalez and

6   therefore that the cross reference to murder under

7   guideline 2D1.1 will apply as to the defendant Xavier

8   Torres.

9          The Court is aware of the testimony of Louis

10  Rosario who seemed to conflict with some of the

11  testimony regarding his presence in Buffalo, the use

12  of other matters.  The Court does not find any of

13  those that testimony convincing to dispute the

14  testimony of Victor Nunez.  In addition, his testimony

15  at the trial from the witness, Standish was a previous

16  Department of Corrections officer testified regarding

17  his involvement in this drug conspiracy as a customer

18  and also the testimony of Roberto Figueroa that

19  corroborated the testimony of Victor Nunez.  Therefore

20  the Court finds that there is evidence by

21  preponderance of the evidence to support the cross

22  reference to murder under guideline 2D1.1.

23          The next issue the Court wants to deal with

24  are the numerous objections that have been raised by

25  the defense.  Do you want to be heard on that?

1            MR. VERRILLO:  Judge, I think my papers are

2      sufficient.

3            THE COURT:  Mr. Marangola, anything further

4      on that?

5            MR. MARANGOLA:  No.  Thank you, Judge.

6            THE COURT:  Okay.  There are a number of

7      objections filed by the defense to the presentence

8      report.  First one was an objection to the use of

9      various aliases for which the defendant was known

10     including Pistolita, Peewee, P and Pepe.  There was

11     testimony from a number of different witnesses at the

12     trial that did corroborate the use of those particular

13     aliases by Mr. Torres.  Peewee apparently was referred

14     to in 2009 presentence prepared by the United States

15     Probation Department.

16            Xavier Torres was another name used by the

17     defendant that was listed as an alias on one of a

18     previous criminal wrap sheets.  P and Pepe were names

19     that were used by the defendant, Mr. Torres.  That was

20     articulated by confidential informant information as

21     well.  In any event, the use of the aliases and the --

22     by the defendant in no way impacts the guideline range

23     and therefore that objection is overruled.

24            The defense did object to Paragraphs 35 and

25     36 regarding the factual summary in this case, and

1  again, that was based upon previous reports and

2  testimony that was supported and therefore that

3  objection's also overruled and again that has no

4  impact on the ultimate guideline determination.

5           The defense objected to Paragraphs 39, 40,

6  41, 42, 43, 44, 45, 48, 49, 50, 54, 58 and 59 which

7  all refer to activities by co-defendants.  The

8  defendant was charged and convicted of a conspiracy in

9  this case.  Therefore the acts of all the could

10  conspirators were relevant information for the

11  probation department to provide to the Court for its

12  consideration.  The co-defendants all had different

13  roles as often occurs in conspiracies and worked

14  together to accomplish the goals of the conspiracy,

15  and therefore, the objection to those paragraphs is

16  also denied.

17           The defense objects to Paragraphs 46, 47, 55

18  and 56 claiming that he never used the nickname P.

19  Again, discovery indicates otherwise, and again, that

20  has no impact on the guideline range so that objection

21  is also overruled.  The defense objects to Paragraphs

22  51, 52 and 53 regarding a red Honda that was involved

23  in this conspiracy.  The defendant stated that he

24  walked there, did not utilize this particular vehicle;

25  however, the testimony conflicts with that.

1    Ultimately, the defendant was arrested and did
2    indicate that he had on him heroin -- or excuse me, a
3    Honda he had on him heroin, the cocaine packaging
4    materials and marijuana, and again, to reference that
5    particular red Honda has no impact on the guideline
6    range and therefore that objection is also overruled.
7            The defendant objects to Paragraphs 60, 61,
8    62, 63 and 67 regarding the murders of Luis Garcia
9    Pizarro, Walter Russ, Caesar Lopez.  Luis Garcia
10   Pizarro was killed on January 20 of 2016 by Victor
11   Nunez and Obed Torres Garcia.  As previously
12   indicated, Mr. Luis Garcia was killed in error.  It
13   was supposed to be the brother that was killed in that
14   particular case.
15           Walter Ross was killed by Jonathan Cruz
16   Carmona during the course of this conspiracy, and the
17   testimony indicates that Xavier Torres killed Cesar
18   Antonio Lopez through the testimony of Roberto
19   Figueroa and as previously indicated as well Jonathan
20   Gonzalez.  This was all a conspiracy and the homicides
21   during the course of conspiracy in furtherance of the
22   conspiracy are acts that can be considered against all
23   the co-conspirators, and therefore, that objection is
24   also overruled.
25           The defense objects to Paragraphs 64 and 66

1    challenging again the murder -- reference to the

2    murder of Jonathan Gonzalez or Flacco.  Once again,

3    based upon the testimony of Mr. Nunez, Mr. Gonzalez

4    was shot by him on June 6 of 2016, shot nine times in

5    the head, back, shoulder, buttocks and also appears he

6    was shot in the finger when he attempted to defend

7    himself as well.  Mr. Nunez did plead guilty and

8    admitted that particular murder and also testified at

9    the hearing before this Court regarding the murder

10   cross reference pursuant to guideline 2D1.1.

11   Therefore, that objection's also overruled.

12          The defendant objects to Paragraphs 68, 69,

13   70, 71, 72 and 73 regarding alleged statements made by

14   the defendant, Xavier Torres, to law enforcement;

15   specifically a statement alleged that the defendant

16   made -- that Carlos Javier Figueroa was trying to have

17   him murdered.  The defendant does now deny that

18   particular statement; however, there is evidence in

19   the record regarding the underlying criminal complaint

20   and other documents that support that alleged

21   statement of the defendant, Torres, and therefore,

22   that objection is also overruled.

23          The defendant objects to Paragraphs 74, 75,

24   76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88,

25   89, 90, 91, 92, 93, 94, 95, 96, 97, 98 and 99.  All

1    those references by the probation department in its
2    summary to the Court is information that is derived
3    from trial testimony oftenly quoted direct testimony
4    from the particular witness.  The jury did examine all
5    this testimony, ultimately found the defendant guilty
6    beyond a reasonable doubt.  Therefore, the objection
7    to those paragraphs 74 through and including 99 is
8    also denied.
9           Defendant objects to Paragraphs 104, 105 and
10   106 which is simply a summary of the information
11   provided to the Court.  Based upon the prior rulings,
12   that objection is also overruled.  The defendant
13   objects to the guidelines Paragraphs 112, 117, 120,
14   144 and 145 objects specifically to the determination
15   that the base offense level's 43.  Based upon the
16   applicability of guideline 2 D 1.1D1 that indicates if
17   a victim is killed under circumstances constituting
18   murder that that should be considered.
19          As I stated a number of times now on June 6
20   of 2016, Flacco or Jonathan Gonzalez was killed by
21   Victor Nunez, shot nine times at the direction of the
22   major player of this conspiracy Carlos Javier
23   Figueroa.  That homicide was committed during and in
24   furtherance of the conspiracy.  There's clearly proof
25   by a preponderance of the evidence that the defendant

1    and Nunez lured Jonathan Gonzalez to Buffalo with the

2    intent to kill him, and therefore, the appropriate

3    base level pursuant to 2A1.1A is Level 43 and that is

4    the appropriate guideline base level.  The objection

5    is also overruled.  Anything further on the

6    objections?

7              MR. VERRILLO:  Judge, I did include with my

8    summary testimony from Axel Camacho on the Gargolo

9    shooting which she referred to Dommy being involved in

10   the shooting.  So I just wanted to note that I did

11   attach that to my original statement of sentencing

12   objections.

13             THE COURT:  Okay.  Yes.  I'll read note of

14   it and it's part of the record.  Anything further, Mr.

15   Marangola?

16             MR. MARANGOLA:  No.  Thank you, Your Honor.

17             THE COURT:  Okay.  With those rulings, I

18   believe we're ready to proceed.  The Government have a

19   statement to make?

20             MR. MARANGOLA:  Yes.  Thank you, Judge.

21   Your Honor, I'll be brief.  The Court sat through two

22   trials in which a tremendous amount of detail was put

23   forth describing this organization.  The defendant,

24   Xavier Torres, he was a participant in this large

25   scale cocaine and heroin trafficking operation.  They

1    used fear, intimidation, guns and violence to succeed.

2    They did that to sell a lot of drugs, and this

3    defendant's role was one of those violent enforcers

4    that allow and enable these drug trafficking

5    organizations to succeed.  And his violence went to

6    the highest level and included murder.

7              This defendant is a former Latin King

8    member.  He's been to federal prison already for

9    heroin trafficking and he returned to that same

10   activity.  I would ask that the sentence that the

11   Court imposes gives justice to the people in that

12   Burbank Street area who were victims and held hostage

13   in that community while these men poisoned this

14   community.

15             It gives justice to the victims who ingested

16   that poison themselves and finally to John Gonzalez

17   and his family for the defendant's involvement in

18   orchestrating and perpetuating murder in general and

19   specifically the murder of John Gonzalez on June 6,

20   2016.  Unless the Court has any questions for me, I

21   thank you.

22             THE COURT:  Thank you, Mr. Marangola.  Mr.

23   Verrillo?

24             MR. VERRILLO:  Judge, Mr. Torres, Xavier

25   Torres is 37 years old.  He has three children and he

1    also has one grandchild.  We had submitted some

2    letters from the daughter, the niece and the sister

3    which talk about their relationship and what he has

4    represented to them, the significance of that.

5            His history included being raised by his

6    mother primarily with limited contact with his father.

7    He primarily resided in Buffalo.  He did live in the

8    area for a period of time.  We would submit he return

9    to Buffalo in November of 2015.  He has a history of

10   drug usage which he would obviously benefit from some

11   substance abuse counseling.

12           The issue of sentencing as the Court knows

13   is up to its discretion, has full power, has the

14   guidelines are advisory.  I did want to cite the cross

15   reference of US versus Cordoba-Murgas 233 F.3D 704

16   Second Circuit 2000 when you have a case where there's

17   a substantial increase obviously from the guidelines.

18   It was just a drug issue to this enhancement.  I think

19   it's a nine point -- nine level difference and I'd ask

20   the Court to consider the significance of that.

21           It's our position, continues to be that

22   there were substantial doubts as to the Government's

23   case related to the Gonzalez matter because of the

24   issues we've raised about Nunez, but the Court has

25   discretion regardless as to how it will sentence, and

1    the history that Mr. Torres has as I understand it the

2    criminal convictions did not involve any prior claims

3    of shooting or prior violent crimes.

4         A life sentence is very harsh and I know the

5    Court has the power to do that.  It's a very harsh

6    sentence, and Mr. Torres during this whole proceeding

7    has been respectful of the Court and has not been a

8    problem in the Court.  I want the Court to note that.

9    The minimum sentences that are available are

10   significant.

11        I'd ask the Court to consider that for both

12   counts and I'd ask the Court to recommend substance

13   abuse programs for Mr. Torres.  I'd also ask that he

14   be placed as close to Lancaster, Pennsylvania as

15   possible.  His sister is here in the courtroom today

16   and she would like to have continued contact with him.

17   So those are our requests of the Court.

18        THE COURT:  Thank you very much.  Mr.

19   Torres, would you like to say anything?

20        MR. TORRES:  No, Your Honor.

21        THE COURT:  Nothing?  In this matter, the

22   defendant, Xavier Torres, was convicted after a jury

23   trial of conspiracy to possess with intent to

24   distribute cocaine and the second count of possession,

25   brandishing and discharging firearms in furtherance of

1    a drug trafficking crime.  He's been in custody

2    approximately 37 months and 10 days.  He's 37 years of

3    age, has no high school degree or GED, is a United

4    States citizen.  This involves a conspiracy that was

5    conducted between 2015 and January 29 of 2018, a

6    conspiracy to possess with intent to distribute

7    cocaine along with other substances and also the use,

8    possession, brandishing and discharging firearms in

9    furtherance of a drug trafficking crime.

10            The defendant was previously convicted in

11    this very court May 13, 2009 of a conspiracy to

12    possess with intent to distribute heroin.  Carlos

13    Javier Figueroa was the leader of a violent, large

14    sale, sophisticated drug conspiracy.  He ran a drug

15    trafficking organization in the City of Rochester in

16    multiple locations.  It involved the distribution of

17    multiple kilos of cocaine and other substances that

18    arrived from Puerto Rico to the Rochester area.

19            The investigation involved wire taps,

20    surveillances and cameras in various locations, search

21    warrants, and the use of confidential informants.

22    That information indicated that the organization

23    operated multiple locations throughout the City of

24    Rochester to package and distribute controlled

25    substances particularly from the Clinton Burbank area

1    in the City of Rochester.

2            The defendant Xavier Torres as part of that

3    organization to play a key role in that organization.

4    He was arrested initially on February 6 of 2016 in the

5    area of Clinton and Burbank Street where heroin,

6    cocaine and marijuana were discovered.  The defendant

7    did run from that particular location when confronted

8    with law enforcement and was ultimately secured.

9    Heroin and cocaine were found on his person as well.

10           There were multiple controlled lies related

11   directly to this defendant specifically June 12, 2015,

12   July 21, 2015, July 30, 2015 in the area of Burbank

13   Street that involved both heroin and cocaine.  As

14   referred to earlier, Victor Nunez did testify that he

15   was involved in a homicide in January of 2016 with

16   Obed Torres Garcia where they killed Luis Garcia in

17   error when they were supposed to kill his brother.

18   There was testimony that March 31, 2016 Xavier Torres

19   killed Caesar Lopez.  Mr. Lopez was shot some 11

20   times.

21           In the testimony to the hearing, Mr. Nunez

22   indicated that on June 6 of 2016, Mr. Nunez and Mr.

23   Torres did lure Jonathan Gonzalez, Flacco, another

24   individual involved in conspiracy to Buffalo, New York

25   with the intent to kill him, did lure him to that

1   location to an alley way in the City of Buffalo and
2   shot him some nine times.
3          Another homicide during the course of
4   conspiracy was September 12, 2016 which the defendant
5   Cruz Carmona Garcia killed Walter Ross at the corner
6   of Clinton and Burbank Street again at the direction
7   of Carlos Javier Figueroa based upon the fact that Mr.
8   Ross was selling controlled substances in an area that
9   Carlos Garcia -- or Carlos Figueroa considered to be
10  his territory.  Testimony is that the defendant did
11  upon arrest give a statement to the law enforcement
12  admitting that this organization was distributing
13  approximately a kilo of heroin on a weekly basis.
14         There's also extensive testimony during the
15  trial of Mr. Xavier Torres regarding his involvement
16  in this organization.  Although it appears he was gone
17  for some period of time, all the acts that were just
18  referred to were all in furtherance of the conspiracy
19  and during the course of the conspiracy, and
20  therefore, the defendant is responsible for those acts
21  of the could conspirators.
22         This case involved a number of
23  co-conspirators including Carlos Javier Figueroa who
24  was recently sentenced to two life terms plus 25 years
25  consecutive, Laysha Ponce de Leon who was a mistress

1    of Carlos Figueroa sentenced to 168 months

2    imprisonment, Roberto Figueroa who testified in the

3    trial of Carlos Figueroa and is yet to be sentenced,

4    Jonathan Cruz Carmona who did murder Walter Ross

5    sentenced to 300 months imprisonment, John Carlos

6    Pizarro was sentenced to 168 months imprisonment, Obed

7    Torres Garcia was sentenced to 255 months

8    imprisonment, Victor Nunez has yet to be sentenced

9    along with Orlando Yelder.

10             Jose Justamino Rodriguez was sentenced to

11   one year and one day.  Joshua Figueroa to a probation

12   sentence, Freddy Silva to 57 months and Felix Figueroa

13   to 96 months.  A number of people involved and the

14   magnitude of those sentences speaks volumes about the

15   sophistication and the extent of this drug trafficking

16   organization.

17             Regarding the first count, the conspiracy to

18   possess with intent to distribute cocaine, the Court

19   finds that the base offense level should be 43 based

20   upon the guideline 2D1.1, and based upon if a victim

21   was killed under circumstances that constitute murder

22   during in furtherance of conspiracy that that is the

23   proper guideline range.  Based upon the finding of the

24   Court that the defendant was involved in the homicide

25   of Jonathan Gonzalez, that is the appropriate base

 1    level for this charge.  There was no reduction for
 2    accepting responsibility.
 3          The defendant has made it clear that he
 4    accepts no responsibility for any of the acts involved
 5    in this conspiracy.  His sentencing statement
 6    indicates he maintains he's innocent and challenges
 7    the facts alleged and denies involvement in any of the
 8    homicides, denies even that he made a statement to law
 9    enforcement, although the statement made to law
10    enforcement appears to be in his interest in that he
11    made a statement to law enforcement believing that
12    Carlos Javier Figueroa intended to have him murdered
13    as well.  He disputes the calculation of the base
14    offense level of the Court as well.
15          The defendant's criminal history category is
16    a level three.  He has a 2001 youthful offender
17    adjudication of controlled substance 7th degree,
18    disorderly conduct in 2002, 2002 conviction for
19    criminal possession of a firearm in the third degree,
20    again a youthful offender adjudication.  The defendant
21    was sentenced to probation and violated the conditions
22    of probation.  2004 disorderly conduct, 2006
23    unauthorized use of a motor vehicle, 2007 attempted
24    criminal possession of a controlled substance in the
25    7th degree, 2009 conviction before this Court, the

1    Western District of New York and Buffalo for

2    conspiracy to possess and intent to distribute heroin.

3    2010 escape charge for failure to attend a treatment

4    program.  2015 criminal possession of a controlled

5    substance 7th degree.  2016 criminal possession

6    controlled substance 7th degree and 2017 attempted

7    criminal possession of a controlled substance in the

8    7th degree.

9           The defendant is 37 years of age, was born

10   in Puerto Rico.  His father had a criminal history as

11   well.  His mother is on social security disability.

12   It appears his father was an alcoholic and did

13   physically assault his children including at one point

14   breaking the arm of the defendant's sister, threw a TV

15   at her at one point.  The defendant's unmarried, has

16   three children 20, 10 and 8, is in good physical

17   health.

18          Any mental health issues are related to

19   depression and stress primarily based upon the charges

20   that have been placed against him.  The defendant's

21   consumed alcohol since the age of 14, marijuana since

22   the age of 14, cocaine since the age of 15, heroin at

23   the age of 34.  He attended the 9th grade at Grover

24   Cleveland High School, dropped out for the streets and

25   did work at some point for a candy company.

1           Mr. Torres, the Court has to consider a
2   number of factors determining the appropriate sentence
3   here including the seriousness of the offense.  As I
4   just went through this articulates of the facts in
5   this case and the testimony the Court heard this was a
6   very sophisticated and violent long term organization.
7   It was callus in its concern for human life.  You were
8   a key component of that conspiracy.  You were involved
9   in those homicides.
10          Your involvement could only be characterized
11  as violent, brutal and callous.  You had a chance to
12  turn things around back in 2009, some 13 years ago
13  now, when you were sentenced in this court, but
14  instead you decided to maintain your involvement in a
15  sophisticated drug conspiracy.  That was your
16  decision.  I don't know what you thought the end game
17  here was, but as you can see, the end game usually
18  involves death.  Members of the conspiracy being
19  killed as you believe that Carlos Javier Figueroa at
20  one point may have intended to have you murdered and
21  then you got involved in the homicide of other
22  individuals.
23          You showed absolutely no responsibility for
24  any of your actions involving drug trafficking or the
25  violent acts that you carried out.  You showed no

1    remorse for your actions whatsoever.  You apparently

2    learned nothing from your prior convictions.

3            Based upon all of that, the Court has

4    considered the seriousness of the offense and your

5    background and character, your involvement in a number

6    of criminal activities, your alleged involvement with

7    the Latin Kings in the Buffalo area with this drug

8    conspiracy with a number of homicides.  The Court has

9    to impose a sentence that reflects the seriousness of

10   those offenses and promotes respect for the law and

11   deters you and others from engaging in this type of

12   activity in the future.

13           I agree with Mr. Verrillo, a life sentence

14   is a very tough sentence; however, you've earned that

15   sentence by your actions, by your callousness, by your

16   total inability to accept any responsibility for your

17   actions.  You are much too dangerous to live on the

18   streets of this community.  Therefore, the Court finds

19   on the first count of conspiracy to possess with

20   intent to distribute cocaine that the defendant,

21   Xavier Torres, be sentenced to life imprisonment.  On

22   count two, the charge of possessing, brandishing and

23   discharging firearms in furtherance of drug

24   trafficking crime, the Court finds that a sentence of

25   20 years consecutive to the life term is appropriate.

1           Again, the discharge of firearms in this

2    case involved a number of homicides as well, and

3    therefore, that is an appropriate sentence.  In the

4    intent of the Court in imposing such a significant

5    sentencing consecutive to the life sentence is with

6    the intent that you never be released from prison.

7    That's to be followed by a period of ten years of

8    supervised release on count one and five years

9    concurrent on count two with a number of conditions

10   that if you are released that you not violate any

11   federal, state or local laws, that you prohibit from

12   possessing firearm, ammunition or dangerous device,

13   shall not possess a controlled substance unless

14   prescribed by a physician, must submit to drug testing

15   based upon the history here of use of controlled

16   substances illegally.

17           You must cooperate in the collection of a

18   DNA sample, must participate in a program for

19   substance abuse including substance abuse testing such

20   as urinalysis and other testing, undergo a drug and

21   alcohol evaluation and treatment.  If substance abuse

22   is indicated by the testing, probation will supervisor

23   the details of the testing and treatment including the

24   selection of the treatment, provider and the schedule.

25           If inpatient is recommended, it must be

1    approved by the Court unless the defendant consents.

2    He's not to leave treatment until completion or as

3    ordered by the Court.  While in treatment and after

4    discharge from treatment he is to abstain from the use

5    of alcohol and must contribute to the cost of services

6    rendered.  Shall submit to a search of his person,

7    property, vehicle and residence upon reasonable

8    suspicion and permit confiscation of any evidence or

9    contraband discovered.  Shall notify probation of any

10   opiate based pain medication prescribed before the

11   prescription is filled, shall provide probation with

12   access to any request of personal or business

13   financial information.  Probation is authorized to

14   release presentence and post sentence financial

15   information submitted by the defendant to the United

16   States Attorney's Office for the collection of any

17   unpaid financial obligations including fines,

18   assessments for restitution.  I don't believe there's

19   any request for restitution; is that correct.

20          MR. MARANGOLA:  Correct, Your Honor.

21          THE COURT:  Okay.  The Court does impose a

22   fine of $2,500 on count one.  Any interest on the fine

23   is waived.  While incarcerated, if the defendant is

24   non UNICOR or UNICOR grade five, shall pay

25   installments of $25 per quarter.  If it's not agreed

1    to one through four in UNICOR, shall pay installments

2    of 50% of his monthly pay as an inmate.  While on

3    supervision, shall make monthly payments at the rate

4    of 10% of his monthly gross income.  The defendant

5    shall pay a special assessment of $100 on each of the

6    counts, one and two, for a total of $200 shall be due

7    immediately and can be made to the Bureau of Prisons

8    financial responsibility program.

9          The Court will recommend the defendant serve

10   in a facility close to Lancaster, Pennsylvania should

11   he have the availability of his family and also that

12   if there's any drug treatment programs available while

13   he's in custody to be able to participate in those

14   programs.  Anything further from probation?

15         MS. FISH:  Judge, just to clarify, does the

16   Court wish to order the statutory language under

17   18USC3664N.

18         THE COURT:  Yes.  That is specifically if

19   the defendant -- well, there's no restitution.  There

20   is a fine.  Based upon the fact the defendant is

21   obligated to pay a fine, if he receives resources from

22   any source including inheritances, settlement,

23   insurance, lawsuits or other judgments during a period

24   of incarceration shall be required to apply the value

25   of such resources to any outstanding restitution or

30

1    fine.  In addition, the defendant shall forfeit his
2    interest in one Ruger pistol, serial number 33213800.
3    Anything further from probation?
4              MS. FISH:  No, Judge.  Thank you.
5              THE COURT:  Are there any counts to be
6    dismissed, Mr. Marangola?
7              MR. MARANGOLA:  No, Your Honor.
8              THE COURT:  Anything further from the
9    government?
10              MR. MARANGOLA:  No, thank you.
11              THE COURT:  Mr. Verrillo?
12              MR. VERRILLO:  No, Judge.
13              THE COURT:  Mr. Torres, I do notify you of
14    your right to appeal in this case, and your attorney
15    has filed numerous motions, proceedings and objections
16    to the sentencing.  All of those obviously preserve
17    your right to any of those issues upon appeal as I
18    notify you of that and to stay in contact with your
19    attorney regarding a finding or a notice of appeal if
20    that is your request.  Thank you.
21              MR. MARANGOLA:  Thank you, Your Honor.
22              (Proceeding concluded at 10:59 a.m.)
23
24
25

31

1 **CERTIFICATE OF COURT REPORTER**

2

3          I certify that this is a true and accurate

4 record of proceedings in the United States District

5 Court for the Western District of New York before the

6 Honorable Frank P. Geraci Jr., on May 19, 2022.

7

8 S/ Brandi A. Wilkins

9 Brandi A. Wilkins

10 Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25