1                   UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3

4

5  - - - - - - - - - - - - -X
   UNITED STATES OF AMERICA            18-CR-6094(G)
6
   vs.
7                                      Rochester, New York
   XAVIER TORRES,                      February 24, 2021
8            Defendant.                3:11 p.m.
   - - - - - - - - - - - - -X
9

10                     TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE FRANK P. GERACI, JR.
11                 UNITED STATES DISTRICT JUDGE

12
                      JAMES P. KENNEDY, JR., ESQ.
13                    United States Attorney
                      BY: ROBERT A. MARANGOLA, ESQ.
14                        CASSIE M. KOCHER, ESQ.
                      Assistant United States Attorneys
15                    500 Federal Building
                      Rochester, New York 14614
16                    Appearing on behalf of the United States

17
                      MAURICE J. VERRILLO, ESQ.
18                    3300 Monroe Avenue
                      Suite 301
19                    Rochester, New York 14618
                      Appearing on behalf of the Defendant
20

21

22

23  COURT REPORTER:      Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
                         Christimacri50@gmail.com
24                    Kenneth B. Keating Federal Building
                      100 State Street, Room 2640
25                    Rochester, New York 14614

<u>**P R O C E E D I N G S**</u>

\*   \*   \*

1   
2   
3     (**WHEREUPON**, the defendant is present).

4     **THE CLERK:** This is 18-CR-6094, U.S. vs. Xavier

03:11:51PM 5 Torres.

6     Rob Marangola and Cassie Kocher are here for the

7 Government.

8     Maurice Verrillo is here for defendant.

9     We're here today for a pretrial conference status.

03:12:04PM 10     **THE COURT:** Good afternoon.

11     **MR. VERRILLO:** Good afternoon, Your Honor.

12     **THE COURT:** Are you Xavier Torres?

13     **THE DEFENDANT:** Yes, sir.

14     **THE COURT:** Appear with your attorney Mr. Verrillo?

03:12:10PM 15     **THE DEFENDANT:** Yes, sir.

16     **THE COURT:** This matter's on just to go over a few

17 issues.  I'm not sure we'll be able to resolve all of them,

18 but just to kind of get everybody on the same page regarding

19 this matter.

03:12:24PM 20     I want to be clear, Mr. Verrillo, you indicated you

21 noticed one witness, Mr. Molloy; is that right?

22     **MR. VERRILLO:** Yes, Judge.

23     **THE COURT:** And a few exhibits as well?

24     **MR. VERRILLO:** Yes.  They really were more for

03:12:38PM 25 impeachment.  I did disclose them.  Not a lot of documents.

1          THE COURT: You also did submit some jury

2  instructions and you raised an objection to a *Pinkerton*

3  charge?

4          MR. VERRILLO: Yes.

03:12:48PM 5          THE COURT: Okay.  Obviously we're going to deal

6  with that down the line, but --

7          MR. VERRILLO: Yes.

8          THE COURT: -- it's the nature of a conspiracy

9  charge as you know.

03:12:55PM 10          MR. VERRILLO: I raised it, Your Honor.

11          THE COURT: We'll wait to see what the proof is.

12  More than likely I expect that I'll be charging *Pinkerton*,

13  which makes Mr. Torres liable for a number of acts during the

14  course of the conspiracy if the jury follows that.

03:13:11PM 15          Mr. Torres does not need an interpreter; is that

16  right?

17          MR. VERRILLO: That's correct.

18          THE COURT: Okay.  And you did indicate that you

19  would agree to stipulations?

03:13:20PM 20          MR. VERRILLO: Well, obviously for all the --

21  there's multiple attorneys.  I would agree, yes, based on -- I

22  know it had listed all the attorneys and defendants, but yes,

23  I didn't have objection to it.

24          THE COURT: All right.  That includes various

03:13:33PM 25  business records, expert witness issues, and medical examiner

1  reports; is that correct?

2          **MR. VERRILLO:** As I understood it, it was the

3  foundational items.

4          **THE COURT:**  Yes, yes, I'm sure that's what it is.

03:13:47PM 5          **MR. VERRILLO:** Yeah, that was what I understood.

6          **THE COURT:** Okay.  And you have received those

7  already for review?

8          **MR. VERRILLO:** We just received some further -- I

9  mean I had received -- I had received some reports, but I'm

03:13:59PM10  not sure whether there's further stuff in the *Jencks*

11  materials.  We've gotten some portion recently.

12          **THE COURT:** No.  I'm talking stipulations.

13          **MR. VERRILLO:** Stipulation, yes, yes, everything

14  related to that, yes.

03:14:09PM15          **THE COURT:** All right, good.

16          At some point we may have to prepare a special

17  verdict sheet as well based upon the amount of the narcotics

18  in this case for the jury to make a determination on that.

19          You also brought a motion related to the 404(b)

03:14:29PM20  evidence, specifically the previous drug experience with the

21  defendant's prior conviction.

22          **MR. VERRILLO:** Right.

23          **THE COURT:** Do you want to be heard on that?

24          **MR. VERRILLO:** Well, I just wanted noted with the

03:14:45PM25  jury charge too, Your Honor, I did also indicate -- I gave

1    some limiting instructions on the nickname and any bad acts if

2    the Court allows that.  So I did include that as well.

3              Well, Judge, I have cited as much as I can based on

4    the Government's trial memorandum the issue of the 404(b) and

03:15:07PM 5    it looked like it was a conditional statement when they

6    submitted it, but I do have concern about any prior alleged

7    bad acts.

8              My client was convicted, did plead guilty to a

9    conspiracy with intent to distribute heroin up in Buffalo and

03:15:23PM 10   I think the time period was 2006, 2007.  There was a

11   conviction; obviously he was convicted of that, he pled

12   guilty.

13             This conspiracy, alleged conspiracy goes from 2015

14   I think to January of '18.  So I don't see any connection in

03:15:40PM 15   terms of any intrinsic evidence issue from what I understand.

16             And we have concerns, as I cited with *Huddleston*

17   and the other cases, the elements that are required.  So I

18   would object to the use of the prior conviction for 404(b)

19   evidence.

03:15:58PM 20            I'd object to this general area, but again, I'm at

21   a disadvantage because I don't have full disclosure of

22   whatever *Jencks* material they're going to have.

23             **THE COURT:** Okay.  But I think the proffer is that

24   there may be evidence regarding Mr. Torres' involvement in

03:16:14PM 25   drug sales or possession not necessarily within just the scope

1    of the conspiracy, but beyond that; and possibly witnesses

2    testifying as to that, how do they know him through this

3    various conduct.

4            Is that basically, Mr. Marangola, what you're

03:16:34PM  5    proffering?

6            **MR. MARANGOLA:** Judge, the prior 404(b) conviction

7    is based on the defendant -- and this was in my pretrial

8    memorandum that we filed back in October providing notice to

9    the defense.  It's the -- he pled guilty to the same charge

03:16:52PM 10    that he's on trial for, conspiracy to distribute heroin; and

11    it involved his direct sales of heroin, which is the same

12    conduct here, that's the case here, to other individuals in

13    Buffalo -- the City of Buffalo; and it also involved him using

14    his phone to do that.

03:17:11PM 15            So the Government initially just provided notice

16    indicating that it wouldn't intend to offer it in its direct

17    case unless and until the defendant raised a issue that it

18    will be relevant to, namely, intent or knowledge or one of the

19    permissible purposes under 404(b).

03:17:33PM 20            Well, I would submit to the Court actually that

21    based on his requested charge that he submitted, I don't know,

22    maybe a week or so ago, specifically indicating a request for

23    the mere presence or mere association charge, and based on my

24    conversations with Mr. Verrillo and his client, I would submit

03:17:59PM 25    to the Court that the nature of the 404(b) is now going to be

1  squarely an issue.  And in that sense, let me explain.

2         Once a defendant has indicated his knowledge or his

3  intent -- and I think here intent will be the issue -- his

4  intent to participate in this conspiracy, then prior

03:18:27PM 5  narcotics-related activity can be considered under 404(b) as

6  to evidence of his intent.

7         And based on my conversations with the defendant

8  and counsel, it appears that the thrust of his position is

9  that he was engaged in individual sales, but he had no intent

03:18:54PM10  to participate in a conspiracy.

11         He may have been present, merely present as he's

12  requested that charge be given, present in the Burbank area or

13  other locations, but that by itself doesn't show intent to

14  join the conspiracy.

03:19:11PM15         Or he may have had mere knowledge that others were

16  engaged in the conspiracy, but that mere knowledge by itself

17  doesn't show that he's participated in the conspiracy.

18         And by placing his knowledge of the conspiracy and

19  his intent to join it squarely at issue in the trial, now the

03:19:36PM20  404(b) becomes highly probative; and a prior conviction for

21  conspiracy to distribute heroin which involved him making

22  direct heroin sales becomes directly relevant to whether he

23  also intended to join a conspiracy to distribute heroin here.

24         This is not -- we're not saying this is the same

03:19:56PM25  conspiracy or the same individuals or the same location.  If

1  it were, it would be the same crime.

2          This is evidence of a prior crime that the jury

3  under 404(b) and those limited purposes strictly, we would

4  be -- it would be knowledge and his intent to join the

03:20:14PM 5  conspiracy charged here that the jury would be allowed to

6  consider that for.

7          And that would be our request.  And they would be

8  given, you know, a limiting instruction they're not to

9  consider it as evidence of any criminal propensity on the

03:20:27PM 10  defendant or any bad character on the defendant.

11          But to the extent he raises his intent to

12  participate in the charged conspiracy, then his prior

13  participation in a heroin trafficking conspiracy should be

14  permitted.

03:20:46PM 15          And there's -- I have some cases I can provide to

16  the Court where a defendant claims that he was merely present,

17  introducing a prior crime -- I'm sorry, introducing a prior

18  crime to prove knowledge and intent presents a, quote, classic

19  case of similar act evidence.  That's *United States vs.*

03:21:15PM 20  *DeFillipo*, 590 F.2d 1228 at 1240.  That's a Second Circuit

21  case out of 1979.

22          And that's citing *United States vs. Bruno* where it

23  held the Government was entitled to prove the defendant's

24  intent to distribute narcotics pursuant to Federal Rule 404(b)

03:21:37PM 25  because he had placed his intent in issue by claiming he was

1    merely present during the drug transaction.

2              Other quotes from Second Circuit cases include

3    whereas here the defendant does not contest that he was

4    present during a narcotics transaction, but denies any

03:21:53PM 5    wrongdoing, the use of defendant's prior narcotics

6    transactions is proper.  Evidence of prior narcotics crimes is

7    admissible where the intent to participate in a conspiracy is

8    at issue.

9              And in terms of *Huddleston*, I think *Huddleston*

03:22:12PM 10   talks about the prejudice in receiving 404(b) evidence.  And

11   here where the evidence of the prior crime is no -- is

12   certainly not inflammatory.  It's no more -- it's not of a

13   more serious crime, it's not of a more heinous nature.  It's

14   identical.  The jury in this case is going to hear far more

03:22:34PM 15   worse crimes of this defendant than simply selling heroin.

16             So I don't think in terms of the prejudice versus

17   the probative scale that any prejudice is outweighed at all by

18   the probative nature of this type of evidence on his intent

19   and his knowledge to participate in the charged conspiracy

03:22:51PM 20   here.

21             So that's my proffer with respect to the 404(b).

22             **THE COURT:**  Okay, I do have your initial memorandum

23   on that which was really pretty straightforward, but

24   simplified.  Are you going to respond in writing to

03:23:10PM 25   Mr. Verrillo's memorandum that he filed?

1          **MR. MARANGOLA:** I can Judge, sure.

2          **THE COURT:** I think that would be helpful.  So I

3  don't have to decide that issue today, but it's obviously a

4  significant issue.

03:23:19PM 5          **MR. MARANGOLA:** I'm happy to respond.  Thank you.

6          **THE COURT:** Thank you.

7          As you know, Mr. Verrillo, one of the defendants

8  did enter a plea to this charge.  So we're down to the two

9  defendants at this point.  Have there been any discussions

03:23:38PM 10  regarding a resolution of this case?

11          **MR. VERRILLO:** Yes.  We had a meeting after -- or on

12  the date, I think, whenever we had our last court date and

13  I've talked to my client a number of times about this issue

14  and I don't see any resolution.

03:23:49PM 15          I mean, we made attempts to see, but there's no

16  resolution.  I've advised my client of the charges and

17  obviously the Government has expressed their opinion, but

18  there's no resolution of this case.

19          **THE COURT:** Okay.  And he understands the exposure

03:24:03PM 20  he has?

21          You understand the exposure you have, Mr. Torres?

22          **THE DEFENDANT:** Yes, Your Honor.

23          **THE COURT:** Do you want to explain it on the record,

24  Mr. Marangola?

03:24:09PM 25          **MR. MARANGOLA:** Judge, I had offered to have a

1  meeting with Mr. Verrillo and Mr. Torres, I don't know, maybe

2  a week or so ago, it was after our last court appearance.  And

3  I approached them about whether or not there was something

4  they were interested in trying to resolve the matter.

03:24:31PM 5         Essentially the thrust, as I indicated the defense

6  position was, he may have engaged in narcotics sales, but he

7  was not a member of the conspiracy and didn't feel that he'd

8  be held accountable or that he should be held accountable for

9  crimes of other individuals that were committed during the

03:24:50PM 10  same time.

11         And I explained to him that the Government was

12  going to offer evidence of his participation in this

13  conspiracy.  It was going to be in the form of, you know, I

14  think we had -- I want to say close to half dozen different

03:25:04PM 15  cooperating witnesses testify in the grand jury about his

16  involvement in this conspiracy.

17         And that that included him acting as a runner for

18  this conspiracy; him providing drugs to drug sellers; him

19  collecting money from drug sellers; him bagging and packaging

03:25:24PM 20  up drugs in connection with this; as well as other activities

21  in furtherance of this conspiracy not directly related to --

22  not directly drug sales, but committing acts of violence in

23  furtherance of this conspiracy, including beating up

24  individuals; possessing firearms and other activities. That's

03:25:49PM 25  just cooperator testimony.

1          There's also going to be testimony the defendant's

2      arrests in the area of this conspiracy to distribute heroin

3      and cocaine on Burbank Street.  Those arrests occurred during

4      the conspiracy; they occurred at locations relevant to the

03:26:08PM 5  conspiracy on Burbank Street; they included quantities of

6      heroin, quantities of cocaine.

7          So there's going to be co-conspirator testimony;

8      there's going to be testimony about his arrest and

9      surveillance of him on Burbank Street and involved in drugs,

03:26:31PM10  drug trafficking there.

11         And then there's going to be evidence of his own

12     statements, statements he made to law enforcement when he

13     asked to have a meeting with law enforcement because he

14     believed his co-defendant, Carlos Figueroa, was trying to have

03:26:51PM15  him killed.

16         And at that meeting he provided details about his

17     participation in this drug selling operation; and detailed

18     information about other individuals and their role in this

19     drug trafficking organization; and the evidence is going to

03:27:11PM20  show that that information he provided was spot on.

21         He identified, for example, locations such as

22     899 Culver Road where members of this organization bagged up

23     drugs and stored drugs and kept firearms.  And there's going

24     to be testimony in this case that 899 Culver Road was, in

03:27:33PM25  fact, a location used for those purposes and there's actually

1    going to be testimony that a quantity of drugs was stolen out

2    of that location, and the jury's going to see that it was over

3    a kilogram of heroin that was stolen from that location.  And

4    they're going to see guns that had been stored at that

03:27:53PM 5    location on previous occasions.  So the -- and that's just a

6    portion of the case that we're going to put on.

7            There's going to be evidence of shootings and other

8    crimes that occurred as well as homicides during the charged

9    conspiracy.

03:28:11PM 10           And so I had just wanted to sit down with

11    Mr. Verrillo and Mr. Torres to kind of explain to them what --

12    how I anticipated the Government's proof coming in, and what I

13    anticipated the defendant's exposure being.

14           And if there was something he wanted to tell me

03:28:32PM 15    about what I may be missing or some more things I should

16    consider in deciding whether or not I should discuss a

17    potential resolution short of the 25 year mandatory minimum

18    that he's facing if he's convicted just of the narcotics

19    conspiracy and the discharge of a firearm in furtherance of a

03:28:52PM 20    drug trafficking crime.

21           That's a 15 year mandatory minimum because of that

22    prior federal heroin trafficking conspiracy conviction; plus

23    the 10 year mandatory minimum for discharge of a firearm

24    during and in furtherance of the drug trafficking conspiracy.

03:29:10PM 25           I just wanted him to understand that there was

1    going to be evidence of multiple shootings in this case that

2    were related to the drug trafficking conspiracy.

3          And I anticipated that there would be a charge

4    under *Pinkerton*, which is what I'm assuming sort of

03:29:30PM 5    precipitated that request to object to the *Pinkerton* charge,

6    but a jury would be instructed that to the extent that they

7    find that this defendant knowingly participated in a

8    conspiracy based on the cooperator testimony, the arrests, and

9    the statements he made, to the extent they find that, they're

03:29:52PM 10   also permitted to consider and hold him accountable for acts

11   that are reasonably foreseeable to him as a member of that

12   conspiracy that were committed in furtherance of the

13   conspiracy and during it.

14         So we had some conversation.  And then I think

03:30:13PM 15   the -- I don't think we were at any point of agreement, and

16   then I haven't heard anything from Mr. Verrillo since.  So

17   that's kind of where we're -- things stood in our last

18   conversation.

19         Mr. Verrillo can update if I'm not accurate about

03:30:32PM 20   any of it or if he wants to --

21         **THE COURT:** I assume the maximum sentence is life

22   imprisonment?

23         **MR. MARANGOLA:** Yes, I'm sorry.  The maximum

24   sentence under either of the firearms charge or the narcotics

03:30:41PM 25   conspiracy is life, yes.

1           **THE COURT:** Okay.  Mr. Verrillo, do you want to

2    respond at all to any of that?

3           **MR. VERRILLO:** Well, I've talked to my client a

4    number of times throughout my representation about the case

03:30:56PM 5    and he's been very adamant about his position.

6           And I'm talking -- not making any admissions, but

7    I'm just talking in terms of our discussion regarding plea

8    resolution that, yes, he had a drug habit, he did have a drug

9    problem, but he wasn't involved with Figueroa and wasn't using

03:31:14PM 10   weapons and wasn't harming anyone.

11          And that, in fact, when he went to the police in

12   April of 2017 he was concerned that they were -- Mr. Figueroa

13   was going to knock him off.  And his attorney at that time set

14   up a meeting and they had some discussions.  His focus was

03:31:32PM 15   talking about Figueroa and his view.  It doesn't mean that he

16   was admitting to anything by themselves.

17          So I discussed all these issues and he's been very

18   consistent, I would say, in his position that he hasn't been

19   involved in this conspiracy and wasn't -- hadn't shot anyone,

03:31:50PM 20   hadn't discharged anything.

21           And I've advised him in writing of the situation.

22   And there were some numbers mentioned in the -- in the meeting

23   about possible discussions and those numbers were not

24   agreeable.  So that's what I know as of now.

03:32:04PM 25          **THE COURT:** The whole point of this is, I just want

1   to be sure he understands.  Mr. Torres, I want to make sure

2   you understand your exposure here.

3            If, in fact, as Mr. Marangola indicated, you are

4   found by a jury beyond a reasonable doubt to be a member of

03:32:19PM 5   the conspiracy, you could also under the *Pinkerton* charge be

6   responsible for everything that happened, including all the

7   violent acts, any shootings, any discharge of firearms, and

8   homicides.

9            Do you understand that?

03:32:29PM 10            THE DEFENDANT: Yes, sir.

11            THE COURT: And that the mandatory minimum could be

12   25, and the maximum of life?

13            THE DEFENDANT: Yes, sir.

14            THE COURT: Okay.  How old are you?

03:32:35PM 15            THE DEFENDANT: 36.

16            THE COURT: How old?

17            THE DEFENDANT: 36.

18            THE COURT: 36?

19            THE DEFENDANT: Yes, sir.

03:32:38PM 20            THE COURT: All right.  Well, okay.  All right.

21            The last issue is the trial date.  The trial is

22   currently scheduled for March 15th.  And based upon the

23   situation in the community, the Court will be issuing a

24   general order today staying jury trials until April 23rd,

03:33:10PM 25   which means this trial cannot begin until April 26th.

1          And based upon that the Court has outlined a

2    schedule for the trial to be conducted between April 26th and

3    August 27th.  I've already made that representation to

4    Mr. Figueroa and his counsel, so they know that.

03:33:40PM 5          Based upon the situation, Mr. Verrillo, do you have

6    any objection to the matter beginning on April 26th?

7          **MR. VERRILLO:** As I said last time, Your Honor, I

8    understand -- my client understands, you know, the

9    circumstances.

03:33:52PM 10          **THE COURT:** And is he --

11          **MR. VERRILLO:** And we don't have an issue with that

12    obviously because of the concern that we have.  We obviously

13    want to have a full set of jurors available to fully

14    participate in the process.  And obviously with the health

03:34:05PM 15    issues that have occurred, we understand there may be need for

16    more time.

17          **THE COURT:** Okay.  Is he willing to waive speedy

18    trial between the March 15th and the April 26th date?

19          **MR. VERRILLO:** Yes.

03:34:16PM 20          **THE COURT:** Okay.  Based upon the fact that, as I

21    indicated, the Court intends to issue a general order staying

22    jury trials through April 23rd, and that's based upon the fact

23    that although the number of infections has decreased,

24    hospitalizations and intensive care bed use in this community,

03:34:37PM 25    we still have a significant problem with the Coronavirus, and

1   including a new concern over the last few weeks of a variant

2   to that virus which appears to be more contagious and more

3   deadly.

4          The concern as raised -- I think by Mr. Lembke last

03:34:55PM 5   week when we appeared here, and the Court joins that

6   concern -- is regarding the availability of jurors under that

7   situation.

8          Although we've taken a number of steps to protect

9   jurors, the attorneys, the parties, and the public here

03:35:15PM 10   through the use of plexiglas, social distancing, sanitizing

11   areas after the witness has used the witness box, for

12   instance, we still can't guarantee total safety.  And we want

13   to be as safe as possible.  With that additional six weeks we

14   get closer and closer to having a more safe proceeding.

03:35:42PM 15          And, therefore, based upon the fact the defendant

16   will also consent to the exclusion of time -- does the

17   Government consent as well?

18          **MR. MARANGOLA:** We do, Your Honor.

19          **THE COURT:** Based upon all those circumstances, the

03:35:52PM 20   Court finds that in the interest of justice the time should be

21   excluded between March 15th of 2021 and April 26th of 2021.

22          Now, Mr. Verrillo, I'm also going to provide you

23   with a schedule of the dates between April 26th and

24   August 27th.  We would expect to be in session between

03:36:18PM 25   8:30 a.m. and 1:30 p.m. on each of those days.

1         Those days could be extended based upon the

2    availability of witnesses and other circumstances, but we'll

3    try to follow that schedule.

4         And as you know, you tried the Montague case with

03:36:30PM 5    me, that seemed to work pretty well.  Concentrating on those

6    hours during the day over a long period of time gives the

7    attorneys an opportunity then in the afternoon to prepare for

8    the following day, gives the jurors a break without having a

9    long lunch break, which then just disrupts the flow of the

03:36:49PM 10   trial as well.

11         However, even saying that, this is a long period of

12    time, a lot of days here.  If in this schedule, Mr. Verrillo,

13    for some reason you think you can't be here on a particular

14    day, if you could just let the Court know that.

03:37:05PM 15         And I've said that to Mr. Marangola and Mr. Vacca

16    as well, we can always rearrange the schedule somewhat.  We've

17    got, I think, some leeway in there.

18         Obviously we will not be in session on the -- I

19    think there's two holidays throughout those months, Memorial

03:37:20PM 20   Day and the 4th of July, and we'll be able to accommodate

21    that.

22         The next issue is as part of the summoning of

23    jurors in this case we will be issuing three questionnaires.

24         One is my standard questionnaire as you're familiar

03:37:36PM 25   with.

1          The second one is a Covid questionnaire which

2    simply asks a few questions of the jurors regarding any

3    contact with the Coronavirus -- either themselves, family

4    member, or some concern about the Coronavirus that would

03:37:55PM 5    disqualify them for participation in this trial.

6          And then a third supplemental questionnaire, which

7    is not very long, but just simply details this charge in very

8    simplified terms, outlines the parties involved, the attorneys

9    involved, and more importantly the timeframe involved to

03:38:17PM 10   determine whether or not any jurors feel they could not serve

11   on this case for those reasons or any other reason.

12         These questionnaires will be sent out to the jurors

13   along with a witness list of the potential witnesses who are

14   primarily law enforcement.  I did not include any confidential

03:38:36PM 15   witnesses who have not been disclosed at this time.  And

16   encompasses about 118 individual names.

17         The indication to the jury would be that these are

18   either individuals who will testify, may testify, or they may

19   just hear their names during the course of the trial.  And if

03:38:53PM 20   they know them, to let you know that.

21         Once we receive a response to those questionnaires,

22   what I'd do is bring the parties in one week before the trial

23   on April 19th, and we would go through those questionnaires

24   that the Court determines are individuals that appear likely

03:39:15PM 25   to be excused and see whether or not the parties will consent

1    to those.

2          For example, somebody who is teaching summer school

3    and can't possibly be present during the months of July and

4    August; or somebody who is going to be on a cruise for two

03:39:29PM 5    months in July and won't be here; somebody who is connected --

6    somehow has some contact with the Coronavirus or some other

7    illness not available, bring that to the attention of the

8    parties.  If we get consent, we don't have to bother bringing

9    those particular jurors in.

03:39:44PM 10          We're going to be obviously subpoenaing hundreds

11    and hundreds of jurors for this trial, and if we can sift that

12    number down early on I think we'll be in much better shape.

13          So do you have any objection to that procedure,

14    Mr. Verrillo?

03:39:57PM 15          **MR. VERRILLO:** No, Your Honor.

16          **THE COURT:** So that would be conducted on April 19th

17    at 9 a.m.  And we'll just block out that day because as I

18    indicated, we could have hundreds of potential jurors that

19    might be asked to be excused.

03:40:17PM 20          Any other issues from the Government?

21          **MR. MARANGOLA:** Judge, I know the Court had brought

22    this -- the questionnaire up earlier at the appearance today

23    with Mr. Figueroa.  And in considering it, I did have a little

24    bit of a concern with respect to the -- in that third

03:40:38PM 25    questionnaire with respect to describing the case and the

1 | timeframe and the witnesses.

2 |         And given the fact that -- especially nowadays with

3 | the internet and social media, I think a large part of our

4 | potential jury pool may be inclined to see names and start

03:41:06PM 5 | searching them up, either defendants' names or other folks'

6 | names.

7 |         And I know at the takedown of this case, there was

8 | a police involved shooting that received quite a bit of media

9 | attention.  And I know normally when prospective jurors come

03:41:27PM 10 | into court they're told by the Court, they're given an

11 | instruction they're not to look up the case or research the

12 | case in any way.

13 |         And I'm a little concerned that without them

14 | actually having been told that by the Court, because the

03:41:42PM 15 | Court's not there when they're looking at this information,

16 | that we may end up getting jurors sort of just doing what they

17 | might normally do, see a name and Google it or search it on

18 | the internet, and end up finding out information, sort of

19 | creating some issues; or somebody in their house if they're

03:41:59PM 20 | sitting with a spouse or, you know, family member looking up

21 | the name or seeing the name and possibly creating some issues

22 | there.

23 |         **THE COURT:** Well, I think that can be alleviated by

24 | an instruction stating that specifically, that they're not to

03:42:14PM 25 | do any research.  The typical instruction I give regarding the

1   fact they cannot do any research regarding this matter on any

2   of the parties, any of the witnesses, any of the locations

3   involving this particular case, and cannot share any of this

4   information with any other individuals.

03:42:33PM 5         It would be no different than the jurors coming in

6   and my giving that information and going home that day and

7   issuing that.

8         **MR. MARANGOLA:** The Court's considering putting that

9   instruction on the questionnaire?

03:42:42PM 10        **THE COURT:** Yes, I think that's a very fair

11   suggestion, makes a lot of sense.

12        **MR. MARANGOLA:** Okay.  I mean, the only other thing

13   I was going to mention is, I mean, I think normally the

14   questionnaires they're not told about the defendants or the

03:42:57PM 15   parties.  They're just usually told they have to come down.

16         And I think that here one of the thrusts of the

17   Court's focus is trying to weed out folks that can't be

18   sitting for an extended period of time.

19         So I appreciate the Court having the time period on

03:43:17PM 20   there, I think that will hopefully let us know more jurors

21   that may have an issue with time so we don't bring those folks

22   into court and find out.

23         My worry is people start looking up names because I

24   just wonder how are we going to -- how are we going to

03:43:35PM 25   challenge for cause folks if they check on there that they

1  know somebody, you know what I mean?

2          **THE COURT:** No.  What I'm talking about initially --

3  they may know a number of police officers, for instance, they

4  know ten of the different police officers.  That's not

03:43:49PM 5  necessarily going to disqualify them.  Like any other jurors,

6  that person would more than likely be *voir dired* in court.

7          But if they indicate on the questionnaire I know

8  most of these police officers and I don't think I could be

9  fair, I would bring that to the attention of the parties and

03:44:06PM 10  see if we can just excuse them at that April 19th session as

11  opposed to bringing the person in to say the same thing and

12  avoid reading 200 names in court, which I'm going to have to

13  do at some point.

14          **MR. MARANGOLA:** I understand.  I didn't know if in

03:44:26PM 15  terms of the nature of the case if the Court --

16          **THE COURT:** I'll read you what I say.

17          **MR. MARANGOLA:** Okay.

18          **THE COURT:** The defendants, Carlos Javier Figueroa

19  and Xavier Torres, are charged by indictment of allegations of

03:44:44PM 20  narcotics conspiracy, brandishing and possession and

21  discharging firearms, distribution of heroin and cocaine,

22  maintaining a premises to distribute controlled substances and

23  murder.

24          The defendants are presumed to be innocent of these

03:45:02PM 25  charges and it will be the Government's burden to prove as to

1    each and any defendant as to any charge beyond a reasonable

2    doubt.

3         And then if you know any of the defendants, please

4    list them here, indicating how you know them.

03:45:20PM 5         Is there anything about the nature of these

6    allegations alone that would cause you not to be a fair and

7    impartial juror.  Again, if so, please explain.

8         The allegations in the indictment -- this is a new

9    question -- the allegations in the indictment indicate that

03:45:34PM 10   these events occurred between 2015 and January 29, 2018,

11   within the Western District of New York, and involved among

12   other addresses Burbank Street, Barrington Street, and East

13   Main Street in the City of Rochester.

14        Based upon this information, do you believe that

03:45:54PM 15  you know anything about the allegations in this case or have

16   you heard anything about the allegations in this case.

17        And the third question is the length of time of the

18   trial.  And then just the attorneys.

19        Is that all right?

03:46:09PM 20       **MR. MARANGOLA:** Yes.

21        **THE COURT:** Mr. Verrillo, do you have any issue with

22   that?

23        **MR. VERRILLO:** No.

24        **THE COURT:** As far as the witnesses, I simply

03:46:19PM 25  indicate the Government is expected to a call significant

1    number of witnesses during the trial.  Attached is a list of

2    potential witnesses.  Not all these persons are expected to

3    testify.  However, you may hear their names during the course

4    of the testimony.  If you know any of the above witnesses --

03:46:37PM 5    it should say attached -- please list them here and indicate

6    how you know them.

7             Is there anything about your knowledge of or

8    relationship with that individual that would cause you not to

9    be a fair and impartial juror.

03:46:53PM 10            And then I think it was at the request of the

11   defense I added this question: Have you or someone close to

12   you been effected by drug use in a manner that would effect --

13   impact your ability to be fair and impartial serving as a

14   juror in this case?  If so, please explain.

03:47:09PM 15            Then based upon those answers, bring it to the

16   attention of counsel and see whether or not there would be

17   consent to excusing.  If there isn't, that's fine, then we

18   just bring them in and inquire further on those issues.

19            Is that satisfactory?

03:47:23PM 20            **MR. MARANGOLA:** It is, Judge.

21            **THE COURT:** We'll make those changes, right, Brian?

22            **THE LAW CLERK:** Mm-hmm.

23            **THE COURT:** Okay.  Anything further from the

24   Government?

03:47:31PM 25            **MR. MARANGOLA:** No, thank you, Judge.

1          **THE COURT:** Mr. Verrillo?

2          **MR. VERRILLO:** Judge, I do have a few court matters

3 coming up during the time period.  I had a -- in June I had

4 two -- I have a two day trial.  So can I -- should I submit a

03:47:45PM 5 list or do you want to know now?  I can tell you.

6          **THE COURT:**  No, no.  Submit a list.  I'm sure

7 Mr. Marangola needs to look and see if he's going to be away

8 or something.  And Mr. Vacca as well.  So we can refine that

9 list between now and the trial date for the jury.

03:47:58PM 10          **MR. VERRILLO:** Oh, okay.

11          **THE COURT:** But don't plan on taking too many days

12 off.  We got to get this done.

13          **MR. VERRILLO:** Well, I don't know.  I usually go to

14 Delaware in June.  We have a St. Anthony's --

03:48:07PM 15          **THE COURT:**  I'd like to take a vacation, too, this

16 summer, but apparently --

17          **MR. VERRILLO:** For one day.  That's a one day thing.

18 I'm not saying I'm going there, but I'm just --

19          **THE COURT:** No, you're not, so don't count on it.

03:48:16PM 20 If I'm not going on vacation, you're not going on vacation.

21          **MR. VERRILLO:** Okay.  I mean I was talking about

22 court really is what I was saying, I have a few court matters.

23          **THE COURT:** Okay.

24          **MR. VERRILLO:** And then I know that the Government

03:48:25PM 25 has provided me with some records related to this Gonzalez

1   shooting, which is an uncharged crime.  We had talked about it

2   previously.  And there are a couple investigators listed as

3   witnesses or people that they would call related to that.

4           The issue that I raised previously was there was a

03:48:43PM 5   report of someone saying that another person had been

6   involved, a Ruben Gonzalez, in a September of 2017 report.

7   And I've asked for any further follow-up.

8           And I haven't received anything.  I'm assuming they

9   haven't received it, but I did want to have the ability to

03:49:03PM 10   contact the investigator, the contact information, to see if

11   maybe there's something else out there.

12           I just want to know that I have all the

13   information.  So that would be a request I'd make.

14           THE COURT: Sure.  I'm sure Mr. Marangola will take

03:49:13PM 15   care of that.

16           MR. MARANGOLA: Judge, I think he made that request

17   last time and we did provide the follow-up information that we

18   had available to us.  We looked into it, and the follow-up

19   information that we received we provided to Mr. Verrillo.

03:49:25PM 20           MR. VERRILLO: I have the unredacted report, but I

21   was -- I believe the investigator's now retired.  I would like

22   to have the opportunity to contact him is basically what I'm

23   requesting, any contact information to be able to contact him

24   and see what -- see if there's anything else there.

03:49:39PM 25           THE COURT: Okay, I'm sure he'll provide that.

1    **MR. MARANGOLA:** Well, Judge, I'm sorry, we're not

2 gonna provide the personal contact information of the retired

3 police officer to defense counsel.

4    I mean, so we've reached out, we've made inquiry,

03:49:52PM 5 and we've been told there's nothing more from this.  And

6 that's what we have.  So in terms of --

7    **THE COURT:** Okay.

8    **MR. MARANGOLA:** -- additional inquiry that he wants

9 to make, that's fine with Mr. Verrillo, but in terms of --

03:50:09PM 10    **THE COURT:** You've supplied him what you're gonna

11 supply?

12    **MR. MARANGOLA:** I have.  That's what I was just

13 saying.  We have.  Thank you.

14    **THE COURT:** That's fine, thank you.  All right,

03:50:16PM 15 thank you.

16    Mr. Torres, in the meantime I think you should have

17 a frank discussion with your attorney about this and the

18 potential exposure here.  You're 36 years old; you'll be as

19 old as I am by the time you get out of prison if you're

03:50:27PM 20 convicted of these charges, if you ever get out of prison.

21    So think about it, okay?

22    **THE DEFENDANT:** Yes, sir.

23    **THE COURT:** We'll stand in recess.

24    **MR. MARANGOLA:** Thank you.

03:50:34PM 25    (**WHEREUPON**, proceedings adjourned at 3:50 p.m.)

1                              *    *    *

2                    **CERTIFICATE OF REPORTER**

3

4          In accordance with 28, U.S.C., 753(b), I certify that

5    these original notes are a true and correct record of

6    proceedings in the United States District Court for the

7    Western District of New York before the Honorable Frank P.

8    Geraci, Jr. on February 24th, 2021.

9

10   S/ Christi A. Macri

11   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25